## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**STEVEN CRUMP,**

       **Plaintiff,**

       **v.**                        **CASE NO.  24-3036-JWL**

**UNIFIED GOVERNMENT**
**OF JOHNSON COUNTY, et al.,**

       **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983.  Plaintiff is incarcerated at the Johnson County Adult Detention Center in Olathe, Kansas ("JCADC"). Plaintiff has been granted leave to proceed in forma pauperis.  This matter is before the Court for screening Plaintiff's Complaint (Doc. 1).  Also before the Court is a motion (Doc. 3) filed by Plaintiff.

### I.  Nature of the Matter before the Court

Plaintiff alleges that the defendants were deliberately indifferent to his injuries and disabilities, which resulted in further injury.  (Doc. 1, at 2.)  Plaintiff states that he arrived at the JCADC from the hospital on July 5, 2023, after suffering injuries during his arrest the day before. He alleges that he had been shot in the spine with a "less-lethal projectile," tased in the back of the head and on his shoulder, repeatedly bitten by a police dog, and had an ankle injury.  *Id.*  at 6. Upon his intake to JCADC, he was provided with a wheelchair.  *Id*. at 6.  He was placed in isolation under observation.  He expressed repeated complaints about the 24-hour lockdown he experienced in isolation, and he demanded the use of a phone.  *Id*.  In retaliation for his complaints, Plaintiff

alleges that a deputy was sent to his cell to remove his wheelchair on July 10, 2023.  *Id.* at 7.  At that point, Plaintiff claims that he had not been examined by a doctor.  *Id.*  He was suffering from dizzy spells, vertigo, the bottoms of his feet were badly blistered, the tendon and ligaments were detached from his ankle bone, he had 10 staples in the back of his left leg, the front of his left leg was shredded from dog bites, and he had a spine contusion.  *Id.*  Plaintiff asserts that he could not stand without extreme pain.  *Id*. at 8.  Plaintiff states that he was given "extreme amounts of [pain] medication," but he was denied the use of an accessible shower, back brace, extra mattress, and walking cane.  *Id.* at 8-9.   In addition, he claims that he was denied an MRI and further testing on his back injury.  *Id*. at 3.  He later states that he had a CT scan on September 5, 2023.  *Id.* at 11.

At some point, Plaintiff was moved to a different cell.  He alleges that the cell had molded food caked over the desk, urine and feces stains on the toilet, a soiled mattress, black growth on the walls, and debris on the floor.  *Id.* at 9.  When Plaintiff complained, he was told that he could clean the cell himself.  However, he was immobilized and bedridden.  *Id.* at 9-10.

Plaintiff alleges that he had to "drag his broken body down to Medical" each day to have the bandage on his leg changes.  *Id*. at 10.  He was given just enough pain medication to make it out of his cell for food and Medical, but the rest of the time he lay on the soiled, hard mattress in excruciating pain.  *Id.*  His leg began to rot.  The infection became so severe that Plaintiff lost all feeling in his left leg.  *Id.*  At some point, Medical had a specialist come to carve out all the rotting flesh.  *Id.*

Plaintiff further states that he was denied a wheelchair or cane and forced to live in the filthy cell for five (5) months, until December of 2023.  *Id.* at 15.  He was unable to shower regularly during that time.  *Id.*   He also claims that he requested a kosher diet but did not receive

it for 120 days.  *Id.* at 12.  Further, Plaintiff alleges that he was verbally harassed by deputies working at the JCADC.  *Id.* at 13.

The Complaint includes four counts.  Count I alleges deliberate indifference to Plaintiff's health and safety in violation of the Fourteenth Amendment.  *Id.* at 4.  Count II alleges retaliation in violation of the First Amendment.  *Id.*  Count III alleges the management of the JCADC and various other supervisors should be held liable under *Monell*.  *Id.*  Count IV alleges violation of the Americans with Disabilities Act ("ADA").  *Id.* at 5.

Plaintiff names the following defendants: the Unified Government of Johnson County; the city of Olathe; the Johnson County Board of Commissioners; Sheriff Calvin Hayden; the JCADC health provider; the JCADC management; House Sergeants #1 and #2; the JCADC health administrator; Dr. Stanton; the JCADC Head Nurse; medical staff #1-8; Sheriff's Deputies #1-8; and policy makers #1-4.  Plaintiff seeks relief in the form of full liability for physical and mental rehabilitation; over $6 million in compensatory damages; and over $8 million in punitive damages. *Id.* at 16.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and

*Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals.  *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).  As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief."  *Kay*, 500 F.3d at 1218 (citation omitted).  Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'"  *Smith*, 561 F.3d at 1098 (citation omitted).  "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III.  DISCUSSION

### A.  Defendants

#### 1.  Personal Participation

An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based.  *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011) ("But § 1983 imposes liability for a defendant's own actions—personal participation in the specific constitutional violation complained of is essential.") (citing *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.") (citation omitted)); *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006) ("In order for liability to arise under § 1983, a defendant's *direct personal responsibility* for the claimed deprivation . . . must be established.") (emphasis added) (citation

omitted)).  Conclusory allegations of involvement are not sufficient.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  As a result, a plaintiff is required to name each defendant not only in the caption of the complaint, but again in the body of the complaint and to include in the body a description of the acts taken by each defendant that violated plaintiff's federal constitutional rights.

Plaintiff includes specific allegations about the personal participation of only four defendants.  He alleges that Dr. Stanton "directly denied MRI and further testing on back injury. Denied walking cane, extra mattress, back brace, handicap shower." (Doc. 1, at 3.)  He later states that Stanton "added several other pain medications."  *Id.* at 8.   Plaintiff claims that one deputy ("mid 20s, blond hair") removed his wheelchair.  *Id.* at 7.   Plaintiff alleges that the "Head Administrator" "told Crump that it is medical practice in JCADC to get a person who has been injured back on their feet as soon as possible to prevent muscle atrophy."  *Id.* at 8.  Last, Plaintiff states that the "Provider's Nurse" "gave Crump extreme amounts of medication" for his pain.  *Id*.

Plaintiff also mentions Deputies Salgado, Nuss, Evans, and Torrez. *Id.* at 12, 13.  However, they are not named as defendants, unless Plaintiff intended to include them in the grouping of "Sheriff Deputy #1-8."   He also refers repeatedly to "Medical," "Management," "Deputies," "Module Officers." and "Defendants" in his Complaint.   Allegations against such collective, unindividualized defendants are not sufficient to state a civil rights claim.

An assertion of collective responsibility fails to adequately allege a claim for relief against a specific defendant or to show personal responsibility by an individual defendant.  *See Walker v. Mohiuddin*, 947 F.3d 1244, 1249–50 (10th Cir. 2020) (citing *Pahls v. Thomas*, 718 F.3d 1210,

1228 (10th Cir. 2013)).  A plaintiff alleging civil rights violations must "isolate the allegedly unconstitutional acts of each defendant" such that his allegations "provide adequate notice as to the nature of the claims against each" defendant.  *Robbins v. State of Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008).  Allegations that a plaintiff's "rights 'were violated' or that 'defendants,' as a collective and undifferentiated whole, were responsible for those violations" are insufficient to support § 1983 claims.  *Pahls*, 718 F.3d at 1228 (citations omitted).  "To recover damages from each of [multiple] Defendants under § 1983, [Plaintiff] had to show that such Defendant personally participated in the alleged constitutional violation." *Shrum v. Cooke*, 60 F.4th 1304, 1312 (10th Cir. 2023) (quoting *Vasquez v. Davis*, 882 F. 3d 1270, 1275 (10th Cir. 2018)).  Plaintiff should show good cause why his claims against the collective defendants should not be dismissed.

### 2.  Supervisory Liability

Mere supervisory status is insufficient to create personal liability under § 1983.  *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008) (supervisor status is not sufficient to create § 1983 liability).  An official's liability may not be predicated solely upon a theory of respondeat superior.  *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Gagan v. Norton*, 35 F.3d 1473, 1476 FN4 (10th Cir. 1994), *cert. denied*, 513 U.S. 1183 (1995).  A plaintiff alleging supervisory liability must show "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation."  *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010), *cert. denied*, 563 U.S. 960 (2011).  "[T]he factors necessary to establish a [supervisor's] § 1983 violation depend upon the constitutional provision at issue, including the state of mind required to establish a violation of that provision."  *Id*. at 1204 (citing *Iqbal*, 129 S. Ct. at 1949).

Plaintiff attempts to assert liability against several supervisory defendants.  Generally, his claims are based on conclusory allegations of "decision maker" status, failed oversight, failure to train, or failure to intervene.  Plaintiff should show good cause why these supervisory defendants should not be dismissed.

### 3.  Municipalities/*Monell* liability

Plaintiff names the Unified Government of Johnson County, the City of Olathe, and the Board of Commissioners of Johnson County as defendants.  "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Wright v. City of Ponca City*, 2023 WL 5765848, at *7 (10th Cir. Sept. 7, 2023) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see also id.* at 691 ("[A] municipality cannot be held liable under § 1983 on a respondeat superior theory.")).  Instead, "the government as an entity" can only be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* (quoting *Monell*, 436 U.S. at 694).  To establish municipal liability, a plaintiff must demonstrate the existence of a "municipal policy or custom."  *Id.* (quoting *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010)).  Then the "plaintiff must demonstrate 'a direct causal link between the policy or custom and the injury alleged.'" *Id.* at n.9 (citing *Waller v. City & Cnty of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (quoting *Bryson*, 627 F.3d at 788)).

"[T]he Supreme Court has held that in 'limited circumstances,' a failure to train can be the basis for liability under § 1983." *Horocofsky*, 2022 WL 1421554, at *29 (citing *City of Canton v. Harris*, 489 U.S. 378, 387 (1989)).  Only when a municipality's failure to train employees evidences a "'deliberate indifference' to the rights of inhabitants" can a failure to train be

considered "a city 'policy or custom' that is actionable under § 1983." *Id.* (quoting *Canton*, 489 U.S. at 389).  To show deliberate indifference, a plaintiff must show that the municipality had "actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation," and a conscious or deliberate choice to disregard the harm. *Id.* (citation omitted).

Plaintiff's Complaint mentions one policy: "JCADC Medical has a policy, custom, that chronic care appointments, any outside medical testing is scheduled on the day of an inmate's court date.  It does not matter how far away the court date is the medical care coincides with court proceedings.  This is to save money." (Doc. 1, at 11.)  Plaintiff fails to allege that this policy was adopted by a municipal policymaker.  This is a requirement for asserting a § 1983 claim against a municipality, and without such allegations, Plaintiff fails to state a claim for relief against the Unified Government of Johnson County, the City of Olathe, or the Board of Commissioners of Johnson County.

## B.  Deliberate Indifference, ADA, and Retaliation Claims

Plaintiff alleges that he has not received adequate medical care, that he has been subjected to constitutionally deficient conditions of confinement, that he has been retaliated against, and that his rights under the ADA have been violated.

### 1.  Deliberate Indifference to Serious Medical Needs

The United States Supreme Court has held that an inmate advancing a claim of cruel and unusual punishment based on inadequate provision of medical care must establish "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Boyett v. County of Washington*, 282 F. App'x 667, 672 (10th Cir. 2008) (citing *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)).  The "deliberate indifference" standard has two components: "an objective

component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that [prison] officials act with a sufficiently culpable state of mind." *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991); *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 990 (citation omitted). The "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citation omitted). "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

Plaintiff must also satisfy the subjective prong. The Supreme Court has insisted upon actual knowledge: "the official must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added). An apparent disagreement over course of treatment, however, does not rise to the level of a constitutional violation. *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010). "A plaintiff 'need not show that a prison official acted or failed to act believing that harm actually would befall an inmate,' but rather that the official 'merely

refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist.'" *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023) (quoting *Farmer*, 511 U.S. at 842, 843 n.8).

The Tenth Circuit recently clarified that "it is possible to have some medical care and still state a claim under the gatekeeper theory." *Id.* at 1139. "The inquiry under a gatekeeper theory is not whether the prison official provided *some* care but rather whether they fulfilled their sole obligation to refer or otherwise afford access to medical personnel capable of evaluating a patient's treatment needs when such an obligation arises." *Id.* (citations omitted). Under the deliberate indifference analysis, "merely doing *something* (with no reference to the underlying condition) does not necessarily insulate one from liability." *Id.* "Instead, a court may need to determine whether there was the functional equivalent of a complete denial of care in light of the specific circumstances." *Id.* (citations omitted).

### 2. Retaliation

"[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under [42 U.S.C.] Section 1983 even if the act, when taken for a different reason, would have been proper." *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (citations omitted). The Tenth Circuit has held that:

> Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

However, an "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted). Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990). "To prevail, a prisoner must show that the challenged actions would not have occurred 'but for' a retaliatory motive." *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir. 2001) (citing *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).

### 3.  ADA

The ADA prohibits discrimination by government entities on the basis of disability. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. State prisons are within Title II's definition of "public entities." *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209-10 (1998).

"To state a claim under Title II of the ADA, a plaintiff must allege: (1) he is 'a qualified individual with a disability'; (2) he 'was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity'; and (3) 'such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.'" *Crane v. Utah Dept. of Corrections*, 15 F.4th 1296, 1312 (10th Cir. 2021) (quoting *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016)). The inability to prove any one of these elements precludes an ADA claim. *Id.* "Courts have recognized three

ways to establish a discrimination claim: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016).

### C.  Additional Information Needed

The Court finds that the proper processing of Plaintiff's claims cannot be achieved without additional information from appropriate officials of the JCADC.  *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991).  Accordingly, the Court orders the appropriate JCADC officials of to prepare and file a *Martinez* report.  Once the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A.

## IV.  Motion

Plaintiff has filed a Motion for Preliminary Injunction (Doc. 3).  The motion starts by describing an incident where Plaintiff was "written up" for a disciplinary violation and received a 24-hour lockdown as a result.  He alleges that this was done to silence him and cause him harm. *Id.* at 1.  Plaintiff further states that the write-up was "erased" from his record after the 24-hour lockdown but that "this retaliation and harm is an on going constant situation." *Id.*  He is concerned that he will be released from jail and will not be able to obtain the help he needs to recover from the harm caused by the defendants.  He asks the Court to grant him partial judgment of $50,000 and to order that he receive inpatient treatment at Cottonwood Springs in Olathe, Kansas.  *Id.* at 3.

To obtain a preliminary injunction, the moving party must demonstrate four things: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of the equities tip in the movant's favor; and (4) that the injunction is in the public interest.  *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010).  "[A] showing of probable irreparable harm is the single most important prerequisite for the

issuance of a preliminary injunction." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,* 356 F.3d 1256, 1260 (10th Cir. 2004).

Plaintiff's allegations do not establish that injury is certain and not theoretical, or more than merely feared as liable to occur in the future. "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Heideman v. S. Salt Lake City,* 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotation marks omitted). A preliminary injunction is only appropriate "to prevent existing or presently threatening injuries. One will not be granted against something merely feared as liable to occur at some indefinite time in the future." *State of Connecticut v. Commonwealth of Massachusetts,* 282 U.S. 660, 674 (1931).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). Moreover, a federal court considering a motion for preliminary injunctive relief affecting the conditions of a prisoner's confinement must give "substantial weight to any adverse impact on public safety" and on prison operation. 18 U.S.C. § 3626(a)(2). Finally, a mandatory preliminary injunction, such as the one sought by Plaintiff, which requires the non-moving party to take affirmative action, is disfavored and therefore requires the moving party to make a heightened showing of the four factors above. *Little*, 607 F.3d at 1251. Because preliminary injunctions and TRO's are drastic remedies—"the exception rather than the rule—plaintiffs must show that they are clearly and unequivocally entitled to relief." *Adrian v. Westar Energy, Inc.*, No. 11-1265-KHV, 2011 WL 6026148, at *3 (D. Kan. 2011) (citations omitted).

"[B]ecause the purpose of preliminary injunctions is to preserve the relative positions of the parties until trial, they are specifically disfavored if they alter the status quo, are mandatory (as opposed to prohibitory), or afford the movant all the relief that could be recovered after a full trial." *Rudnick v. Raemisch*, 731 F. App'x 753, 755 (10th Cir. 2018) (citing *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258-59 (10th Cir. 2005)). "Such disfavored injunctions must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* (quoting *Schrier*, 427 F.3d at 1259).

Here, Plaintiff requests a mandatory injunction that would alter the status quo and provide him with the primary relief he could recover after a trial.  Moreover, he has not demonstrated a likelihood of success on the merits such that his right to relief is clear and unequivocal and has not demonstrated a likelihood of imminent irreparable harm.  For these reasons, the Court finds that Plaintiff has not met his burden to make a heightened showing that entry of a preliminary injunction is warranted.  Thus, Plaintiff's motion is denied.

**IT IS THEREFORE ORDERED** that Plaintiff is granted until **May 10, 2024,** in which to show good cause, in writing to the undersigned, why Plaintiff's claims against collective defendants, supervisory defendants, and municipalities should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Preliminary Injunction (Doc. 3) is **denied**.

**IT IS FURTHER ORDERED** that**:**

(1)     The JCADC officials shall submit the *Martinez* Report by **May 10, 2024**.  Upon the filing of that Report, the Court will screen Plaintiff's Complaint.  If the Complaint survives screening, the Court will enter a separate order for service.

(2)     Officials responsible for the operation of the JCADC are directed to undertake a review of the subject matter of the Complaint:

a.     To ascertain the facts and circumstances;

b.     To consider whether any action can and should be taken by the institution to resolve the subject matter of the Complaint; and

c.     To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this Complaint and should be considered together.

(3)     Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff.  If the JCADC officials wish to file any exhibits or portions of the report under seal or without service on Plaintiff, they must file such portions separately from the public report and provisionally under seal, to be followed immediately by a Motion to Seal or Redact Document(s).  The JCADC officials are exempt from filing the Notice of Proposed Sealed Record under D. Kan. Rule 5.4.2(b).

(4)     Statements of all witnesses shall be in affidavit form.  Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report.  Any recordings related to Plaintiff's claims shall also be included.

(5)     Authorization is granted to the JCADC officials to interview all witnesses having knowledge of the facts, including Plaintiff.

(6)      No motion addressed to the Complaint shall be filed until the *Martinez* Report required herein has been prepared.

(7)      Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed any Court-ordered answer or response to the Complaint.  This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

Copies of this order shall be transmitted to Plaintiff, to the Johnson County Sheriff, and to the Johnson County District Attorney.

**IT IS SO ORDERED.**

**Dated April 10, 2024, in Kansas City, Kansas.**


**S/   John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**