IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**STEVEN CRUMP,**

    **Plaintiff,**

    v.                                  CASE NO. 24-3036-JWL

**UNIFIED GOVERNMENT
OF JOHNSON COUNTY, et al.,**

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. He is currently detained at the Johnson County Adult Detention Center ("JCADC") in New Century, Kansas. The Court granted Plaintiff leave to proceed in forma pauperis. On April 10, 2024, the Court entered a Memorandum and Order (Doc. 7) ("M&O") finding that the proper processing of Plaintiff's claims could not be achieved without additional information from appropriate JCADC officials. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court ordered JCADC officials to prepare and file a *Martinez* Report. The *Martinez* Report (Doc. 26) (the "Report") was filed, and the Court entered a show cause order (Doc. 36; "MOSC"). Plaintiff has now filed a First Amended Complaint ("FAC") in response to the *Martinez* Report and the MOSC. *See* Doc. 48.

**I. Nature of the Matter before the Court**

Plaintiff alleges in the FAC that the defendants have provided him with completely inadequate medical care. (Doc. 48, at 2.) Plaintiff states that he was severely injured by a 12-gauge shot gun firing a "less lethal" round, taser, and dog bite.[1] *Id*. He alleges that the defendants

---

[1] The injuries occurred upon his arrest before arriving at the JCADC.

1

did not adequately medicate or treat him for over a year, resulting in him becoming mentally and physically disabled. *Id.* Plaintiff states, "The Defendants intentionally and negligently disregarded Crump's severe injuries as insignificant." *Id.*

The FAC includes thirteen (13) counts. Count I alleges deliberate indifference to Plaintiff's serious medical needs in violation of the Fourteenth Amendment. *Id.* at 28. Plaintiff asserts that the defendants are aware of his injuries but have denied him access to qualified medical professionals, denied him adequate medication, and failed to accommodate his injuries. *Id.* Count II alleges cruel and unusual punishment in violation of the Fourteenth Amendment. *Id.* Plaintiff asserts that he was forced to walk with a separated spine for months, was forced to live in an unsanitary cell for five months, was prescribed harmful medication that caused severe side effects, and was left to die while having a heart attack. *Id.*

Count III alleges that the management of the JCADC, Vital Core, and various other supervisors should be held liable under *Monell*. *Id.* More specifically, Plaintiff claims that Vital Core and Vital Core Chief Executive Officer Viola Riggins have a policy of denying inmates adequate pain management by denying narcotic pain medication and only providing over-the-counter medicine. Plaintiff further claims that the defendants have a policy of "wait and see" in which medical appointments are unnecessarily delayed, prolonging suffering. The FAC asserts that Plaintiff's chronic care appointments were set for two months out, and his CT and MRI were scheduled for after his court dates in hopes that he would not return to the JCADC. *Id.* at 30. The FAC further alleges that Defendants have a policy of denying inmates off-site medical care in order to save money. Plaintiff asserts that this policy resulted in the denial of a back brace, corrective therapy on his spine, in person physical therapy, follow up examinations, and adequate pain medication. *Id.* The FAC claims that the defendants have trained staff to downplay and

misreport injuries and to deny inmates access to qualified medical professionals. *Id.* at 31. The FAC alleges that the defendants have a policy or informal practice of denying disabled inmates access to wheelchairs after two weeks, allegedly to limit muscle atrophy and have an informal policy of diagnosing medical emergencies over the phone instead of in person. *Id.* Plaintiff asserts that this policy resulted in unqualified individuals making critical decisions. *Id.* Further, Plaintiff claims that the defendants have a policy of understaffing qualified providers, with only one doctor, Dr. Stanton, serving 500 inmates at the JCADC; have a policy of employing no specialist physicians; have a policy that disabled inmates must clean their own cells; and have a policy of encouraging nursing staff to practice beyond their licenses and medical capabilities. *Id.* at 29-30.

Count III further claims that Sheriff Hayden and the Johnson County Board of Commissioners turned full medical policy making authority over to Vital Core, a company "known to have unconstitutional polic[ies]"; acquiesced to Vital Core's unconstitutional policies and failed to intervene or investigate claims of constitutional deprivations; delegated a non-delegable duty of providing adequate health care to inmates to Vital Core; and have a policy of denying disabled inmates the use of wheelchairs in the day room and the use of handicapped showers unless the inmate is in a wheelchair, causing further injury. *Id.* at 32. Plaintiff claims that he was forced to walk up to 200 yards a day with a separated spine, head injury, half of his calf missing, and dislocated tendons in his left foot. *Id.* The FAC further claims that the defendants have a policy of preventing deputies from assisting inmates who suffer from medical conditions and a policy that inmates must clean their own cells regardless of the inmate's ability to do so. *Id.* Plaintiff states that he could not stand, bend, or function enough to clean his cell for five months, and staff members refused to assist him. *Id.*

Count IV alleges supervisory liability of Defendant Ehrlich, the head administrator, Becky LNU, Dr. Stanton, Sergeants Cooley and Watterson, and three unknown sergeants. Plaintiff asserts that each of these defendants have a direct link to his inadequate care. *Id*. at 33.

Count V alleges retaliation in violation of the First Amendment. *Id*. Plaintiff states that he has been isolated and "personally attacked" because of his grievances and lawsuits. He claims that the defendants refused to heat his dental mouthpiece out of spite because of his exercise of his First Amendment rights; conspired to write him up; and medically abandoned him twice. *Id*. at 33-34. Plaintiff further claims that Becky and the Head Administrator have both physically and verbally assaulted him to silence his complaints about the health care at the JCADC. *Id*. at 34.

Count VI alleges discrimination on the part of all named defendants. Plaintiff asserts that he is part of a protected class as a physically disabled person who suffers from psychiatric disabilities. *Id*. He alleges that he has been denied all accommodations for his disability, locked in isolation, written up falsely, harassed, humiliated, disrespected, and ridiculed by the defendants for over a year. *Id*.

Count VII alleges defamation on the part of Vital Core staff. Plaintiff asserts that the defamation has resulted in him being seen as a crazy, drugged, suicidal liar, faking injuries. *Id*. He specifically alleges that Becky, the Head Administrator, and Dr. Stanton have all denied that he ever had a spinal injury, despite an eventual diagnosis by an orthopedic specialist. He further claims that medical staff falsely reported to the Sheriff's Department that he could walk just fine and did not need a wheelchair; that he did not need to use the handicapped shower; that he was faking heart problems; and that he was on amphetamines and attacked police officers during his arrest. *Id*. at 35.

Count VIII requests punitive damages as a result of the defendants' alleged reprehensible conduct. *Id*.

Count IX alleges violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act. *Id*. at 36. In particular, Plaintiff alleges that the defendants refused to alter their medication and treatment procedures to accommodate him, forcing him to try to walk to Medical and to be recorded as refusing treatment if he could not get there. *Id*. He states that he was also not allowed to be in a handicapped cell, which caused him to continuously fall while attempting to use the toilet. *Id*.

Count X claims intentional and negligent infliction of emotional distress. *Id*. at 36. Plaintiff alleges that the defendants have terrorized him, leaving him hopeless and suicidal. *Id*. He states that he has been forced to seek mental health care and to take additional medication. *Id*. at 37. He claims that he is afraid to leave his cell and has had to miss court because of the emotional distress. *Id*.

Count XI is titled "Negligence (Negligent Malpractice)." *Id*. Plaintiff asserts that it is negligent to transport a disabled person without a wheelchair; it is negligent to fail to give a person with a severe spine injury a back brace; it is negligent to deny a person suffering from dizzy spells who is unable to stand without assistance a shower with safety rails; it is negligent to force a person in his condition to walk for food and medication; it is negligent to fail to investigate claims of constitutional violations; it is negligent to include unfounded information in an inmate's medical file; and it is negligent to fail to report serious injuries to save money. *Id*. at 37.

Count XII asks for treble damages under 15 U.S.C. § 1117(a) based on over a year of abuse.

Count XIII asks for double damages because the defendants abused their discretionary powers and inflicted permanent injury to Plaintiff. *Id*.

Plaintiff names the following defendants: Vital Core Health Strategies, the medical contractor for the JCADC; Calvin Hayden, Sheriff of Johnson County, Kansas; Viola Riggins, Chief Executive Officer of Vital Core; the Johnson County Board of Commissioners; Jennifer Ehrlich, Vice President of Vital Core; Head Health Administrator for Vital Core at JCADC; Becky LNU, Supervisor for Vital Core at JCADC; Dr. Danny Stanton, medical provider employed by Vital Core; Tiffany McRoberts, employee of Vital Core; Caryn Kuntz, nurse employed by Vital Core; Kathleen Calloway, nurse employed by Vital Core; unknown paramedic employed by Vital Core; Laura Neely, medical provider employed by Vital Core; Deputy King; Sergeant #1; Deputy Salgado; Sergeant #2; Deputy Bell; Sergeant #3; Medical Staff #1, 2, and 3; Sergeant Cooley; Deputy Andrews; Medical Staff #4, 5, and 6, who were on duty on June 3, 2024, and refused to respond to Plaintiff's medical emergency; Captain M. Levin; and Lieutenant M. Weaver.

For each defendant, Plaintiff includes a description of how they are allegedly liable for violating his constitutional rights, whether through action, inaction, or policy-making. *See id.* at 1-27.

Plaintiff seeks relief in the form of $8 million in compensatory damages and $16 million in punitive damages. *Id.* at 38.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d

1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

The FAC restates Plaintiff's claims in the original Complaint. The FAC also includes numerous additional claims. Each count is discussed below.

**A. Counts I and II**: Plaintiff's claims for deliberate indifference to serious medical needs and cruel and unusual punishment are essentially the same claims he brought in the original Complaint, discussed in two previous orders (M&O, Doc. 7; MOSC, Doc. 36), and addressed by the *Martinez* Report.

Plaintiff disputes the allegations in the *Martinez* Report, maintaining his version of the events and his allegations set forth in his FAC. The *Martinez* report developed as a means "to ascertain whether there is a factual as well as a legal basis for [a] prisoner's claims." *Gee v. Estes*,

829 F.2d 1005, 1007 (10th Cir. 1987). The *Martinez* report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citing *Sampley v. Ruettgers*, 704 F.2d 491, 493 n.3 (10th Cir. 1983)). The Court "cannot resolve material disputed factual issues by accepting the report's factual findings when they are in conflict with pleadings or affidavits." *Id.* at 1109. "Furthermore, '[a] bona fide factual dispute exists even when the plaintiff's factual allegations that are in conflict with the *Martinez* Report are less specific or well-documented than those contained in the report.'" *Bellamy v. Kansas*, 2024 WL 3718065, at n.5 (10th Cir. Aug. 8, 2024) (unpublished) (quoting *Hall*, 935 F.2d at 1109).

The Court is unable to resolve the factual disputes at this stage of the proceedings. Therefore, the Court finds that Counts I and II survive the screening required by 28 U.S.C. § 1915A(a).

**B. Counts III and IV:** Plaintiff's claims for liability of the municipal and supervisory defendants were addressed by the Court in the original screening order (M&O, Doc. 7, at 7-9). The Court found that Plaintiff did not adequately support his claims of liability of supervisory or municipal defendants. In the FAC, Plaintiff has added allegations and has addressed these concerns sufficiently for Counts III and IV to survive screening.

**C. Count V:** Plaintiff's claim for retaliation was included in the original Complaint. The Court found in the M&O and the MOSC that this claim was subject to dismissal. (M&O, Doc. 7, at 11-12; MOSC, Doc. 36, at 10-12.) In the Complaint, Plaintiff cited one primary incident, the removal of the wheelchair, in support of his claim. In the FAC, Plaintiff has included additional incidents and allegations, attempting to address the concern that he needed to "allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v.*

9

*Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted). He also expressed his disagreement with the conflicting account of the wheelchair removal contained in the *Martinez* Report.

As explained above, the Court is unable to resolve the factual disputes at this stage of the proceedings. Therefore, the Court finds that the Count V survives the screening required by 28 U.S.C. § 1915A(a).

**D. Count VI:** Plaintiff alleges discrimination on the part of all named defendants. He does not state the constitutional or statutory basis for his claim. However, he asserts in Count VI that he is part of a protected class as a physically disabled person who suffers from psychiatric disabilities. (Doc. 48, at 34.) He alleges that he has been denied all accommodations for his disabilities, locked in isolation, written up falsely, harassed, humiliated, disrespected, and ridiculed by the defendants for over a year. *Id*. This sounds like an ADA claim, but Plaintiff includes a separate count alleging violation of the ADA (*see* Count IX, discussed below).

Discrimination claims often fall under the Equal Protection Clause. The Equal Protection Clause requires that "all persons similarly circumstanced shall be treated alike." *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920); *Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir.), *cert. denied*, 549 U.S. 1059 (2006) ("Equal protection is essentially a direction that all persons similarly situated should be treated alike."); *Grace United Methodist Church v. City of Cheyenne*, 427 F.3d 775, 792 (10th Cir. 2005). An equal protection violation occurs when the government treats someone differently from another person who is similarly situated, without adequate justification for the difference in treatment. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111, 1118 (10th Cir. 1991). Therefore, in order to succeed on an equal protection claim, Plaintiff must

allege that he was "similarly situated" to other inmates and that the difference in treatment was not "reasonably related to legitimate penological interests." *Fogle*, 435 F.3d at 1261 (citing *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998); *Turner v. Safley*, 482 U.S.78, 89 (1987)); *see also Rider v. Werholtz*, 548 F. Supp. 2d 1188, 1202 (D. Kan. 2008) (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1207 (10th Cir. 1996)). A plaintiff alleging an equal protection violation must present specific facts which demonstrate that a "discriminatory purpose" was a motivating factor in the disparate treatment attacked in the complaint. *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988); *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

If the alleged difference in treatment is not based on a suspect classification, the plaintiff must also allege facts sufficient to establish "the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose." *Harrison v. Morton*, 490 F. App'x 988, 994 (10th Cir. 2012) (quoting *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994)). Plaintiff alleges that he was discriminated against based on his disabilities, but the U.S. Supreme Court has found that people with disabilities are not considered part of a suspect or quasi-suspect class. *See City of Cleburne*, 473 U.S. at 442.

Because of the wide discretion afforded to prison officials and the many relevant factors these officials may consider when dealing with inmates, an inmate who is not part of a suspect class faces a difficult task to state an equal protection claim. First, there is a presumption in favor of validity of prison officials' disparate treatment. *Hill v. Pugh*, 75 F. App'x 715, 720 (10th Cir. 2003). Second, the requirement to show that an inmate is "similarly situated" to other inmates is arduous, if not impossible, as the Tenth Circuit Court of Appeals noted in *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994) ("it is 'clearly baseless' to claim that there are other inmates

11

who are similar in every relevant respect"); *see also Fogle*, 435 F.3d at 1261 (quoting *Templeman* in affirming dismissal of an equal protection claim).

If Plaintiff intended to bring an Equal Protection claim in Count VI, it is dismissed for failure to allege facts establishing its essential elements. *See Rider*, 548 F. Supp. 2d at 1202 (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1207 (10th Cir. 1996)). He does not identify similarly-situated individuals who received different treatment. Furthermore, he does not allege facts suggesting that he was treated differently because he belongs to a suspect class. However, Plaintiff may raise his discrimination allegations in the context of his ADA claim.

**E. Count VII:** Plaintiff's claims of slander, defamation and humiliation fail to state a federal cause of action. "Damages for defamation are not recoverable under § 1983 because a defamed person has not been deprived of any right, privilege or immunity secured to him by the Federal Constitution or laws of the United States." *Ellingburg v. Lucas,* 518 F.2d 1196, 1197 (8th Cir. 1975) (per curiam) (citing *Morey v. Indep. School Dist.,* 429 F.2d 428 (8th Cir. 1970)) (further citations omitted). Harm to reputation does not implicate deprivation of a liberty or property interest under the Constitution. *Paul v. Davis,* 424 U.S. 693, 712 (1976). Therefore, a claim of slander is not cognizable under § 1983. *Cotton v. Simmons,* 23 F. Appx. 994, 2002 WL 93142 (10th Cir. 2002) (unpublished). Moreover, Plaintiff's request for compensatory damages for this claim is barred by 42 U.S.C. § 1997e(e), because Plaintiff has failed to allege a physical injury. Section 1997e(e) provides in pertinent part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

However, because the Court may decide to exercise supplemental jurisdiction over Plaintiff's state law claims as the case proceeds, this claim is not dismissed at this time.

**F. Count VIII:**  Plaintiff seeks punitive damages, which "are available only for conduct which is 'shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'"  *Searles v. Van Bebber*, 251 F.3d 869, 879 (10th Cir. 2001) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).  Plaintiff presents sufficient allegations to establish a plausible basis for a claim of punitive damages at the screening stage.

**G. Count IX:**  Plaintiff's claim for discrimination under the ADA survives screening.  The ADA prohibits discrimination by government entities on the basis of disability.  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  State prisons are within Title II's definition of "public entities." *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209-10 (1998).

"To state a claim under Title II of the ADA, a plaintiff must allege: (1) he is 'a qualified individual with a disability'; (2) he 'was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity'; and (3) 'such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.'" *Crane v. Utah Dept. of Corrections*, 15 F.4th 1296, 1312 (10th Cir. 2021) (quoting *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016)).  "Courts have recognized three ways to establish a discrimination claim: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016).

Plaintiff alleges failure to make a reasonable accommodation and intentional

discrimination. The MOSC found that his allegations in the original Complaint were not supported by the records provided with the *Martinez* Report. The FAC includes additional allegations and expresses disagreement with the Report. As the Court is unable to resolve the factual disputes at this stage of the proceedings, the Court finds that the Count IX survives the screening required by 28 U.S.C. § 1915A(a).

**H. Count X:** Intentional infliction of emotional distress is a state law claim that does not provide grounds for relief under § 1983. *Malek v. Haun*, 26 F.3d 1013, 1016 (10th Cir. 1994). Moreover, Plaintiff's request for compensatory damages for this claim is barred by 42 U.S.C. § 1997e(e), because Plaintiff has failed to allege a physical injury. Section 1997e(e) provides in pertinent part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Plaintiff has not asserted any physical injury related to this claim.

However, because the Court may decide to exercise supplemental jurisdiction over Plaintiff's state law claims as the case proceeds, this claim is not dismissed at this time.

**I. Count XI:** Negligence does not support a claim under § 1983. Negligence is a state law claim and does not supply grounds for a constitutional cause of action. Claims under § 1983 may not be predicated on mere negligence. *See Daniels v. Williams*, 474 U.S. 327, 330 (1986). It is well-settled that state law violations are not grounds for relief under § 1983. "[A] violation of state law alone does not give rise to a federal cause of action under § 1983." *Malek*, 26 F.3d at 1016 (citation omitted).

However, because the Court may decide to exercise supplemental jurisdiction over Plaintiff's state law claims as the case proceeds, this claim is not dismissed at this time.

**J. Count XII:** Plaintiff asks for treble damages under 15 U.S.C. § 1117(a) based on over a year of abuse. The statute Plaintiff cites allows for treble damages for certain trademark violations. It is therefore not applicable here. Count XII is dismissed.

**K. Count XIII:** Plaintiff seeks double damages because the defendants abused their discretionary powers and inflicted permanent injury to Plaintiff. *Id.* "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West,* 487 U.S. at 48. Plaintiff does not base this claim on a constitutional right. Therefore, Count XIII is dismissed.

## IV. CONCLUSION

The Court finds that Counts I, II, III, IV, V, VII, VIII, IX, X, and XI of the FAC survive the screening required by 28 U.S.C. § 1915A(a) and further finds that a responsive pleading is necessary. Because Plaintiff is proceeding in forma pauperis, the Clerk of the Court must undertake service of process under 28 U.S.C. § 1915(d).

## V. Motion for Emergency Preliminary Injunction

Plaintiff has filed a motion for emergency preliminary injunction (Doc. 51). Plaintiff alleges that he has high cholesterol (221) and periodontal disease. He asserts that "[b]oth of these cause heart failure and stroke individually but together in one body they become seriously life threatening." *Id.* at 1. He claims that Vital Core has prescribed only a mouthwash and "Atrovastatin which causes type II diabetes." *Id.* Plaintiff concludes by arguing that "[t]he Court must step in before Vital Core kills Crump." *Id.*

To obtain a preliminary injunction, the moving party must demonstrate four things: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in

the absence of preliminary relief; (3) that the balance of the equities tip in the movant's favor; and (4) that the injunction is in the public interest. *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010). "[A] showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004).

Plaintiff's allegations do not establish that injury is certain and not theoretical, or more than merely feared as liable to occur in the future. "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Heideman v. S. Salt Lake City,* 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotation marks omitted). A preliminary injunction is only appropriate "to prevent existing or presently threatening injuries. One will not be granted against something merely feared as liable to occur at some indefinite time in the future." *State of Connecticut v. Commonwealth of Massachusetts,* 282 U.S. 660, 674 (1931).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). Moreover, a federal court considering a motion for preliminary injunctive relief affecting the conditions of a prisoner's confinement must give "substantial weight to any adverse impact on public safety" and on prison operation. 18 U.S.C. § 3626(a)(2). Finally, a mandatory preliminary injunction, such as the one sought by Plaintiff, which requires the non-moving party to take affirmative action, is disfavored and therefore requires the moving party to make a heightened showing of the four factors above. *Little*, 607 F.3d at 1251. Because preliminary injunctions and TRO's are drastic remedies—"the exception rather than the rule—plaintiffs must show that they

are clearly and unequivocally entitled to relief." *Adrian v. Westar Energy, Inc.*, No. 11-1265-KHV, 2011 WL 6026148, at *3 (D. Kan. 2011) (citations omitted).

Here, Plaintiff requests a mandatory injunction. While he claims that his life is in imminent danger (Doc. 51, at 1), he has not demonstrated through admissible evidence a likelihood of success on the merits such that his right to relief is clear and unequivocal and has not demonstrated a likelihood of imminent irreparable harm. For these reasons, the Court finds that Plaintiff has not met his burden to make a heightened showing that entry of a preliminary injunction is warranted. Thus, Plaintiff's motion is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's for emergency preliminary injunction (Doc. 51) is **denied.**

**IT IS FURTHER ORDERED** that Counts VI, XII, and XIII of the First Amended Complaint are **dismissed** for failure to state a claim. Counts I, II, III, IV, V, VII, VIII, IX, X, and XI of the First Amended Complaint survive the Court's screening under 28 U.S.C. § 1915A.

**IT IS FURTHER ORDERED** that the Court directs the Clerk of the Court to prepare and issue waiver of service forms for the defendants pursuant to Fed. R. Civ. P. 4(d) to be served upon the defendants at no cost to Plaintiff.

**IT IS SO ORDERED**.

**Dated November 12, 2024, in Kansas City, Kansas.**

**S/ John W. Lungstrum**<br>**JOHN W. LUNGSTRUM**<br>**UNITED STATES DISTRICT JUDGE**