**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| STEVEN CRUMP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 24-3036-JWL |
| | ) | |
| UNIFIED GOVERNMENT | ) | |
| OF JOHNSON COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**JOHNSON COUNTY DEFENDANTS'
MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

### I.     INTRODUCTION

The Plaintiff, Steven Crump ["Crump"] is an inmate at the Johnson County Adult Detention Center ["JCADC"]. He filed this action *pro se* against various officers at the JCADC claiming violations of federal and Kansas laws regarding inadequate medical care, alongside other claims of constitutional violations. On November 12, 2024, this Court screened Crump's Complaint under 28 U.S.C. § 1915A(b)(1)-(2). *See*, Doc. 52.  Following that screening, Crump's remaining claims against Johnson County Defendants are as follows:[1]

- Count I: § 1983 deliberate indifference to serious medical needs;

- Count II: § 1983 cruel and unusual punishment;

- Count III: § 1983 *Monell* claim;

- Count IV: § 1983 supervisory liability;

- Count V: § 1983 Retaliation in violation of the First Amendment;

- Count VIII: Punitive damages;

---

[1] Count VII is only asserted against the Vital Core Defendants and is not addressed in this memorandum.

- Count IX: Discrimination under the ADA;

- Count X: Intentional infliction of emotional distress under Kansas law;

- Count XI: Negligence under Kansas law.

*See*, Doc. 52 at p. 15.

Johnson County Defendants are entitled to summary judgment as a matter of law on these claims for the following reasons:

1. The individual Defendants are entitled to qualified immunity;

2. Crump cannot establish Defendants' deliberate indifference to his medical needs or conditions of confinement;

3. Crump cannot establish Defendants took any retaliatory action in response to Crump's exercise of his constitutional rights;

4. Crump cannot establish he is disabled under the ADA or was discriminated against on that basis;

5. Crump cannot establish any policy or custom to support his *Monell* claim; and

6. Crump failed to comply with the provisions of K.S.A. 12-105b(d), thereby depriving this Court of subject matter jurisdiction over his state law tort claims.

## II.    DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS

### A.    Individuals and Entities Involved

1. On July 4, 2023, Steven Crump was arrested by the Olathe Police Department, following an altercation with law enforcement, for aggravated assault on a law enforcement officer. [Exh. A, *Affidavit of Lieutenant Brian Zeeff*; Exh. A-1, *Court Charging Printout for Jo. Co. Dist. Ct. Case No. 23CR02273*; Exh. A-2, *JoCo Sheriff's Jail Log*, p. 1].

2.      Crump, as part of his arrest, was processed and booked into the JCADC on the same date. [Exh. A-3, *Jail File*, p. 3].

3.      On July 5, 2023, as part of his intake into the JCADC, Crump underwent a screening by medical professionals at the detention center. [Exh. A-4, *Medical File 7/3/23 – 4/4/24*, pp. 1-12]. This screening checked for any immediate medical issues that Crump was experiencing at the time of his intake. [*Id.*].

4.      As part of that intake, the screening only noted contusions on Crump's back from a bean bag hit, staples from a dog bite, and blisters on the bottom of his feet. [*Id.*, p. 5].

5.      Crump was prescribed orally ingested amoxicillin (Augmentin) for ten days, which was discontinued upon completion of the dose. [Exh. A-5, *Medical File 7/3/23 – 4/4/24*, p. 103]; orally ingested ibuprofen (Motrin) for two days, which was discontinued upon completion [*Id.*, pp. 103-104]; orally ingested magnesium oxide (Mag-Ox 400) for 28 days, which was discontinued upon completion [*Id.*, pp. 104-105]; orally ingested prenatal plus (Prenatal/Folic Acid) for 6 days, which was discontinued upon completion; [*Id.*, p. 105]; orally ingested thiamine HCL (B-1) for 28 days, which was discontinued upon completion [*Id.*, pp. 105-106]; and 1 dose of amoxicillin-pot clavulanate to be taken the same day [*Id.*, pp. 106-107].

6.      Later that day, Crump requested to see a doctor because the blisters on his feet made it difficult to walk. [Exh. A-6, *Medical File 7/3/23 – 4/4/24*, p. 228].

7.      Crump was seen in the health care provider clinic and was approved for the use of a wheelchair until the blisters on his feet healed. [Exh. A-4, p. 11]. As part of that approval, Crump was placed in medical segregation for the period of his wheelchair usage. [Exh. A, ¶ 6].

8.      Crump was also routinely checked for the condition on his calf injury and abrasions on his back from the bean bag hit. [Exh. A-7, *Medical File 7/3/23 – 4/4/24*, p. 225]. As

part of those inspections, Crump was repeatedly provided Bacitracin alongside wound treatment and dressing. [*Id.*].

9.      On July 8, 2023, Crump was prescribed two tablets of orally ingested acetaminophen for 14 days, which was increased to three tablets on July 12, 2023 [Exh. A-8, *Medical File 7/3/23 – 4/4/24*, pp. 107-108] and orally ingested ibuprofen for 14 days, which was discontinued upon completion of the dose [*Id.*, pp. 107-108]. Crump's acetaminophen and ibuprofen prescriptions were extended to July 30, 2023 [Exh. A-10, *Medical File 7/3/23 – 4/4/24*, p. 110], then renewed on August 3, 2023, for an additional 21 days [Exh. A-10, *Medical File 7/3/23 – 4/4/24*, p. 115]. Crump's acetaminophen prescription was renewed again on August 25 for 14 days. [Exh. A-11, *Medical File 7/3/23 – 4/4/24*, p. 117].

10.     On the same date, medical staff requested that Deputy King ask Crump if he wanted to keep the wheelchair or return it. Crump reported that he would return it to get out of medical segregation. [Exh. A-2, *JoCo Sheriff's Jail Log*, p. 3].

11.     On July 14, 2023, following positive healing signs, Crump had six of the ten staples removed from his calf. [Exh. A-12, *Medical File 7/3/23 – 4/4/24*, p. 239].

12.     On July 18, 2023, Crump had the remaining four staples removed. [Exh. A-13, *Medical File 7/3/23 – 4/4/24*, p. 243].

13.     Crump continued to receive treatment for the wound through July 31, 2023. [Exh. A-14, *Medical File 7/3/23 – 4/4/24*, p. 252].

14.     On July 20, 2023, upon review of Crump's condition and a finding that the blisters have healed and that Crump had been walking to his medical evaluations, Crump's approval of wheelchair use was discontinued. [Exh. A-15, *Medical File 7/3/23 – 4/4/24*, p. 20].

15.    On July 20, 2023, Crump requested an appointment to receive sleep aids. [Exh. A-16, *Medical File 7/3/23 – 4/4/24*, p. 245]. Medical staff responded to his appointment, but denied his request, as sleep aids are not provided by mental health or medical staff. [*Id*.].

16.    On July 22, 2023, Crump was prescribed a second round of orally ingested sulfamethoxazole-TMP DS (Bactrim DS) for 9 days, which was discontinued upon completion. [Exh. A-17: *Medical File 7/3/23 – 4/4/24*, p. 111].

17.    On July 26, 2023, Crump was prescribed Cyclobenzaprine HCL (Flexeril) for two days, which was discontinued upon completion. [*Id.*, p. 112]. This prescription was renewed for 14 days on July 29, 2023. [*Id.*, pp. 112-113].

18.    On July 31, 2023, Crump received an intramuscular injection of ceftriaxone sodium (Rocephin) [*Id.*, p. 113].

19.    On July 31, 2023, Crump was ordered to undergo a thoracic/lumbar x-ray of his spine following continued reports of back pain. [Exh. A-18, *Medical File 7/3/23 – 4/4/24*, p. 253].

20.    On August 2, 2023, Crump received a prescription for gentamicin sulfate (Garamycin), topically applied to his shin, for 21 days. [Exh. A-19, *Medical File 7/3/23 – 4/4/24*, p. 114].

21.    Crump filed a medical grievance, stating that he was receiving inadequate medical care on July 22, 2023, and demanded that he be provided additional pain management therapies. [Exh. A-20, *Medical Grievances*, p. 3]. On August 2, 2023, the medical staff outlined his medical visits and found that the present treatment plan that had been prescribed to Crump was appropriate. [*Id.*, p. 4]. Accordingly, the medical Staff denied the grievance. [*Id.*].

22.     On August 12, 2023, lab reports found that Crump's calf injury was healing, with no signs of infection. [Exh. A-21, *Medical File 7/3/23 – 4/4/24*, p. 261].

23.     On August 13, 2023, Crump was prescribed orally ingested cyclobenzaprine HCL (Flexeril) for 7 days [Exh. A-10]. On August 21, this prescription was renewed for an additional 7 days [Exh. A-11]; on August 30, for 14 days [Exh. A-22, *Medical File 7/3/23 – 4/4/24*, pp. 118-119]; and on September 14, for 14 days [Exh. A-23, *Medical File 7/3/23 – 4/4/24*, p. 122].

24.     On August 15, 2023, Crump's spine was x-rayed to check for spinal injuries. [Exh. A-24, *Medical File 7/3/23 – 4/4/24*, p. 23].

25.     On August 18, 2023, Crump was prescribed orally ingested meloxicam (Mobic) for 12 days, which was discontinued upon completion [Exh. A-25, *Medical File 7/3/23 – 4/4/24*, p. 116].

26.     Crump's thoracic/lumbar x-rays were inconclusive, providing poor visualization. [Exh. A-26, *Medical File 7/3/23 – 4/4/24*, p. 267].

27.     On August 18, 2023, Crump was scheduled for a CT scan. [*Id.*].

28.     On August 29, 2023, Crump was prescribed orally ingested sertraline HCL (Zoloft) for five days, which was discontinued upon completion. [Exh. A-22, p. 118].

29.     On August 30, 2023, Crump requested an appointment with medical staff to renew his prescription of muscle relaxers. [Exh. A-27, *Medical File 7/3/23 – 4/4/24*, p. 272]. This prescription was renewed, as requested. [*See ¶* 23].

30.     On September 1, 2023, Crump was permitted to use a handicap shower with support bars. [Exh. A-15].

31.     On September 8, 2023, Crump's prescription of acetaminophen was renewed again, for 30 days [Exh. A-28, *Medical File 7/3/23 – 4/4/24*, p. 120]; alongside a 30-day

prescription of ibuprofen. [*Id.*, p.121]. These prescriptions were renewed again on October 8, for another 30 days [*Id.*, pp. 123-124] before being changed on October 10 to a 60-day prescription. [*Id.*, pp. 124-125].

32.     On October 10, 2023, Crump was given a CT scan to determine if he suffered any spinal injuries, which showed no evidence of fracture or malalignment. [Exh. A-29, *Medical File 7/3/23 – 4/4/24*, p. 48].

33.     On the same day, Crump was prescribed orally ingested nortriptyline HCL (Pamelor) for two days, which was discontinued upon completion. [Exh. A-30, *Medical File 7/3/23 – 4/4/24*, p. 126]. That prescription was extended into a 60-day prescription on the same date. [*Id*, pp. 126-127].

34.     On October 19, 2023, Crump was prescribed another dose of orally ingested sertraline (Zoloft) for 60 days [*Id.*, p. 127].

35.     On October 22, 2023, Crump had another appointment with medical staff requesting a cane and a second mattress. [Exh. A-31, *File 7/3/23 – 4/4/24*, p. 356]. Medical staff contacted the health care provider in regard to his cane request, along with the request for a second mattress. [*Id.*].

36.     On October 24, 2023, Crump filed a medical grievance, requesting a second mattress and a cane. [Exh. A-32, *Medical Grievances*, pp. 11-12]. On the same date, the medical staff, upon reviewing Crump's previous assessments[2], along with the diagnostic imaging ordered on October 10, 2023, determined that Crump did not meet the qualifications for a second mattress or cane. [*Id.*, p. 12].

---

[2] According to Medical Staff, Crump was assessed on 7/12/23, 7/26/23, 7/31/23, 8/15/23, 8/18/23, 9/8/23, and 10/10/23. [*Id*].

37.    On October 29, 2023, complained of water and black mold in his cell. [Exh. A-2, p. 11]. According to Crump, he had not moved his mattress since he moved in. [*Id.*]. Jail staff were able to identify standing water, and could smell mold or fungus under the mattress, but were not able to see any mold, just rust spots. [*Id.*]. Upon identifying the smell and presence of water, Crump was immediately moved from Cell 16 to 6. [*Id.*].

38.    On November 2, 2023, Crump was prescribed orally ingested Prazosin HCL (Minipress) for 60 days. [Exh. A-33, *Medical File 7/3/23 – 4/4/24*, p. 130].

39.    On November 7, 2023, Crump had a follow-up appointment with medical staff regarding his back pain. [Exh. A-31, pp. 356-357]. During the appointment, it was found that Crump has had "little progress with exercise instructions that were provided by the medical staff." [*Id.*]. Further, the appointment, in review of both the x-ray and CT scan, found no evidence of acute osseous abnormalities. [*Id.*].

40.    On November 7, 2023, Crump was permitted to use a cane. [Exh. A-15].

41.    On the same date, Crump was prescribed orally ingested docusate sodium (Colace) for 30 days; orally ingested fiber-lax (Fibercon) for 30 days [Exh. A-34, *Medical File 7/3/23 – 4/4/24*, pp. 128-129]; and orally ingested naproxen (Naprosyn) for 60 days. [*Id.*].

42.    Following Crump's August 15, 2023, x-ray, Crump was recommended to undergo a muscle rub on November 16, 2023. [Exh. A-35, *Medical File 7/3/23 – 4/4/24*, p. 25]; and was prescribed Dynarub (muscle rub), topically applied for 21 days. [Exh. A-36, *Medical File 7/3/23 – 4/4/24*, p. 132]. This prescription was renewed on December 11, 2023, for an additional 20 days. [*Id.*, p. 133].

43.    On November 22, 2023, Crump attended an appointment with medical, complaining that his lower left leg tendon had detached. [Exh. A-37, *Medical File 7/3/23 –*

*4/4/24*, p. 358]. Crump was notified that, if the tendon was truly detached, he would have no ability to move his foot, that the foot would have no control, and that it would cause "drop foot." [*Id.*].  As found in the evaluation, Crump had both lateral and medial movement. *[Id.]*.

44.    On November 22, 2023, Crump was prescribed milk of magnesia, by oral ingestion, for one dose. [Exh. A-38, *Medical File 7/3/23 – 4/4/24*, p. 133].

45.    On December 11, 2023, Crump was prescribed an additional round of orally ingested sertraline (Zoloft) for 60 days. [Exh. A-39, *Medical File 7/3/23 – 4/4/24*, p. 135]. This prescription was renewed on February 13, 2024, for an additional 60 days. [Exh. A-40, *Medical File 7/3/23 – 4/4/24*, pp. 139-140].

46.    On December 14, 2023, Crump was prescribed orally ingested hydroxyzine pamoate (Vistaril) for 60 days. [Exh. A-41, *Medical File 7/3/23 – 4/4/24*, p. 134]. This prescription was renewed on January 11, 2024, for an additional 100 days. [Exh. A-42, *Medical File 7/3/23 – 4/4/24*, p. 137].

47.    On January 2, 2024, Crump was prescribed an additional round of orally ingested Prazosin HCL (Minipress) for 60 days [Exh. A-43, *Medical File 7/3/23 – 4/4/24*, p. 136].

48.    On January 3, 2024, Crump was prescribed an additional round of orally ingested acetaminophen for 30 days. [*Id.*, p. 136]. This prescription was renewed on January 11 to extend for an additional 90 days. [Exh. A-44, *Medical File 7/3/23 – 4/4/24*, p. 138].

49.    On January 11, 2024, Crump was prescribed an additional round of orally ingested naproxen for 25 days [*Id.*, pp. 137-138].

50.    On February 13, 2024, Crump filed a grievance for being denied the use of a wheelchair despite his alleged spinal and ankle injuries, as well as failing to receive an MRI instead of a CT scan. [Exh. A-45, *Medical Grievances*, pp. 19-20]. On February 22, 2024, the

Medical Administrator found that Crump was assessed numerous times by nurse practitioners[3], as well as the medical director[4]. [*Id.*, at 20]. The Administrator further found that Crump's allegations were untrue; rather, Crump was provided a wheelchair on July 5, 2023, until such time as the blisters on his feet were healed, which was found to be the case on July 20, 2023, as Crump's blisters had healed and he was "walking independently to medical without the use of the wheelchair." [*Id.*].

51.    On February 16, 2024, Crump attended another appointment with medical staff, regarding his complaints of back pain. [Exh. A-46, *Medical File 7/3/23 – 4/4/24*, p. 359]. At that appointment, medical staff noted that Crump had multiple imaging studies, including a CT of his lumbar spine that showed degenerative changes, but no evidence of fracture or malalignment. [*Id.*].

52.    On February 16, 2024, Crump was prescribed orally ingested duloxetine HCL (Cymbalta), for 90 days. [Exh. A-40, p. 139].

53.    On February 21, 2024, Crump filed a staff grievance stating that he was denied the use of a wheelchair. [Exh. A-47, *Staff Grievances*, p. 9]. On February 23, 2024, Sgt. Nuss stated that medical staff determines whether any inmate is provided a wheelchair, and that Crump needed to file a medical grievance to address that issue. [*Id.*].

54.    On February 24, 2024, Crump appeared for another appointment with medical staff regarding his belief that the tendon in his lower left leg detached. [Exh. A-46]. Medical staff again reassured Crump that the tendon was attached, and he would not be able to move his foot at all if it had truly detached. [*Id.*].

---

[3] According to the Grievance Response, Crump was seen by nurse practitioners regarding the related complaints on 7/5/2023, 7/12/2023, 7/26/2023, and 7/31/2023. [*Id.*].

[4] According to the Grievance Response, Crump was seen by the medical director regarding the related complaints on 8/15/2023, 8/18/2023, 9/8/2023, 10/10/2023, 11/7/2023, 1/9/2024, and 2/16/2024. [*Id.*].

55.     On February 28, 2024, Crump filed a medical grievance stating that he had been provided inadequate medical diagnosis and that his treatment was not working. [Exh. A-48, *Medical Grievances*, pp. 28-29]. On February 29, 2024, the Medical Administrator notified Crump to file a medical request form in the form of further evaluation and treatment if the treatment was not working. [*Id.* at 29]. However, the Medical Administrator also noted that Crump had refused to be seen by the nurse, which inhibits adequate medical treatment. [*Id.*].

56.     On March 1, 2024, Crump was prescribed an additional round of Prazosin HCL (Minipress) for 60 days. [Exh. A-40, p. 140]. This prescription was modified on March 14, 2024 to extend for 90 days. [*Id.*, p. 141].

57.     On March 5, 2024, Crump appeared for another appointment with medical complaining of back pain. [Exh. A-49, *Medical File 7/3/23 – 4/4/24*, p. 360]. Medical staff ordered an MRI of the thoracic and lumbar spine. [*Id.*].

58.     On March 14, 2024, Crump was ordered to taper off the Sertraline HCL (Zoloft), receiving only 7 doses over the next week. [Exh. A-40, pp. 141-142]. On the same day, Crump was issued a prescription for orally ingested ziprasidone HCL (Geodon), for 90 days. [*Id*].

59.     On March 20, 2024, Crump requested a back brace, but his request was not approved by Dr. Stanton. [Exh. A-50, *Medical File 7/3/23 – 4/4/24*, p. 28].

60.     On March 20, 2024, after complaining of chest pain [Doc. 1, *Complaint*, pp. 20-21], Crump was evaluated by medical staff at 10:00 p.m. [Exh. A-51, *Medical File 7/3/23 – 4/4/24*, pp. 62-64]. An EKG was performed. [*Id.* at 64]. Medical staff were unable to reproduce his pain, and there were no symptoms of acute onset, severe distress, abnormal vital signs, hypoxemia, pain with exertion, syncope, dizziness, palpitations or previous chest pain episodes. [*Id.*]. Crump, during his evaluation, noted that the symptoms resolved on their own. [Exh. A-49].

Ultimately, Crump was returned to Housing after his evaluation by medical staff. [Exh. A-51, p. 64].

61.    On March 30, 2024, Crump was prescribed topical dibucaine (Nupercainal) for 7 days [*Id.*, p. 144]; docusate sodium (Colace) for 7 days [Exh. A-52, *Medical File 7/3/23 – 4/4/24*, p. 145]; and one dose of milk of magnesia. [*Id.*].

62.    On April 5, 2024, Crump was prescribed orally ingested fiber-lax (Fibercon) for 20 days. [Exh. A-53, *Medical File 4/4/24 – 11/15/24*, p. 42].

63.    On April 12, 2024, Crump was prescribed orally ingested Ziprasidone HCL (Geodon) for 30 days. [*Id.*, p. 45].

64.    On April 15, 2024, Crump was prescribed orally ingested hydroxyzine pamoate (Vistaril) for 36 days. [*Id.*, p. 47].

65.    On April 18, 2024, Crump was prescribed chlorhexidine gluc A/F (Peridex), for 10 days. [*Id.*, p. 43].

66.    On April 20, 2024, Crump again complained about the presence of water in his cell and was immediately moved upon Jail Staff confirming his complaint. [Exh. A-64, *JCADC Inmate Housing*].

67.    On April 21, 2024, Crump was prescribed topical ointment dibucaine (Nupercainal) for 4 days [*Id.*, p. 44]; and phenyleph HCL/witch hazel (Preparation H) for 5 days. [*Id.*, p. 44].

68.    On April 22, 2024, Crump was prescribed orally ingested docusate sodium (Colace) for 14 days [*Id.*, pp. 45-46] and fiber-lax (Fibercon) for 21 days [*Id.*, pp. 47].

69.    On April 23, 2024, Crump attended a medical appointment regarding his back pain, stating that he has experienced no improvement in the pain in his mid to lower back. [Exh.

A-54, *Medical File 4/4/24 – 11/15/24*, p. 308]. Medical staff reviewed his previous imaging studies, including the MRI imaging, finding that no evidence of fracture or malalignment, but evidence of degenerative arthritis and mild scoliosis. [*Id.*]. Ultimately, medical staff opted to continue present treatment, and prescribed conditioning and strength exercises. [*Id.*].

70.    On April 24, 2024, Crump filed a medical grievance demanding that he be sent to an orthopedic spinal specialist and given a back brace. [Exh. A-55, *Medical grievances*, pp. 56-57]. On April 26, 2024, medical staff denied that grievance, finding that, after review of Crump's medical file, his MRI did not warrant referral to an orthopedic specialist or a back brace. [*Id.*, at 57].

71.    On April 25, 2024, Crump appeared for another appointment with medical regarding his back pain. [Exh. A-54]. Medical staff again were unable to palpitate or visualize the scoliosis, but did note that Crump had a slightly raised right scapula, which they attributed to the scoliosis or use of a cane only on his right side. [*Id.*].

72.    On April 26, 2024, Crump filed a second medical grievance, demanding a back brace, a spine specialist, and a chiropractor. [Exh. A-56, *Medical grievances*, pp. 60-61]. On April 30, 2024, medical staff denied that grievance, finding that Crump was suffering from mild scoliosis, not a spinal dislocation, which did not require a back brace. [*Id.*, at 61]. Further, Crump's MRI results found that outside specialists were not necessary. [*Id.*].

73.    On April 29, 2024, Crump was prescribed Chlorhexidine 12% (Peridex), for 30 days. [Exh. A-57, *Medical File 4/4/24 – 11/15/24*, p. 48].

74.    On the same date, Crump had a dental appointment to check complaints that his teeth were loose. [Exh. A-65, *Medical File 4/4/24 – 11/15/24*, p. 196]. Upon examination,

Crump's teeth were determined to be "intact, no loose or moving teeth noted, no redness or swelling observed to gums, no bleeding/ any visible abnormalities seen." [*Id.*].

75.    On May 5, 2024, Crump began an additional round of naproxen, which had been prescribed for 90 days. [*Id.*, p. 49]. On May 7, 2024, an additional round of acetaminophen was added to his prescription, also for 90 days. [*Id.*, p. 49].

76.    On May 8, 2024, Crump was provided a mouth piece by medical. [Exh. A-66, *Medical File 4/4/24 – 11/15/24*, p. 201]. Crump requested an appointment to heat the mouth guard to a warm temperature to mold it, but ultimately refused the appointment when medical staff scheduled it. [*Id.*, pp. 201-202].

77.    On May 15, 2024, Crump appeared for another medical appointment, complaining of his back pain, attributing to a separated spine. [Exh. A-54, pp. 308-309]. Medical staff again found that there was no evidence of any sort of fracture or malalignment in Crump's spine. [*Id.*]. Further, the staff found that Crump was in no acute distress; that his gait was less antalgic;  that he did not exhibit any difficulty or appearance of pain when climbing onto or off the scale or exam table; that he was able to reach his arm behind his back without difficulty or apparent pain to point to an area on his mid back to show where his spine was allegedly separated; and that he was not tender to palpitation of the spine, which showed normal alignment of the spinous processes. [*Id*].

78.    On May 15, 2024, Crump was prescribed orally ingested trazodone HCL (Deseryl) for 30 days. [Exh. A-50, p. 50].

79.    On May 16, 2024, Crump was prescribed orally ingested duloxetine HCL (Cymbalta) for 90 days [Exh. A-58, *Medical File 4/4/24 – 11/15/24*, p. 51-52]; and an additional

round of hydroxyzine pamoate (Vistaril) for 30 days. [*Id.*]; which was increased to 44 days on the same date. [*Id.*, p. 52].

80.    On May 20, 2024, Crump was prescribed orally ingested calcium antacids (Tums) for 20 days [*Id.*, p. 53]; docusate sodium (Colace) for 20 days [*Id.*, pp. 53-54]; fiber-lax (Fibercon) for 20 days [*Id.*]; and one dose of milk of magnesia [*Id.*, p. 55].

81.    On May 21, 2024, Crump was prescribed an additional round of trazodone HCL (Deseryl) for 40 days. [*Id.*, pp. 55-56].

82.    On May 29, 2024, Crump filed a medical grievance demanding the use of a wheelchair for long distance travel, stating that he had been approved for use of a wheelchair since November 27, 2023. [Exh. A-59, *Medical Grievances*, p. 70]. On June 27, 2024, Medical VP Ehrlich responded, stated that Crump's accommodations are provided based upon the treatment plan. [*Id.*, p. 71].

83.    On the same date, Crump stated that he was refusing to go to Court at the time stated by jail staff, because his appointed court hearing time was several hours later. [Exh. A-2, p. 20]. Crump was notified that if he did not go when the other inmates went, he would miss his opportunity to attend. [*Id.*]. Crump continued to refuse. [*Id.*].

84.    On June 3, 2024, Crump filed a staff grievance that he was denied the use of a wheelchair on his Court visit on the same date while present in the Johnson County District Court. [Exh. A-60, *Staff Grievances*, p. 32]. On June 4, 2024, Sgt. Cooley denied Crump's grievance, stating that, for longer distances, a wheelchair was provided to ease transportation. [*Id.*]. The distance that Crump was required to travel in the Courthouse to the elevators was roughly 40 steps with deputies walking in tandem with Crump to prevent risks of falls. [*Id.*]. Crump appealed Sgt. Cooley's denial on June 5, 2024, disagreeing with Sgt. Cooley's

assessment. [*Id.* at 33]. On June 10, 2024, Lieutenant Brian Zeeff denied Crump's grievance appeal, stating that Sheriff's Office policy was properly followed and appropriate accommodations were made for his mobility needs. [*Id.*]. Further, Lieutenant Zeeff stated that the use of a wheelchair for Crump was a courtesy, as there were no orders from medical staff requiring a wheelchair. [*Id.*].

85.     On June 5, 2024, Crump had a follow-up appointment for his back pain. [Exh. A-61, *Medical File 4/4/24 – 11/15/24*, p. 310]. Medical staff noted that Crump refused follow-up x-rays, even ones that had been ordered. [*Id.*]. Crump was prescribed an additional round of cyclobenzaprine HCL (Flexeril) for 7 days. [*Id.*; Exh. A-58, p. 56].

86.     On June 12, 2024, Crump had an additional follow-up appointment regarding his back pain. [Exh. A-61, p. 310]. In reviewing his CT and MRI scans, Crump was noted as having minimal to mild degrees of degenerative changes in his lumbar spine, and no significant stenosis. [*Id.*]. Medical staff noted that they intended to continue to monitor and treat for pain control. [*Id.*]

87.     On June 12, 2024, Crump was prescribed an additional round of docusate sodium (Colace) for 30 days [Exh. A-62, *Medical File 4/4/24 – 11/15/24*, p. 57] and fiber-lax (Fibercon) for 30 days. [*Id.*, p. 58].

88.     On June 15, 2024, Crump began another round of hydroxyzine pamoate (Vistaril) for 15 days. [*Id.*, pp. 58-59]. This dose was extended 74 days on June 26, 2024 [*Id.*, p. 59]; and then extended again a further 30 days on the same date. [*Id.*, p. 60].

89.     On June 26, 2024, Crump was prescribed an additional round of trazodone HCL (Deseryl) for 69 days. [*Id.*, pp. 60-61].

90. On July 10, 2024, Crump had an additional follow-up appointment with medical staff regarding his back pain. [Exh. A-61, pp. 310-311]. Specifically, Crump alleged that the use of the belt restraint was exacerbating his symptoms. [*Id.*]. Medical staff did not change their treatment plan, but did suggest that Jail Staff consider alternative options to the belt restraints for transport, if possible. [*Id.*].

91. On July 10, 2024, Crump was prescribed an additional round of ibuprofen (Motrin) for 97 days. [Exh. A-56, pp. 61-62].

92. On July 13, 2024, Crump was prescribed an additional round of orally ingested chlorhexidine 12% (Peridex) for 11 days. [*Id.*, p. 62].

93. On July 29, 2024, Crump was prescribed orally ingested buspirone HCL (BuSpar) for 40 days. [*Id.*, p. 63].

94. On August 7, 2024, Crump again appeared for an appointment with medical, complaining of back pain. [Exh. A-61, pp. 311-312]. Medical staff noted that Crump was in no acute distress, exhibited a mildly antalgic gait, and had no difficulty with changing positions from standing to sitting and vice versa. [*Id.*].

95. On August 7, 2024, Crump was prescribed an additional round of acetaminophen (Tylenol) for 90 days [Exh. A-63, *Medical File 4/4/24 – 11/15/24*, p. pp. 63-64] and an additional round of cyclobenzaprine HCL (Flexeril) for 14 days. [*Id.*, p. 64].

96. On August 13, 2024, Crump began another dose of duloxetine HCL (Cymbalta) for 30 days. [*Id.*, p. 65].

97. On August 19, 2024, Crump began another dose of chlorhexidine 12% (Peridex) for 11 days. [*Id*., p. 66].

98.    All told, Crump was documented having 196 visits to medical or triage. [Exh. A-2, *JoCo Sheriff's Jail Logs*]. During the same timeframe, Crump refused medical treatment or medications on 62 occasions. [*Id.*].

## III.    ARGUMENTS AND AUTHORITIES

**A.    Legal Standards.**

**a.    Summary Judgment Standards.**

A movant is entitled to summary judgment pursuant to Federal Rules of Civil Procedure 56(c), "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law."

The Supreme Court has defined the standards to be considered in ruling on a summary judgment motion. In *Anderson v. Liberty Lobby, Inc.*, the Court discussed the requirements of Rule 56(c) that there is no genuine issue of material fact:

> "As to materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of this suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."

477 U.S. 242, 248 (1986).

Where the party moving for summary judgment does not bear the burden of proof at trial, that party must show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden is met when the party identifies portions of the record demonstrating an absence of a genuine issue of material fact. *Id.* at 323. "A party moving for summary judgment need not disprove plaintiff's claim but rather, must only establish that the factual allegations have no legal significance. *Dayton Hudson Corp.*

*v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10ᵗʰ Cir. 1987).  When considering a motion for summary judgment, a court must examine all of the evidence in a light most favorable to the opposing party. *Jurasek v. Utah State Hosp.*, 158 F.3d 506, 510 (10ᵗʰ Cir. 1998).

### b. *Pro Se* Plaintiff.

A *pro se* litigant "does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment. *Hass v. U.S. Airforce,* 848 F. Supp. 926 (D. Kan. 1994) (quoting *Brown v. Crawford,* 906 F. 2d 667, 670 (10th Cir. 1990)). Furthermore, "*pro se* litigants are subject to the same rules of procedure that govern other litigants." *DiCesare v. Stuart,* 12 F. 3d 973, 979 (10th Cir. 1993)[5].

### c. Qualified Immunity.

Courts review summary judgment based on qualified immunity differently than other cases. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Because qualified immunity is "the norm," officials enjoy a presumption of immunity. *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010) (quoting *Harlow*, 457 U.S. at 807). A plaintiff overcomes the presumption of immunity "by carrying the heavy burden of showing both that (1) the defendant-officer in question violated one of his constitutional rights, and (2) the infringed right at issue was clearly established at the time of the allegedly unlawful activity such that 'every reasonable official would have understood that what he was doing' violated the law." *Kerns v. Bader*, 663 F.3d 1173, 1180 (10th Cir. 2011) (quoting *Ashcroft v. al– Kidd*, 563 U.S. 731, (2011)).

---

[5] A separate Notice to Pro Se Litigant has been filed with the Clerk of the Court.

**B.  The individual Defendants are entitled to qualified immunity on the federal claims.**

 **a.  Defendants are entitled to judgment on Count I as the undisputed evidence demonstrates that Crump received prompt and adequate care for his injuries.**

In Count I, Crump asserts that the Defendants are aware of his injuries but have denied him access to qualified medical professionals, denied him adequate medication, and failed to accommodate his injuries. Doc 48, p. 28. The individual Johnson County Defendants are entitled to qualified immunity under both prongs.

 **i.  Crump cannot establish Johnson County Defendants were deliberately indifferent to any serious medical condition.**

The incontrovertible evidence establishes Johnson County Defendants were not deliberately indifferent to his medical needs. Further, any disagreements with Crump's care do not rise to a constitutional violation as a matter of law.

Prison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act deliberately and indifferently to serious medical needs of prisoners in their custody. *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999). A prison official acts with "deliberate indifference," as an element of a conditions-of-confinement civil rights claim under the Eighth Amendment, when he knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Redmond v. Crowther*, 882 F.3d 927, 936 n.3 (10th Cir. 2018) (*citing Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Conditions-of-confinement civil rights claims under the Eighth Amendment have two prongs: (1) an objective prong, under which the alleged injury must be sufficiently serious; and (2) a subjective prong, under which the prison official imposed the condition and must have done so with deliberate indifference. *Id.* "Deliberate indifference," in the § 1983 context, is akin to

recklessness, in that it is a conscious acceptance of a known, serious risk. *Bolden v. City of Topeka*, 318 F. Supp. 2d 1076, 1082 (D. Kan. 2004) (citing *Woodward v. City of Worland*, 977 F.2d 1392, 1399 (10th Cir. 1992)).

A prisoner's medical needs are considered "sufficiently serious," as required for establishing the objective element of the claim for deliberate indifference, if the condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *The Est. of Lockett by & through Lockett v. Fallin*, 841 F.3d 1098, 1112 (10th Cir. 2016) (internal citations omitted).

To satisfy the subjective component, the plaintiff must show that the defendant knew that the plaintiff "faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Id.* (citing *Hunt*, 199 F.3d at 1224) (internal quotations omitted). This requires that a prison official had a sufficiently culpable state of mind. *Est. of Beauford v. Mesa Cnty., Colorado*, 35 F.4th 1248, 1262 (10th Cir. 2022) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Prison officials may rely on the advice and course of treatment prescribed by medical personnel. *Id.*, at 1265 (citing *McRaven v. Sanders*, 577 F.3d 974, 981 (8th Cir. 2009) ("[A] prison official may rely on a medical professional's opinion if such reliance is reasonable."); *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006) ("Except in the unusual case where it would be evident to a layperson that a prisoner is receiving inadequate or inappropriate treatment, prison officials may reasonably rely on the judgment of medical professionals.")).

Crump can supply no facts which establish the Johnson County Defendants were deliberately indifferent to his medical needs. Crump had, and continues to have, access to medical staff at all times during his stay in the JCADC. Medical staff for the JCADC responded

to his appointment requests and complaints as diligently as possible. Further, Crump's treatment has been well documented, from daily care for the dog bite injury to his calf, to the repeated evaluations, prescriptions and miscellaneous treatments (including deep muscle massages) received to alleviate the pain he alleges in his back. The treatment provided by the medical staff serving the JCADC was adequate and addressed the medical issues that Crump experienced. There is simply no evidence to support the notion that any of the Johnson County Defendants were deliberately indifferent in permitting the medical service that Vital Core provided.

Crump may disagree that the medical treatment he received was adequate. However, a claim of medical malpractice or negligence plainly does not constitute a constitutional violation. *Estelle v Gamble*, 429 U.S. 97, 105 (1976). Likewise, a disagreement over a course of treatment does not amount to a constitutional violation. *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) ("a mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment.").

Crump began regularly rejecting medications and appointments that were being offered to him, over sixty times, accounting for roughly one-third of all potential medical visits. If there was any deficiency in Crump's medical needs, Crump's actions were the sole cause. Simply put, Crump has no basis to support the contention that any of these Defendants were deliberately indifferent. Accordingly, judgment as a matter of law is appropriate.

### ii. The law was not clearly established.

Crump cannot cite to controlling precedent sufficient to have put any Johnson County Defendant on notice that their conduct violated a clearly established right. "A clearly established right is one that is 'sufficiently clear that every reasonable officer would have understood that

what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Reichle v. Howards*, 566 U.S 658, 664 (2012)). In other words, the constitutional question must be "beyond debate." *Ashcroft v. al-Kill*, 563 U.S. 731, 741 (2011). "For the law to be 'clearly established,' there ordinarily must be a Supreme Court or Tenth Circuit opinion on point, or the clearly established weight of authority from other circuits must point in one direction." *Pompeo v. Bd. of Regents of Univ. of New Mexico*, 852 F.3d 973, 981 (10th Cir. 2017). Accordingly, the individual Johnson County Defendants are entitled to qualified immunity.

> **b. Johnson County Defendants are entitled to judgment on Count II as the undisputed evidence demonstrates Defendants were not deliberately indifferent to Crump's conditions of confinement complaints.**

In Count II, Crump asserts he was forced to walk with a separated spine for months, was forced to live in an unsanitary cell for five months, was prescribed harmful medication that caused severe side effects and was left to die while having a heart attack. The individual Johnson County Defendants are entitled to qualified immunity under both prongs for each of Crump's complaints.

> **i. Crump cannot establish a violation of clearly established law based on JCADC healthcare providers removing his wheelchair.**

Crump was granted the use of a wheelchair for a period deemed medically necessary for his blisters to heal. There is no evidence to support the contention that Crump's wheelchair was forcibly removed on July 8, 2023. Rather, the incontrovertible evidence establishes that Crump, seeking to leave medical segregation, willingly gave up use of the wheelchair. Further, on July 20, 2023, it was determined that the blisters on his feet had healed adequately, removing any need for a wheelchair altogether. Crump has no evidence which can controvert these facts, and, as stated above, there is no evidence to suggest that any defendant was deliberately indifferent to his medical needs. *See* § II, ¶¶ 10, 14.

ii.  **Crump's complaints concerning his cell conditions fail to rise to the level of a constitutional violation.**

Crump asserts that he was forced to live in an uncleaned cell for five months, that he slept on a soiled mattress and lived in unsanitary conditions, and that he was completely disabled and unable to clean it. Doc. 48, p. 16.

Crump was moved into cell 16 on module 2A on July 11, 2023. He made no complaints or grievances about the condition of the cell until October 29, 2023, when he told his module officer that there was water and mold under his mattress. He was immediately moved. *See* § II, ¶37. He next complained about water in his cell on April 20, 2024, and was again immediately moved. *See* § II, ¶ 66. Simply put, there is no evidence he was subject to any prolonged issues with his cells. These conditions are *de minimis*, at best. "There is … a *de minimis* level of imposition with which the Constitution is not concerned." *Bell v. Wolfish*, 441 U.S. at 539 n. 21. Time exposed to certain cell conditions can be a factor courts consider in their analysis of these issues. *Id.* at 543; *see also*, *Hutto v. Finney*, 437 U.S. 678, 686-87 (1978) ("A filthy, overcrowded cell and a diet of 'gruel' might be tolerable for a few days and intolerably cruel for weeks and months"). In *Fillmore v. Eichkorn*, the District Court of Kansas found that plaintiff's allegations that he was placed in a detoxification cell, where he did not have a chair, mattress, sink, toilet, blanket, pillow, writing materials, or a sufficient amount of toilet paper for several hours did not implicate the Constitution's due process protections. 891 F. Supp. 1482, 1492-93 (D. Kan. 1995). Similarly, in an unpublished opinion, the Tenth Circuit held that allegations that an inmate was held for four nights and five days in a basement intake cell with minimal clothing and bedding, no personal hygiene items, and no cleaning supplies for the cell did not amount to a constitutional violation. *Estrada v. Kruse*, 38 F. App'x 498, 498-99, 2002 WL 399204, at *1 (10th Cir. Mar. 15, 2002).

### iii.    Medications/heart attack.

Crump asserts that the Johnson County Defendants were deliberately indifferent to Crump's allegations of adverse effects to his medications, which he alleges caused him to suffer a heart attack. Doc. 48, p. 28. However, Crump can point to no evidence to support the contention that any Johnson County Defendant was indifferent to his medical needs. On March 20, 2024, after Crump complained of chest pains, he was seen by medical staff on the same day, where he was given a full suite medical evaluation, checking his heart rate with EKG, and a full assessment of his health, which found that his pain was unreproducible, and there were no symptoms of acute onset, severe distress, abnormal vital signs, hypoxemia, pain with exertion, syncope, dizziness, palpitations or previous chest pain episodes. *See* § II, ¶ 60. There were no signs of any sort of actual medical emergency that Crump was experiencing, but Crump was still given a full evaluation to determine if he had any potential heart-related health effects. Simply put, there is no evidence that any Johnson County Defendant, in requesting that Crump receive a full health evaluation based upon his complaints, were deliberately indifferent to his medical needs. Accordingly, judgment as a matter of law is appropriate.

### c.    Defendants are entitled to judgment on Count IV where Crump cannot establish essential elements of a § 1983 supervisory liability claim.

Crump asserts § 1983 supervisory liability claims against Defendants Ehrlich, Becky LNU, Dr. Stanton, Sergeants Cooley and Watterson, and three unknown sergeants. Doc 48, p. 33. Crump asserts that each of these defendants have a direct link to his inadequate care. *Id*. Sergeants Cooley and Watterson should be granted judgment because Crump cannot establish an underlying constitutional violation, their personal participation in any purported deprivation or that they acted with the requisite state of mind.

Personal participation is an essential element in a § 1983 claim. *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). It is well settled that a defendant may not be held liable under § 1983 based upon *respondeat superior*. *See Worrell v. Henry*, 219 F.3d 1197, 1214 (10th Cir. 2000); *Gagan v. Norton*, 35 F.3d 1473, 1476 n. 4 (10th Cir. 1994). "[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008).

A supervisor is liable only if he is personally involved in the constitutional violation and a sufficient causal connection exists between the supervisor and the constitutional violation. *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006). Accordingly, the plaintiff must demonstrate an affirmative link between the supervisor and the constitutional violation. *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010) *cert. denied*, 563 U.S. 960 (2011). To demonstrate the link, Crump must establish "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds*, 614 F.3d at 1199.

In terms of causation, the "requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Buck v. City of Albuquerque*, 549 F.3d 1269, 1279-80 (10th Cir. 2008). Mere negligence is not enough to hold a supervisor liable under §1983. *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997). Rather, the supervisor's liability must be based upon the supervisor's deliberate indifference. *Est. of Fuentes ex rel. Fuentes v. Thomas*, 107 F. Supp. 2d 1288, 1301 (D. Kan. 2000), *aff'd sub nom. Cerca v. Thomas*, 30 F. App'x 931 (10th Cir. 2002).

### i. Sergeants Cooley and Watterson did not violate Crump's constitutional rights.

Crump alleges that Sergeants Cooley and Watterson acquiesced to an unconstitutional policy of denying inmates wheelchairs, that they denied him access to court, and that they "failed to accommodate Crump's disability with evil intentions." [Doc. 48, p. 33].

As an initial matter, Crump's supervisory liability claim fails because there is no underlying constitutional violation. *See Fogarty*, 523 F.3d at 1162 (supervisory liability requires constitutional deprivation linked to supervisor's personal participation); *Christensen v. Big Horn Cnty. Bd. of Cnty. Comm'rs*, 374 Fed. Appx. 821, 827 (10th Cir. 2010) (absent underlying constitutional violation, sheriff and county commissioners cannot be held derivatively liable); *Martinez v. Beggs*, 563 F.3d 1082, 1091-92 (10th Cir. 2009) (where individual county defendants did not violate jail inmate's constitutional rights, Sheriff not liable as a matter of law for policy, training or supervision).

Insofar as Sergeants Cooley and Watterson denied Crump the use of a wheelchair, it was not a decision which Defendant Cooley had control. Rather, the use of a wheelchair was governed by the opinions of the medical staff, which determined that a wheelchair was not medically necessary. Reliance upon the advice and opinions of medical staff cannot constitute a constitutional violation when it is not patently obvious. Crump can supply no facts which contradict this evidence. Crump can supply no facts which support his allegations of "causing severe injury" "failing to accommodate" his disability with "evil intentions." Crump's claims are threadbare and wholly lacking, and accordingly, judgment as a matter of law is appropriate.

Crump can provide no evidence of any denial of access to courts. As stated in § II, ¶ 83, Crump refused to travel to the courthouse at the scheduled time because he did not wish to wait for the amount of time before his scheduled hearing. When he was notified that there would not

be a second opportunity that date, Crump again refused. There can be no violation of Crump's rights when Crump's own conduct results in his failure to exercise them. Crump's conduct, not the Johnson County Defendants, resulted in his lack of access to the Court. Accordingly, judgment as a matter of law is appropriate.

### d. Johnson County Defendants are entitled to summary judgment on Count V because Crump cannot establish Defendants took any retaliatory or other violative action.

Crump asserts he has been retaliated against in violation of the First Amendment for exercising his constitutional rights. Doc. 48, pp. 33-34. Crump claims that he has been isolated and "personally attacked" because of his grievances and lawsuits. *Id.*, at 33. He claims that the Defendants refused to heat his dental mouthpiece out of spite because of his exercise of his First Amendment rights; conspired to write him up; and medically abandoned him twice. *Id.* at 33-34. Johnson County Defendants are entitled to judgment because Crump fails to allege any facts that support his allegations, and that the described conduct is wholly outside the control and purview of the Johnson County Defendants.

To make out a claim of unlawful retaliation by government officials in response to the exercise of his or her First Amendment rights, a plaintiff must show that: (1) he or she was engaged in constitutionally protected activity; (2) the officials' actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the officials' adverse actions were substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct. *Van Deelen v. Johnson*, 497 F.3d 1151, 1156 (10th Cir. 2007).

Allegations of conspiracy under § 1983 require that a plaintiff supply specific facts showing an agreement and concerted action among defendants. *Frasier v. Evans*, 992 F.3d 1003,

1024 (10th Cir. 2021). Conclusory allegations of conspiracy are insufficient to state a valid §

1983 claim. *Id.* (*citing Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998)).

      Crump alleges that Defendant Salgado conspired to falsely write him up and have him

"falsely imprisoned" because they did not like that he submitted grievances. [Doc. 48, p. 34].

Crump has supplied no facts which show that there was any agreement or concerted action

between the defendants, nor has Crump alleged particulars about any such agreement. Finally,

Crump has not supplied any facts to suggest that any action was actually taken against him in

any way based upon this conclusory statement. Crump's allegation of being denied hot water to

mold his mouth piece are equally unsubstantiated, especially when there is competent evidence

to show that Crump's own conduct prevented the very appointment from taking place. [*See* § II,

¶ 76]. Simply put, Crump's allegations are threadbare and lack evidentiary support. Accordingly,

judgment as a matter of law is appropriate.

      **e.  Johnson County Defendants are entitled to judgment on Count IX because Crump cannot establish a disability.**

      To state a claim under Title II of the ADA, a plaintiff must show that he is a qualified

individual with a disability, that he was excluded from participation in or denied benefits of a

defendant's services, programs, or activities, and that such exclusion, denial of benefits, or

discrimination was by reason of his disability. *Est. of Beauford v. Mesa Cnty., Colorado*, 35 F.4th

1248, 1276 (10th Cir. 2022). To sustain a claim, a plaintiff must produce specific evidence that

he wanted access to and was denied access. *Id.* (*citing Hockaday v. Colo. Dep't of Corr.*, 766 F.

App'x 572, 575 (10th Cir. 2019) (to show a violation under Title II, Plaintiff must identify

evidence in the record of a specific service, program, or activity requested by, but denied to, the

Plaintiff).

The ADA does not provide remedies for alleged medical negligence. *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005); *see also Bryant v. Madigan,* 84 F.3d 246, 249 (7th Cir.1996) (stating the ADA "would not be violated by a prison's simply failing to attend to the medical needs of its disable prisoners. No discrimination is alleged; [plaintiff] was not treated worse because he was disabled … The ADA does not create a remedy for medical malpractice."); *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005); *Nasious v. Colorado*, 495 F. App'x 899, 902 (10th Cir. 2012) ("To the extent that any of Nasious's ADA allegations can overcome *Fitzgerald*, he failed to produce evidence to show defendants denied him access to a prison program or discriminated against him *because* of his asserted disabilities.").

Crump alleges that he was denied access to a wheelchair by Defendants Cooley and Andrews, and that he was placed in a non-handicapped cell. [Doc. 48, p. 36]. However, Crump can supply no evidence that he was denied the use of a wheelchair based upon any recognized disability. Crump was first supplied a wheelchair based upon blisters on his feet. Once those blisters were healed, Crump's wheelchair was no longer deemed medically necessary, and was thus returned to medical staff. Crump has, at no stage, been identified as handicapped or suffering from any disability. Crump alleges back pain, but there are no medical records that support that Crump is suffering from any permanent or disabling injuries. Crump has not and cannot identify evidence of any disability that would afford him protection under Title II. Accordingly, Crump's back pain, while likely uncomfortable, is not adequate to sustain a claim under Title II, and judgment as a matter of law is therefore appropriate.

## C.  Count III: *Monell* Liability

### a.  Johnson County Defendants are entitled to judgment on the *Monell* claim where there is no underlying constitutional violation or evidence of policy or custom.

A § 1983 plaintiff may prove the existence of an official policy or custom subjecting a municipality to liability in five ways: (1) the municipality may be liable for a decision by its properly constituted legislative body; (2) an official policy exists when the municipal board or agency exercises authority delegated to it by a municipal legislative body; (3) actions by those with final decision-making authority for the municipality constitute official policy; (4) the municipality may be liable for a constitutional violation resulting from inadequate training when its failure to train the lawless employee reflects a deliberate indifference to the plaintiff's constitutionally-protected rights; or (5) the municipality's custom caused the constitutional violation. *Darr v. Town of Telluride, Colo*, 495 F.3d 1243, 1257 (10th Cir. 2007) (citing *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989) (inadequate training); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 481-82 n. 10 (1986) (municipal legislative action, individual with final decision-making authority, and custom); *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694 (1978) (agency exercising delegated authority)). Particularity is required in identifying a municipal policy or custom. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) ("Obviously, if one retreats far enough… some municipal 'policy' can be identified behind almost any such harm inflicted by a municipal official.").

Municipal liability is at its most tenuous where the claim turns on a failure to train. *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (*citing Tuttle*, 471 U.S. at 822-23). Because "deliberate indifference" is a stringent standard of fault, Crump must supply proof that a municipal actor disregarded a known or obvious consequence of his action. *Id.* (*citing Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997)). A less stringent standard of fault of a failure-to-train claim would result in *de facto respondeat superior* liability on municipalities. *Id.*

### i.    BOCC should be granted judgment because it has no control over the JCADC.

The BOCC should be granted judgment because it has no control over the JCADC. The powers and authority of a board of county commissioners are limited to those expressly conferred by statute. *State ex rel. Moses v. Bd. of Cty. Comm'rs of Marshall Cty.*, 173 Kan. 367 (1952); *State ex rel. Cole v. City of Garnett*, 180 Kan. 405 (1956). These enumerated powers simply do not include the charge and custody of the county jail and all prisoners therein. Instead, the Legislature has bestowed those responsibilities only on the county sheriffs. *See* K.S.A. §§ 19-811; *Meyer v. Nava*, 518 F. Supp. 2d 1279, 1287 (D. Kan. 2007) ("The law in Kansas is clear that the sheriff is the official in charge of the county jail.") Thus, the BOCC has no control over the JCADC or the prisoners contained therein as a matter of law.

Additionally, like the commissioners, the sheriff is also an independently elected official. K.S.A. § 19-801a. Thus, a sheriff's official acts, conduct and function with respect to overseeing and controlling the jail and its prisoners is not subject to any review, meaningful or otherwise, by the BOCC. *See Lee v. Wyandotte Cty.*, 586 F. Supp. 236, 238-39 (D. Kan. 1984). The Sheriff is simply not the subordinate of the BOCC when it comes to these statutory duties. *Bd. of Cty. Comm'rs of Lincoln v. Nielander*, 275 Kan. 257, 261 (2003) ("[t]he sheriff is not a subordinate of the board of county commissioners…Rather, the sheriff is a state officer whose duties, powers, and obligations derive directly from the legislature and are coextensive with the county board.").

Therefore, with regard to the allegations set forth in this case, any conduct of the Sheriff or his subordinate agents cannot be legally attributed to county commissioners. *Lee* 586 F. Supp. at 239 (plaintiffs failed to state a claim against defendant commissioners); *Marks v. Lyon Cty. Bd. of Cty. Comm'rs*, 590 F. Supp. 1129, 1132 (1984) (K.S.A. § 19-805 does not impose vicarious liability upon county commissioners for acts of deputies); *Estate of Belden v. Brown Cty., Kan.*,

46 Kan. App. 2d 247, 287 (2011) (commissioners entitled to summary judgment as they are not legally responsible for hiring, training of personnel, or the promulgation of policies or procedures within the Brown County Sheriff's Department). Accordingly, the BOCC should be granted judgment as to Crump's *Monell* claim.

### ii.    There can be no *Monell* claim without an underlying constitutional violation.

As set forth above, Crump cannot establish an underlying constitutional violation. This underlying failure necessarily precludes any sort of *Monell* liability for the municipality. *Martinez v. Beggs*, 563 F.3d 1082, 1092 (10th Cir. 2009). Therefore, Crump's *Monell* claims against Sheriff Hayden in his official capacity should be dismissed.

### iii.    There is no evidence of policy or custom linked to any alleged deprivation.

Crump alleges that the municipal defendants failed to train staff to properly evaluate inmate's injuries; that there exists a policy of denying inmates actual pain medication; that the JCADC has a "wait and see" policy, which prolongs inmate's suffering; denies inmates access to wheelchairs; holds a policy of requiring inmates to clean their cells; denies access to handicapped showers unless the inmate is in a wheelchair; and encourages medical staff to practice beyond their medical capabilities. [Doc. 48, *First Amended* Complaint, p. 29].

Crump cannot provide any evidence of the existence of any pattern, practice, or custom at the JCADC that violates his constitutional rights. As stated above, there has been no constitutional deprivation when Crump received adequate medical treatment in relation to the injuries that he sustained. Crump's contention that he did not receive "actual pain medication" is wholly unfounded given the wealth of prescriptions he received for pain medications including acetaminophen, ibuprofen, Flexeril, Dynarub, and naproxen. Crump cannot point to any conduct

that would suggest the existence of a "wait and see" policy when Crump received numerous consultations and medical visits throughout the time he has been jailed, including an x-ray[6], CT scan, and MRI of his back to check for potential injuries. Crump's allegation regarding access to wheelchairs is equally unfounded, given his willing return of the wheelchair as well as an opinion from a treating physician that a wheelchair was no longer medically necessary. Crump further can point to no fact that supports the contention that the use of a handicapped shower, based upon determination of a medical professional, is arbitrary or deliberately indifferent to his medical needs. Finally, Crump can point to no evidence that the Sheriff ever encouraged medical staff to practice beyond their medical capabilities. Crump can support none of the allegations that he has levied against the Sheriff with factual evidence. Accordingly, judgment as a matter of law is appropriate.

## D.  State Law Claims

### a.  Because Crump failed to file a notice of claim, this Court is deprived of subject matter jurisdiction over his state law claims.

Any person who has a claim against a municipality that could give rise to an action brought under the Kansas Tort Claims Act must file a written notice with the municipality before commencing such action. K.S.A. § 12-105b(d). The notice requirement of K.S.A. § 12-105b(d) is a mandatory prerequisite to bringing a tort claim against a municipality in district court. If the statutory notice requirement is not met, the district court cannot acquire subject matter jurisdiction over the municipality. *Dodge City Implement, Inc. v. Board of Barber Cnty Comm'rs,* 288 Kan. 619, 639 (2009). More important, the filing of an action prior to the compliance with K.S.A. § 12-105b(d) renders the petition void *ab initio. Christopher v. State*, 36 Kan. App. 2d 697 (2006); *Steed v. McPherson Area Solid Waste Utility*, 43 Kan. App. 2d 75, 91 (2010).

---

[6] Crump actually was provided the option to have multiple x-rays, but rejected subsequent imaging. *See* § II, ¶ 85.

The notice must provide the following:

"(1) The name and address of the claimant and the name and address of the claimant's attorney, if any; (2) a concise statement of the factual basis of the claim, including the date, time, place, and circumstances of the act, omission, or event complained of; (3) the name and address of any pubic officer or employee involved, if known; (4) a concise statement of the nature and extent of the injury claimed to have been suffered; and (5) a statement of the amount of monetary damages that is being requested."

K.S.A. § 12-105b(d). This notice must be sent to the clerk or the governing body of the municipality. *Id.*

Crump has not supplied, nor has he alleged, compliance with K.S.A. 12-105b(d) as a prerequisite to bringing tort claims against the County or its employees. Absent this statutory prerequisite, this Court is deprived subject matter jurisdiction over Crump's state law claims. Accordingly, Crump's state law claims are fatally deficient and judgment as a matter of law is appropriate.

## IV.    CONCLUSION

Based on the arguments and authorities above, the Johnson County Defendants should be granted summary judgment as a matter of law, for their costs and attorney's fees under 42 U.S.C. § 1988 and for such other and further relief as the Court deems just and equitable.

Respectfully submitted,

FISHER, PATTERSON, SAYLER & SMITH, LLP

  _/s/ Kirk T. Ridgway_
Kirk T. Ridgway, KS No 17172
Connor M. Russo, KS No. 29826
51 Corporate Woods, Suite 300
9393 West 110th Street
Overland Park, KS 66210
(913) 339-6757; (f) (913) 660-7919
kridgway@fpsslaw.com
crusso@fpsslaw.com
*Attorneys for Johnson County Sheriff's Office*

*Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2025, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

N/a

I further certify that I mailed the foregoing document and the notice of electronic filing by first class mail, postage prepaid, to the following non-CM/ECF participant:

Steven Crump #141041
Johnson County Adult Detention Center
101 N. Kansas Avenue
Olathe, Kansas 66061
*Pro se Plaintiff*

 /s/ *Kirk T. Ridgway*
Kirk T. Ridgway