IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| STEVEN CRUMP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| UNIFIED GOVERNMENT` OF JOHNSON COUNTY, et al. | ) | Case no. 24-3036-JWL |
| | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS VITALCORE HEALTH STRATEGIES, LLC, DANNY STANTON, M.D., VIOLA RIGGIN, JENNIFER EHLRICH, TIFFANY MCROBERTS, APRN, CARYN KUNZ, KATHLEEN CALLOWAY, REBECCA WALL, RN, NICOLE BALCIUS, AND LORA NEELY, RN'S MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT**

COMES NOW Defendants VitalCore Health Strategies, LLC, Danny Stanton, M.D., Viola Riggin, Jennifer Ehrlich, Tiffany McRoberts, Caryn Kunz, Kathleen Calloway, Rebecca Wall, Nicole Balcius, and Lora Neely ("Defendants"), by and through undersigned counsel, hereby submit this memorandum in support of their Motion for Summary Judgment.

As will be explained herein, Defendants are entitled to summary judgment pursuant to Fed. R. Civ. P. 56, because Plaintiff has failed to support any claim upon which relief can be granted and failed to exhaust his administrative remedies. Further, Defendants are entitled to qualified immunity.

## NATURE OF THE CASE

Plaintiff Steven Crump was formerly incarcerated in the Johnson County Adult Detention Center ("JCADC"). Plaintiff filed a pro se action against numerous defendants, including both corrections officers and healthcare providers from JCADC. As to the healthcare defendants, Plaintiff asserts a myriad of allegations including deliberate indifference to serious medical needs, cruel and unusual punishment, *Monell* claim, supervisory liability, retaliation in violation

of the First Amendment, punitive damages, discrimination under the ADA, intentional infliction of emotional distress, and negligence.

However, as discussed herein, Plaintiff fails to support any claim upon which relief can be granted. Further, Plaintiff's claims are barred under the Prison Litigation Reform Act as Plaintiff failed to exhaust his administrative remedies prior to filing suit. 42 U.S.C. § 1997e(a). Finally, Defendants are entitled to qualified immunity. Accordingly, Defendants are entitled to summary judgment.

**DEFENDANTS' STATEMENT OF UNCONTROVERED FACTS**

Defendants set forth the following uncontroverted facts solely for the purpose of this Motion for Summary Judgment. Defendants reserve the right to dispute these facts in any trial of this matter.

1. On July 5, 2023, Plaintiff was examined and screened by Kimbra Rosenberg after he was booked into the JCADC following an arrest. **Exhibit A-1.**
2. During the examination, it was noted that Plaintiff presented with contusions on his back, staples on the back of his left leg from a k-9 bite, and blisters on the bottom of his feet. **Id.**
3. On July 5, 2023, Plaintiff was prescribed amoxicillin for ten days, ibuprofen for two days, magnesium oxide for 28 days, prenatal vitamin for 6 days, thiamine for 28 days, and a single dose of amoxicillin-pot clavulanate. **Exhibit A-2.**
4. On July 5, 2023, Plaintiff complained of trouble walking due to the blisters on his feet. **Exhibit A-3.**

5. Plaintiff was previously approved for the use of a wheelchair until the blisters on his feet healed. Due to this approval, Plaintiff was placed in medical segregation until his wheelchair was no longer medically necessary. **Exhibit A-1.**
6. Beginning on date, Plaintiff received daily wound care to address his k-9 bite and treated with Bacitracin until July 31, 2023. **Exhibit A-4.**
7. On July 8, 2023, Plaintiff was prescribed two tablets of acetaminophen for 14 days and ibuprofen for 14 days. **Exhibit A-2.**
8. Also on July 8, 2023, medical staff requested that Deputy King inquire whether Plaintiff wanted to keep use of his wheelchair or return it. Plaintiff stated that he would return his wheelchair to exit medical segregation. **Exhibit A-24.**
9. On July 12, 2023, Plaintiff's acetaminophen was increased to three tablets daily. **Exhibit A-5.**
10. Also on July 14, 2023, Plaintiff had six out of ten staples removed from his calf. **Exhibit A-6.**
11. On July 18, 2023, Plaintiff had the remaining four staples removed from his calf. **Exhibit A-6.**
12. On July 19, 2023, Plaintiff placed a sick call regarding his back pain and sleep issues. Medical staff responded that a provider would review Plaintiff's request related to his pain. Medical staff also informed Plaintiff that sleep medication is considered by mental health providers. **Exhibit A-7.**
13. On July 20, 2023, it was determined that Plaintiff's blisters had healed and, accordingly, Plaintiff's wheelchair approval was removed as it was no longer

medically necessary. It was also noted that Plaintiff had been walking without issue. **Exhibit A-8.**

14. On July 22, 2023, Plaintiff was again prescribed Bactrim for nine days. **Exhibit A-9.**
15. Also on July 22, 2023, Plaintiff filed a grievance in which he complained that he was not receiving adequate medical care and demanded additional pain management therapies. Medical staff reviewed this request and responded that Plaintiff's present treatment plan was appropriate. **Exhibit A-10.**
16. On July 26, 2023, Plaintiff was prescribed Cyclobenzaprine HCL for two days. **Exhibit A-9.**
17. On July 29, 2023, Plaintiff was again prescribed Cyclobenzaprine HCL for fourteen days. **Exhibit A-9.**
18. On July 31, 2023, Plaintiff was provided with an intramuscular injection of ceftriaxone sodium. **Exhibit A-9.**
19. Also on July 31, 2023, Plaintiff underwent an x-ray of his spine to address his complaints of back pain. **Exhibit A-11.**
20. On August 2, 2023, Plaintiff was prescribed gentamicin sulfate, which was to be applied to his shin for 21 days. **Exhibit A-12.**
21. On August 12, 2023, it was determined that Plaintiff's calf injury was healing absent any infection. **Exhibit A-13.**
22. On August 13, 2023, Plaintiff was prescribed cyclobenzaprine HCL for seven days. **Exhibit A-14.**
23. On August 14, 2023, Plaintiff's spine was x-rayed. The results were inconclusive. **Exhibit A-15.**

**24.** On August 18, 2023, Plaintiff was prescribed meloxicam for twelve days. **Exhibit A-16.**

25. Also on August 18, 2023, Plaintiff was scheduled for a CT scan related to his complaints of back pain. **Exhibit A-15.**

26. On August 21, 2023, Plaintiff was again prescribed cyclobenzaprine HCL for seven days. **Exhibit A-14.**

27. On August 29, 2023, Plaintiff was prescribed sertraline for five days. **Exhibit A-17.**

28. On August 30, 2023, Plaintiff was again prescribed cyclobenzaprine HCL for fourteen days. **Exhibit A-14.**

**29.** On August 30, 2023, Plaintiff requested an appointment with medical staff for a renewal of muscle relaxers. Medical staff reviewed and approved the request. **Exhibit A-19.**

30. On September 1, 2023, Plaintiff was permitted to use a handicap shower complete with support bars. **Exhibit A-8.**

31. On September 8, 2023, Plaintiff was again prescribed acetaminophen and ibuprofen for 30 days. **Exhibit A-18.**

32. On September 14, 2023, Plaintiff was prescribed cyclobenzaprine HCL for fourteen days. **Exhibit A-14.**

33. On October 8, 2023, Plaintiff was again prescribed acetaminophen and ibuprofen for 30 days. **Exhibit A-18.**

34. On October 10, 2023, Plaintiff's prescriptions for acetaminophen and ibuprofen were changed to a sixty-day prescription. **Id.**

35. On October 10, Plaintiff was given another CT scan. This imaging study showed no indication of fracture or malalignment. **Exhibit A-20.**

36. On October 10, 2023, Plaintiff was prescribed nortiptyline HCL for two days. This prescription was then altered to a sixty-day prescription. **Exhibit A-21.**

37. On October 19, 2023, Plaintiff had a medical appointment where he requested a cane and a second mattress. **Exhibit A-22.**

38. On October 24, 2023, Plaintiff filed a medical grievance in which he requested a cane and a second mattress. Medical staff reviewed the request and Plaintiff's medical history and determined that Plaintiff did not meet the qualifications for a second mattress and/or cane. **Exhibit A-23.**

39. On October 29, 2023, Plaintiff complained of black mold and standing water in his cell. Jail staff investigated and determined that there was standing water in Plaintiff's cell. Plaintiff was immediately transferred to another cell. **Exhibit A-24.**

**40.** On November 2, 2023, Plaintiff was prescribed Prazosin HCL for sixty days. **Exhibit A-25.**

41. On November 7, 2023, Plaintiff had a medical appointment related to his complaints of back pain. It was determined that Plaintiff had not made progress with exercise instructions/physical therapy provided by medical staff. Staff also reviewed Plaintiff's imaging studies and found no indication of spinal abnormalities. **Exhibit A-22.**

42. On November 7, 2023, Plaintiff was permitted the use of a cane. **Exhibit A-8.**

43. On November 7, 2023, Plaintiff was prescribed docusate sodium for thirty days, fiber-lax for thirty days, and naproxen for sixty days. **Exhibit A-26.**

44. On November 16, 2023, Plaintiff was recommended to undergo a muscle rub and was prescribed Dynarub for twenty-one days. **Exhibit A-27.**

45. On November 22, 2023, Plaintiff attended a medical appointment after he complained that his lower left leg tendon had detached. After evaluation, Plaintiff was informed by medical staff that his ability to move his foot both laterally and medially proved that his tendon was not detached. **Exhibit A-28.**

46. On December 11, 2023, Plaintiff was again prescribed Dynarub for twenty days. Plaintiff was also prescribed sertraline for sixty days. **Exhibit A-29.**

**47.** On December 14, 2023, Plaintiff was prescribed hydroxyzine pamoate for sixty days. **Exhibit A-30.**

**48.** On January 2, 2024, Plaintiff was prescribed Prazosin HCL for sixty days. **Exhibit A-31.**

49. On January 3, 2024, Plaintiff was again prescribed acetaminophen for thirty days. **Id.**

**50.** On January 11, 2024, Plaintiff was again prescribed hydroxyzine pamoate for one-hundred days. Plaintiff was also prescribed acetaminophen for an additional ninety days and naproxen for twenty-five days. **Exhibit A-32; Exhibit A-33.**

**51.** On February 13, 2024, Plaintiff was again prescribed sertraline for sixty days. **Exhibit A-34.**

52. On February 13, 2024, Plaintiff filed a grievance related to the denial of wheelchair use and failing to receive an MRI as opposed to a CT scan. Medical staff reviewed Plaintiff's grievance and determined that Plaintiff's complaints were unfounded as Plaintiff's wheelchair was no longer necessary as Plaintiff's blisters had healed and Plaintiff was able to walk independently. **Exhibit A-35.**

53. On February 16, 2024, Plaintiff had a medical appointment related to his complaints of back pain. Plaintiff was informed by medical staff that Plaintiff had multiple imaging studies that did not indicate fracture of malalignment. **Exhibit A-36.**

**54.** On February 16, 2024, Plaintiff was prescribed duloxetine HCL for ninety days. **Exhibit A-37.**

55. On February 21, 2024, Plaintiff filed another grievance related to the denial of a wheelchair. **Exhibit A-38.**

56. On February 23, 2024, Sgt. Nuss responded to Plaintiff's 2/21/24 grievance and informed Plaintiff that Plaintiff needed to submit a grievance to medical regarding his wheelchair. **Id.**

57. On February 24, 2024, Plaintiff had a medical appointment again regarding his complaint that his lower left tendon detached. Medical staff again examined Plaintiff and informed Plaintiff would not have mobility of his foot if the tendon was detached. **Exhibit A-36.**

**58.** On February 28, 2024, Plaintiff filed a medical grievance that he had received inadequate medical diagnosis and, accordingly, his treatment was inadequate. **Exhibit A-39.**

59. On February 29, 2024, Medical Administrator notified Plaintiff to file a medical request for further examination if he felt he needed additional medical care. Notably, the Medical Administrator reminded Plaintiff that he had frequently refused medical treatment. **Id.**

**60.** On March 1, 2024, Plaintiff was prescribed Prazosin HCL for sixty days. **Exhibit A-37.**

61. On March 5, 2024, Plaintiff had a medical appointment to address his complaints of back pain. Medical staff ordered an MRI. **Exhibit A-40.**

62. On March 14, 2024, Plaintiff was prescribed Prazosin HCL for ninety days and ziprasidone HCL for ninety days. **Exhibit A-37.**

**63.** On March 14, 2024, Plaintiff was placed on a sertraline HCL taper in which he only received one dose per day for the week. **Id.**

64. On March 20, 2024, Plaintiff requested a back brace. This request was not approved by Dr. Stanton as it was not medically necessary. **Exhibit A-41.**

65. On March 20, 2024, Plaintiff complained of chest pain and was evaluated by medical staff, including an EKG. Medical staff identified no symptoms of acute onset, severe distress, abnormal vital signs, hypoxemia, pain with exertion, syncope, dizziness, palpitations or previous chest pain episodes. Notably, during the evaluation, Plaintiff noted that the chest pain had subsided. **Exhibit A-42; Exhibit A-40.**

66. On March 30, 2024, Plaintiff was prescribed dibucaine for seven days, docusate sodium for seven days, and one dose of milk magnesia. **Exhibit A-42.**

67. On April 5, 2024, Plaintiff was prescribed fiber-lax for twenty days. **Exhibit A-43.**

68. On April 12, 2024, Plaintiff was prescribed Ziprasidone HCL for thirty days. **Id.**

69. On April 15, 2024, Plaintiff was prescribed hydroxyzine pamoate for thirty-six days. **Id.**

70. On April 18, 2024, Plaintiff was prescribed chlorhexidine gluc A/F for ten days. **Id.**

71. On April 20, 2024, Plaintiff complained about standing water in his cell. Plaintiff was immediately moved to a new cell by jail staff. **Exhibit A-44.**

72. On April 21, 2024, Plaintiff was prescribed dibucaine for four days and witch hazel for five days. **Exhibit A-43.**

73. On April 22, 2024, Plaintiff was prescribed docusate sodium for fourteen days and fiber-lax for twenty-one days. **Id.**

74. On April 23, 2024, Plaintiff had a medical appointment related to his back pain. Plaintiff claimed he had felt no pain relief. Medical staff then reviewed Plaintiff's imaging studies and noted evidence of degenerative arthritis and mild scoliosis. Accordingly, medical staff determined that Plaintiff's current treatment plan was appropriate and prescribed physical therapy exercises. **Exhibit A-45.**

75. On April 24, 2024, Plaintiff filed a grievance demanding a referral to an orthopedic spinal specialist and provision of a back brace. **Exhibit A-46.**

76. On April 25, 2024, Plaintiff had a medical appointment related to his complaints of back pain. Medical staff examined Plaintiff and noted a slightly raised scapula, which was attributed to scoliosis or Plaintiff's reliance on his cane on his right side. Exhibit **A-45.**

77. On April 26, 2024, medical staff responded to Plaintiff's 4/24/24 grievance stating that Plaintiff did not require a referral or a back brace. **Exhibit A-47.**

78. On April 26, 2024, Plaintiff filed another grievance in which he requested a back brace and referral to a spine specialist and chiropractor. **Id.**

**79.** On April 29, 2024, Plaintiff was prescribed chlorhexidine for thirty days. **Exhibit A-48.**

80. On April 30, 2024, medical staff reviewed and responded to Plaintiff's 4/26/24 grievance. Medical staff determined that Plaintiff had mild scoliosis, which did not require a back brace or referrals to outside specialists. **Exhibit A-47.**

**81.** On May 5, 2024, Plaintiff was again prescribed naproxen for ninety days. **Exhibit A-49.**

82. On May 7, 2024, Plaintiff was prescribed acetaminophen for ninety days. **Id.**

83. On May 8, 2024, Plaintiff was provided a mouthguard. After complaints that the mouthguard was too hard, an appointment was scheduled for Plaintiff to bring his mouthguard to medical so it could be molded to better fit Plaintiff's mouth. Plaintiff refused to attend this appointment. **Exhibit A-50.**

84. On May 15, 2024, Plaintiff had a medical appointment related to his complaints of back pain. Medical staff examined Plaintiff and found no indication of spinal fracture or misalignment. Plaintiff showed no evidence of acute distress or issues ambulating normally. **Exhibit A-45.**

**85.** On May 15, 2024, Plaintiff was prescribed tadzodone HCL for thirty days. **Exhibit A-41.**

86. On May 16, 2024, Plaintiff was prescribed duloxetine HCL for ninety days and hydroxyzine pamoate for forty-four days. **Exhibit A-51.**

87. On May 20, 2024, Plaintiff was prescribed calcium antacids for twenty days, docusate sodium for twenty days, fiber-lax for twenty days, and one dose of milk magnesia. **Id.**

88. On May 21, 2024, Plaintiff was prescribed tradoxone HCL for forty days. **Id.**

89. On May 29, 2024, Plaintiff filed a medical grievance demanding the use of a wheelchair for long distance travel. **Exhibit A-52.**

90. On May 29, 2024, Plaintiff informed staff that refused to go to court at the time determined by staff as the court appearance was scheduled for hours later than the expected arrival time. Plaintiff was then notified that if he did not agree to the time, then he would miss his hearing. Plaintiff again refused to attend. **Exhibit A-24.**
91. On June 3, 2024, Plaintiff filed a grievance that he was denied the use of a wheelchair to attend his court hearing. **Exhibit A-53.**
92. On June 4, 2024, Sgt. Cooley denied Plaintiff's grievance and informed Plaintiff that due to the short 40-step journey to the courthouse, Plaintiff did not meet the requirements for a wheelchair. **Id.**
93. On June 5, 2024, Plaintiff appealed Sgt. Cooley's response. **Id.**
94. On June 5, 2024, Plaintiff had a medical appointment related to his complaints of back pain. Medical staff reminded Plaintiff that Plaintiff had refused x-rays that were ordered to address his complaints. Plaintiff as prescribed cyclobenzaprine for seven days. **Exhibit A-54.**
95. On June 10, 2024, Lieutenant Brian Zeeff denied Plaintiff's grievance appeal and informed Plaintiff that the proper procedure was following and appropriate accommodations were made as indicated by Plaintiff's mobility needs. Lt. Zeeff further stated that Plaintiff had no orders from medical staff for the use of a wheelchair. **Exhibit A-53.**
96. On June 12, 2024 Plaintiff had a medical appointment related to his complaints of back pain. Medical staff reviewed Plaintiff's imaging studies and noted Plaintiff had minimal to mild degrees of degenerative changes in his lumbar spine with no

significant stenosis. Medical staff determined that they would continue to monitor Plaintiff and provide pain management. **Exhibit A-54.**

97. On June 12, 2024, Plaintiff was prescribed docusate sodium for thirty days and fiber-lac for thirty days. **Exhibit A-55.**

98. On June 15, 2024, Plaintiff was prescribed hydroxyzine pamoate for fifteen days. **Id.**

99. On June 26, 2024, Plaintiff was prescribed hydroxyzine pamoate for seventy-four days and then extended for another thirty days. Plaintiff was also prescribed tazodone HCL for sixty-nine days. **Id.**

**100.** On June 27, 2024, Jennifer Ehrlich responded to Plaintiff's 5/29/24 grievance and informed Plaintiff that his accommodations are based on his treatment plan. **Exhibit A-52.**

101. On July 10, 2024, Plaintiff had a medical appointment related to his complaints of back pain. Plaintiff alleged that the use of the belt restraint caused him harm. Medical staff determined that no change in treatment plan was necessary. However, medical recommended that jail staff consider alternative restraint options. Plaintiff was also prescribed ibuprofen for ninety-seven days. **Exhibit A-54.**

**102.** On July 13, 2024, Plaintiff was prescribed chlorhexidine for eleven days. **Exhibit A-47.**

103. On July 29, 2024, Plaintiff was prescribed buspirone HCL for forty days. **Id.**

104. On August 7, 2024, Plaintiff was prescribed acetaminophen for ninety days and cyclobenzaprine for fourteen days. **Exhibit A-56.**

105. On August 13, 2024, Plaintiff was prescribed duloxetine HCL for thirty days. Id.

106. On August 19, 2024, Plaintiff was prescribed chlorhexidine for eleven days. **Id.**

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

A pro se litigant's pleadings are construed liberally and judged against a less stringent standard than those drawn by attorneys. *Hall v. Bellmon*, 935 F.2d 1106. 1110 (1991). However, it is not the proper function of the district court to assume the role of advocate for the pro se litigant. *Whitney v. State of New Mexico*, 113 F. 3d 1170, 1173-74 (10th Cir. 1997). Nor does a plaintiff's *pro se* status relieve them from the consequences of noncompliance. *Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994) (*citing Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).

## ARGUMENTS AND AUTHORITIES

### A. Defendants are entitled to Summary Judgment as Plaintiff Failed to Sufficiently Plead Deliberate Indifference in Count I of his Amended Petition.

To allege that a defendant has violated a Fourteenth Amendment right[1], a plaintiff must assert that the defendant acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference to serious medical needs is shown when prison officials have prevented an inmate from receiving recommended treatment or when

[1] Only the Fourteenth Amendment applies because Plaintiff is a pretrial detainee. *See Garcia v. Salt Lake County*, 768 F.2d 303, 307 (10th Cir. 1985). However, courts apply the same deliberate indifferent standards to both the Eighth and Fourteenth Amendments. *See Stain v. Regalado*, 977 F. 3d 984, 989 (10th Cir. 2020).

an inmate is denied access to medical personnel capable of evaluating the need for treatment." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980). A district court's inquiry to determine whether deliberate indifference has been sufficiently pleaded "involves both an objective and a subjective component." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (*quoting Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

The objective component requires plaintiff to allege that the deprivation at issue was sufficiently serious. *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980). A "need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Strain v. Regalado*, 977 F. 3d 984, 989 (10th Cir. 2020).

Second, the subjective prong requires that a plaintiff allege that the defendant "[knew] of and [disregarded] an excessive risk to inmate health or safety." *Farmer v. Brennan,* 511 U.S. 825, 834 (1970). Furthermore, a delay in medical care only constitutes a Constitutional violation "where the plaintiff can show the delay resulted in substantial harm." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001).

"A difference of opinion with medical staff about treatment is not actionable…nor is a disagreement among medical experts." *Toler v. Troutt*, 631 Fed.Appx. 545, 547-548 (10th Cir. 2015) (citing *Johnson v. Stephan*, 6 F.3d 691, 692 (10th Cir. 1993); *Supre v. Ricketts*, 792 F.2d 958, 962-963 (10th Cir. 1986)). As such, the subjective component of a court's inquiry "is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment." *Id*. (citing *Self v. Crum*, 439 F.3d 1227, 1232-1233 (10th Cir. 2006)).

Here, Plaintiff alleges that Defendants were deliberately indifferent to Plaintiff's medical needs including (1) his complaints of back pain, (2) denial of a wheelchair, (3) lack of appropriate

medication, (4) lack of treatment for a heart attack. **Doc. 48, p. 28.** However, the pleaded facts underlying Plaintiff's assertions do not support such conclusory allegations.

a. *Plaintiff cannot satisfy the objective component of deliberate indifference because he cannot prove he had a serious medical need.*

First, Plaintiff cannot satisfy the objective component because he has not shown the presence of a serious medical need. As indicated in the medical records, Plaintiff was frequently examined by medical staff at JCADC both through physical examination and imaging studies. Neither physical examination nor imaging studies indicated that Plaintiff had spinal fracture or misalignment. **Uncontroverted Fact ("UF") 35, 53, 84.** Rather, Plaintiff was diagnosed with mild scoliosis. **UF 74.** This diagnosis indicated what was medically appropriate for Plaintiff. Indeed, this diagnosis did not indicate that a back brace, wheelchair, or second mattress was medically necessary for treatment. **UF 13, 38, 52, 91, 92, 95.** Rather, Plaintiff was provided with physical therapy and pain management medication, which was appropriate to address Plaintiff's diagnosis. **UF 74.**

Second, Plaintiff was not inappropriately denied the use of a wheelchair. Upon entry to JCADC, Plaintiff was provided with a wheelchair until the blisters on his feet had healed. **UF 5.** Plaintiff himself returned his wheelchair on July 8, 2023. **UF 8**. Further, after Plaintiff's blisters had healed, it was determined that the wheelchair was no longer medically necessary. **UF 13.** This determination was supported by Plaintiff's ability to ambulate independently. **Id.** Accordingly, there is no evidence that Plaintiff was improperly denied the use of a wheelchair.

Third, Plaintiff takes issue with the medication he was prescribed that allegedly caused severe side effects. As the records show, Plaintiff was consistently prescribed medication to address his constant complaints. Indeed, Plaintiff was prescribed Cyclobenzaprine, ceftriaxone

sodium, acetaminophen, meloxicam, and ibuprofen to address his complaints of back pain. **UF 16, 17, 18, 22, 24, 26, 28, 31, 32, 33, 34, 49, 50, 82, 94, 101, 104.** Again, there is no evidence that Plaintiff suffered any side effects from any of the medication prescribed to him.

Fourth, Plaintiff contends that he received inadequate medical care when he reported symptoms consistent with a heart attack. However, the records suggest otherwise. On March 20, 2024, Plaintiff complained of chest pains. **UF 65.** On the same day, Plaintiff received a full evaluation from medical staff, including an EKG. **Id.** Based on this evaluation, it was determined that Plaintiff did not present with any abnormal vital signs, observable pain, or any other indication of an emergent medical need. Accordingly, it cannot be said that Plaintiff received an inadequate response to his complaints of chest pain.

Under the above analysis, it is clear that Plaintiff was consistently examined and appropriately treated by health staff at JCADC. Indeed, there is no evidence that Plaintiff had a serious medical need that was left unaddressed by Defendants. Therefore, Plaintiff failed to meet the objective element of his claim of deliberate indifference against Defendants.

*b. Plaintiff cannot satisfy the subjective component of deliberate indifference because there is no evidence that Defendants disregarded an excessive risk to Plaintiff's health.*

For the subjective component of deliberate indifference, a plaintiff must prove that the defendant had a culpable state of mind known as "deliberate indifference." *Thomas v. Bruce*, 428 F. Supp. 2d 1161, 1170 (D. Kan. 2006), *aff'd,* 233 Fed. Appx. 815 (10th Cir. 2007) (quoting and citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The deliberate indifference standard is a middle ground that rests "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Id.* (quoting 511 U.S. at 836). The Supreme Court has compared this

standard "to criminal recklessness, which makes a person liable when he or she 'consciously disregard[s] a substantial risk of serious harm.'" *Id.* (quoting 511 U.S. at 837-38).

Here, Plaintiff has shown no evidence that Defendants knew of and disregarded an excessive risk to Plaintiff's health. From July of 2023 to August of 2024, Plaintiff attended 196 medical appointments and refused 62 appointments. Accordingly, Plaintiff had 258 opportunities to be evaluated by medical professionals in the span of a single year. Based on this fact alone, it cannot be determined that Defendants disregarded a risk to Plaintiff's health. Rather, the opposite is true. Plaintiff received consistent and thorough care and appropriate treatment at JDADC. Absent any evidence to the contrary, Plaintiff has failed to show that Defendants disregarded an excessive risk to his health, and, therefore, Defendants are entitled to summary judgment.

**B. Defendants are Entitled to Summary Judgment on Count III as Plaintiff has Failed to Establish an Underlying Constitutional Violation and/or Policy.**

Plaintiff has not established an underlying constitutional violation that stems from the enforcement of a municipal policy of custom. To allege liability under *Monell* and its progeny, plaintiff must allege (1) a constitutional violation by a municipal employee, (2) the existence of a municipal custom or policy and (3) a direct causal link between the custom or policy and the violation alleged. *See Monell*, 436 U.S. at 694, 98 S.Ct. 2018; *Douglass v. Garden City Cmty. Coll.*, 543 F. Supp. 3d 1043, 1057 (D. Kan. 2021) (citing *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993)).

Here, in an attempt to plead a *Monell* claim, Plaintiff has made conclusory allegations without any evidentiary support. First, Plaintiff has failed to provide any evidence of a constitutional violation beyond his mere allegations. Second, Plaintiff has not shown the

existence of a municipal custom or policy nor a direct causal link between the custom or policy and the violation alleged.

Indeed, Plaintiff vaguely alleges that Defendant Viola Riggin upholds unconstitutional "wait and see" policies that (1) place severely injured inmates on chronic care which denies inmates adequate care and the ability to seek out medical providers who are trained to handle specific injuries and (2) disregard treatment recommendations from off-site medical professionals, orthopedic spine specialists, back brace, and/or inpatient therapy, and (3) denying narcotic pain medication. **Doc. 48, p. 32.** Yet, there is no evidence to support these allegations.

Plaintiff further vaguely alleges that Defendants maintained an unconstitutional policy of not allowing nurse to bring inmates medication to their cells. Again, Plaintiff has provided no evidence that such a policy exists in actuality or in practice. **Id.**

Lastly, Plaintiff alleges that Defendants Jennifer Ehrlich, Dr. Stanton, Medical Director N.B., Supervisor Becky, Tiffany McRoberts, and Caryn Kunz all acquiesced to unconstitutional policies held by Defendant VitalCore, including denying access to wheelchairs, diagnosing medical emergencies over the phone, and encouraging providers to practice above their medical capabilites. **Id.** Again, Plaintiff fails to provide evidence of the existence of these allegedly unconstitutional policies. Accordingly, Plaintiff's vague allegations do not satisfy the elements of a *Monell* claim, and, therefore, Defendants are entitled to summary judgment on Count III.

**C. Defendants are Entitled to Summary Judgment as Plaintiff has failed to sufficiently plead a § 1983 supervisory liability claim.**

In his First Amended Complaint, Plaintiff claims that Defendants Ehrlich, Becky LNU, and Dr. Stanton held supervisory liability over Plaintiff's allegedly insufficient medical care. **Doc. 48, p. 33.** Mere supervisory status is insufficient to create personal liability. *Duffield v. Jackson*,

545 F.3d 1234, 1239 (10th Cir. 2008). A plaintiff alleging supervisory liability must show "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010), *cert. denied*, 563 U.S. 960 (2011). "[T]he factors necessary to establish a [supervisor's] § 1983 violation depend upon the constitutional provision at issue, including the state of mind required to establish a violation of that provision." *Id*. at 1204 (citing *Iqbal*, 129 S. Ct. at 1949).

Here, Plaintiff alleges supervisory liability claims against Defendants Ehrlich, Supervisor Beck, and Dr. Stanton. However, Plaintiff fails to prove or provide any evidence that these Defendants meet any of the requisite elements of supervisory liability. Indeed, Plaintiff has failed to prove that any of these Defendants' actions resulted in a constitutional violation. Nor has Plaintiff pointed to any specific policy or procedure that Defendants allegedly promulgated that caused Plaintiff's alleged harms beyond broad claims of "unconstitutional" policies. Further, Plaintiff has failed to provide any evidence that Defendants acted with the state of mind required to establish the alleged constitutional deprivation. Accordingly, Defendants are entitled to summary judgment on Count IV.

**D. Defendants are Entitled to Summary Judgment as Plaintiff has Failed to Prove that any Retaliatory Actions against Plaintiff.**

In his First Amended Complaint, Plaintiff broadly accessed Defendants of retaliation in violation of the First Amendment. **Doc. 48, p. 33.** To establish retaliation in violation of the First Amendment, a plaintiff must prove that (1) she was engaged in constitutionally protected activity, (2) defendant's actions caused her to suffer an injury that would chill a person of

ordinary firmness from continuing to engage in that protected activity, and (3) her protected conduct substantially motivated defendant's actions. U.S. Const. Amend. 1. *Douglass v. Garden City Cmty. Coll.*, 652 F. Supp. 3d 1329 (D. Kan. 2023), *appeal dismissed sub nom. Douglass v. Swender*, No. 23-3027, 2023 WL 5179124 (10th Cir. Mar. 1, 2023).

Here, Plaintiff contends that Defendant Becky falsely wrote up Plaintiff, resulting in him being placed in lock down. However, Plaintiff has provided no evidence that Defendant Becky actually made any false statements against Crump in violation of Plaintiff's First Amendment protections. Further, Plaintiff has failed to show that he was engaged in a protected activity when submitted any grievances or that Defendant Becky took action that would chill Plaintiff's motivation to submit further grievances or that Defendant Beck's alleged retaliation was motivated by Plaintiff's grievances. In fact, Plaintiff's continuous filing of grievance seems to suggest the opposite effect. **UF 15, 38, 52, 55, 58, 75, 78, 89, 91, 100.**

Further, Plaintiff again provides nothing more than conclusory evidence in his allegations of retaliation related to his mouthguard. Rather, Plaintiff vaguely asserts that Defendant Becky refused to properly mold Plaintiff's mouthguard in retaliation for his grievances. However, the record clearly shows that Plaintiff refused to attend his scheduled appointment to mold his mouthguard. **UF 83**. Lastly, Plaintiff has provided no evidence that Defendant Beck physically or verbally assaulted Plaintiff. Accordingly, Plaintiff fails to provide evidentiary support in furtherance of his claim of retaliation. Therefore, Defendants are entitled to summary judgment on Count V.

### E. Defendants are Entitled to Summary Judgment on Count VI and IX as Plaintiff has Failed to Prove that he has a Disability

In his First Amended Complaint, Plaintiff asserts that Defendants violated Title II of the Americans with Disability Act. 42 U.S.C.A. § 12112(a). **Doc. 48, p. 34.** A plaintiff claiming a violation of the ADA is obligated to show that he was otherwise qualified for the benefits he sought and that he was denied those *solely* by reason of disability." *Doe v. Bd. of Cnty. Comm'rs of Payne Cnty., Okla.*, 613 F. App'x 743, 745 (10th Cir. 2015). Indeed, a plaintiff must [prove] that (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability. *Robertson v. Las Animas Cnty. Sheriff's Dep't,* 500 F.3d 1185, 1193 (10th Cir.2007).

Here, Plaintiff has failed to meet every requisite element. Indeed, Plaintiff has failed to prove that he is a qualified individual with a disability. Rather, Plaintiff asserts he has disabilities without any supportive documentation. Second, Plaintiff has failed to show that he was excluded from services due to this disability. Rather, Plaintiff vaguely alleges that he was denied accommodations for his alleged disabilities. However, Plaintiff was denied his requests for a wheelchair, a second mattress, and a back brace as these accommodations were not medically necessary based on Plaintiff's diagnosis. **UF 13, 38, 52, 91, 92, 95.** Further, Plaintiff was provided medically appropriate interventions such as physical therapy, use of a cane, and use of a handicap shower. **UF 30, 42, 74.** Therefore, Plaintiff has provided no support to address his allegations. Accordingly, Defendants are entitled to summary judgment on Counts VI and IX.

**F. Defendants are entitled to summary judgment as plaintiff failed to establish a claim of defamation.**

In his First Amended Complaint, Plaintiff alleges that Supervisory Becky and Dr. Stanton have informed Plaintiff that he never had a spinal injury. Further, Plaintiff alleges that

Defendants informed the Johnson County Sherrif's Office that Plaintiff had the ability to walk, was not disabled, faked heart problems, was on amphetamines, and attacking police officers. **Doc. 48, pp. 34-35.** To establish a claim of defamation, a plaintiff must prove false and defamatory words; communication to a third party; and resulting harm to the reputation of the person defamed. *Hobson v. Coastal Corp.*, 962 F. Supp. 1407 (D. Kan. 1997).

Here, Plaintiff has failed to prove any actual false or defamatory words were spoken by Defendants regarding Plaintiff or his medical issues/abilities or that any communication actually occurred. Lastly, Plaintiff has failed to prove that his reputation was harmed by the alleged statements. Therefore, Plaintiff has failed to support his allegation of defamation, and, accordingly, Defendants are entitled to summary judgment.

**G. Defendants are entitled to summary judgment as plaintiff failed to provide notice of his state law claims of intentional infliction of emotional distress and negligence.**

Pursuant to K.S.A. § 12-105b(d), any person having a claim against a municipality or against an employee of a municipality which could give rise to an action brought under the Kansas tort claims act shall file a written notice as provided in this subsection before commencing such action. K.S.A. § 12-105b(d). The filing of an action prior to the compliance with K.S.A. § 12-105b(d) renders the petition void *ab initio*. *Christopher v. State*, 36 Kan. App. 2d 697 (2006); *Steed v. McPherson Area Solid Waste Utility*, 43 Kan. App. 2d 75, 91 (2010).

Here, Plaintiff has failed to provide any evidence that he complied with K.S.A. 12-105b(d) prior to bringing suit. Consequently, the Court is deprived subject matter jurisdiction over Plaintiff's state law claims. As such, Defendants are entitled to summary judgment in relation to count X and XI.

### H. Defendants are entitled to qualified immunity

Defendants are entitled to qualified immunity as Plaintiff has failed to prove any constitutional violations. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once qualified immunity is asserted, a plaintiff overcomes the presumption of immunity "by carrying the heavy burden of showing both that (1) the defendant in question violated one of his constitutional rights, and (2) the infringed right at issue was clearly established at the time of the allegedly unlawful activity such that 'every reasonable official would have understood that what he was doing' violated the law." *Kerns v. Bader*, 663 F.3d 1173, 1180 (10th Cir. 2011) (quoting *Ashcroft v. al– Kidd*, 563 U.S. 731, (2011)). As previously discussed, Plaintiff has failed to prove that his constitutional rights were violated at any time during his incarceration at JCADC. Absent such evidence, Plaintiff cannot rebut Defendant's protection of qualified immunity.

### I. Plaintiff failed to exhaust all available administrative remedies.

Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust his administrative remedies before bringing a civil action: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is satisfied when the inmate "uses all steps that the agency holds out." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). The exhaustion requirement is "**mandatory**, and the district court [is] not authorized to dispense with it." *Little v. Jones*, 607 F. 3d 1245, 1249 (10th Cir. 2010) (emphasis supplied).

In Kansas, an inmate must progress through a three-level process that includes submitting a grievance report form to (1) the appropriate unit team member, (2) the warden of the facility, and (3) the office of the secretary of corrections to satisfy available administrative remedies. K.A.R. § 44-15-101(d). *See e.g., Garza v. Correct Care Solutions*, 2011 WL 2580299, at *2 (D. Kan. 2011), *aff'd* 451 F. App'x 775 (10th Cir.) (granting summary judgment for failure to exhaust claims against Correct Care Solutions where plaintiff failed to allege that he followed the three-level process). The submission of a medical request form or an inmate request to staff form requesting medical care is not a substitute for submitting a grievance. *Lax v. Corizon Medical Staff*, 2019 WL 4450668, at *3 (D. Kan. 2019).

In addition to this process, a plaintiff must satisfy K.A.R. § 44-16-104a when he is specifically pursuing a personal injury claim. That regulation states "[e]ach inmate claim for personal injury shall be submitted to the facility and secretary of corrections within 10 calendar days of the claimed personal injury." Notably, Articles 15 and 16 are "separate and distinct" from one another. *Lewis v. Carrell*, 2015 WL 413640, at *2–3 (D. Kan. 2015). The three-level process set forth in Article 15 is not a substitute, or alternative to, the procedure in Article 16. K.A.R. § 44-15-101a(d)(2). *See also Sharrock v. Stephens*, 2011 WL 5526444, at *1 (D. Kan. 2011) ("Importantly, the requirements in [§ 44–16–104a] apply regardless of whether the inmate pursues a grievance pursuant to § 44–15–101."); 2024 WL 1741104, at *4.

Here, Plaintiff failed to fully exhaust the requirements set forth in K.A.R. § 44-15-101 prior to filing this action. Plaintiff submitted a myriad of grievances and medical requests to jail staff. **UF 15, 24, 52, 55, 58, 75, 89, 91.** However, such requests for medical treatment do not constitute a "grievance" or act as a substitute for following the administrative process. *Lax*, 2019 WL 4450668, at *3.

However, Plaintiff failed to complete the three-level process prescribed in K.A.R. § 44-15-101a(d) as Plaintiff failed to elevate his complaints to either the warden of the facility and/or the office of the secretary of corrections. K.A.R. § 44-15-101a(d). While Plaintiff did appeal a single grievance response, Plaintiff failed to raise this grievance to the office of the corrections secretary after receiving a response to his appeal. **UF 93.** Further, there is no evidence that Plaintiff elevated any of his other grievances above the first level. **UF 15, 24, 52, 55, 58, 75, 89.**

Therefore, Plaintiff failed to comply with the requirements of K.A.R. § 44-15-101(d) and, consequently, failed to exhaust his administrative remedies. As such, Plaintiff's claims are barred. Finally, to the extent Plaintiff's First Amended Complaint can be construed as pursuing a personal injury claim, Plaintiff was required to follow the administrative procedures set forth in K.A.R. § 44-16-104(a) and failed to do so.

## CONCLUSION

Defendants are entitled to summary judgment on Plaintiff's claims of deliberate indifference, *Monell* claim, supervisory liability, retaliation in violation of the First Amendment, discrimination under the ADA, intentional infliction of emotional distress, and negligence. Defendants are also entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies. Lastly, Defendants are entitled qualified immunity as their actions did not violate any clearly established law.

***Respectfully Submitted,***

**NORRIS KEPLINGER**
**HICKS & WELDER, LLC**

By: */s/ John Hicks*
John Hicks, jh@nkfirm.com, #20474
Sarah Wood, swood@nkfirm.com #30111
11551 Ash Street
Becker Building, Suite 200

Leawood, KS 66211
(913) 663-2000/ (913) 663-2006 FAX
**ATTORNEYS FOR DEFENDANTS VITALCORE HEALTH STRATEGIES, LLC, DANNY STANTON, M.D., VIOLA RIGGIN, JENNIFER EHLRICH, TIFFANY MCROBERTS, APRN, CARYN KUNZ, KATHLEEN CALLOWAY, REBECCA WALL, RN, NICOLE BALCIUS, AND LORA NEELY, RN**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of February 2025, the above and foregoing document was filed using the Court's ECF system and a copy was served via United States mail to:

Steven Crump
141 Mission Drive
New Century, Kansas 66031
**PLAINTIFF PRO SE**

And

Kirk T. Ridgway, KS No 17172
Connor M. Russo, KS No. 29826
51 Corporate Woods, Suite 300
9393 West 110th Street
Overland Park, KS 66210
(913) 339-6757; (f) (913) 660-7919
kridgway@fpsslaw.com
crusso@fpsslaw.com
**Attorneys for Johnson County Sheriff's Office Defendants**

*/s/ John Hicks*
ATTORNEYS FOR DEFENDANTS VITALCORE HEALTH STRATEGIES, LLC, DANNY STANTON, M.D., VIOLA RIGGIN, JENNIFER EHLRICH, TIFFANY MCROBERTS, APRN, CARYN KUNZ, KATHLEEN CALLOWAY, REBECCA WALL, RN, NICOLE BALCIUS, AND LORA NEELY, RN