UNITED STATES DISTRICT COURT

DISTRICT FOR KANSAS

Steven Crump,

        Plaintiff,

V                                             Case No. 24-03036

Unified Gov. of Jo. Co., et al,

        Defendant.

<u>Response To Summary Judgment</u>

<u>1. INTRODUCTION</u>

In order for the court to understand the dynamics of this case it must be common knowledge that Steven Crump was violently attacked by the officers of the Olathe Police, falsely charged with a crime and held in isolation under immense emotional and physical suffering. Steven Crump had not, did not or was not going to commit a crime when the officers shot Steven Crump in the spine, tased him in the neck, body slammed him then fully restrained him while stretching his leg out and commanding a k-9 to bite and rip his leg apart 5 times. Steven Crump was walking down the street in shorts and a light t-shirt and was shot directly in the spine from a short distance which is considered deadly force. This attack was unprovoked and unwarranted and Steven Crump was acquitted of all wrong doing. Steven Crump's injuries WERE OBVIOUS AND TREATMENT WAS CLEARLY NEEDED BY SPECIALISTS. See pictures of injury.

1.      Steven Crump was forcefully held down and a K-9 was commanded to bite and rip his leg apart 5 times. The k-9 ate Steven Crump's frontal calve muscle off his body; Steven Crump had the tendons ripped from his ankle bone on his left leg; THE SHOTGUN LESS-LETHAL ROUND IS A PROJECTILE WITH 3 SOLID

SLUGS IN A CANVAS BAG. THE BAG DID NOT OPEN OR SLOW THE PROJECTILE. STEVEN CRUMP WAS SHOT IN THE SPINE 'DIRECTLY' WITH A SHOTGUN SLUG ROUND.

## A LAYMAN CAN SEE THE INJURIES WERE SEVERE AND IN NEED OF TREATMENT

(1) **Google Search**:  spinal injuries from less lethal shotguns bean bag;

https://www.google.com/search?q=spinal+injuries+from+less+lethal+shotguns+bean+bag&sca

"While spinal injuries from a less-lethal shotgun bean bag are considered rare, they are not impossible, and medical literature documents cases where bean bag rounds have caused penetrating injuries to the spine, potentially leading to serious neurological damage, especially if the impact occurs directly on the spinal column at a vulnerable area; however, most bean bag injuries tend to be blunt trauma to the chest, head, and extremities due to their design intended to incapacitate through impact rather than penetration."

**Potential for serious injury**:  Although marketed as "less lethal," bean bag rounds can still cause significant harm, including penetrating injuries to the spine, depending on the angle and force of impact; The severity of a spinal injury from a less lethal shotgun can range from mild sprains to severe spinal cord damage depending on the location and force of the impact.

**Anatomy matters**:  The risk of spinal injury is higher if the bean bag hits directly on the spine, particularly in the neck region, where even a blunt impact can cause serious damage.

**Factors affecting injury severity**: Factors like the distance from the shooter, the type of bean bag round used, and the clothing the target is wearing can influence the severity of the injury

**Target area**: Direct hits to the neck or upper back are more likely to cause spinal injuries.

**Angle of impact**: A projectile striking at a perpendicular angle to the spine can cause greater damage.

**Medical evaluation**: Anyone struck by a less lethal shotgun projectile, even if seemingly minor, should undergo a medical evaluation to assess for potential spinal injuries; If someone is hit by a bean bag round, especially in the back or neck area, immediate medical attention is needed to evaluate spinal injuries.

 2. A Back Brace was ordered after the MRI, April, 2024. Rebecca Wall was present with the paperwork that Steven Crump personally saw and talked to her about it. Dr Stanton later told Steven Crump that the Supervisors, Johnson County Defendants and VitalCore, denied the life altering, lifesaving back brace. Stated it was not necessary or allowed. VitalCore said they were waiting on approval from the Sheriff's Office, Sheriff's Office has a policy of NO BACK BRACES inside the JCADC, the Sheriff's Office said they were waiting on approval from VitalCore. VitalCore has a Policy of denying OFF-SITE MEDICAL RECOMMENDATIONS, and in the end, they blamed each other and Steven Crump was never provided the brace or accommodated for his severe injury even though requested since July 5th, 2023 by Steven Crump.

### THE JOHNSON COUNTY DEFENDANTS KNEW OF STEVEN CRUMP'S SEVERE SPINE INJURY.

1. From July 5th, 2023 until Jan 21st,2025 Steven Crump was mentally and physically abused by the defendants, both Johnson County and VitalCore Defendants, in an act of horror and terrible confinement in an overt attempt to cover up his severe injuries and to force Steven Crump into accepting plea agreements for crimes he had not committed, Agg. Assault on a LEO. In short, Steven Crump was given over the counter medication and thrown in isolation and denied all accommodations for his injuries causing further injury.

2 . See CT SCAN. An initial CT SCAN in Sept of 2023. Spine is straight, but surrounding area severely damaged. Johnson County Defendants REFUSED to assist Steven Crump with his severe injury, VitalCore refused off-site care, spine specialist and accommodations to his spinal injury causing extreme injury to him.

3. See MRI Picture. AN MRI after a year of physical torture and non-treatment, deliberate indifference to severe spinal damage. Forced to walk without support to the spine caused extreme pain. This caused the spine to become extremely disfigured and permanently damaged. *VitalCore Defendant's, Dr. Stanton, Nichole, Rebecca after a year stated, " Oh, you were JUST BORN WITH SCOLIOSIS." The spine is disfigured and collapsed on the nerves in the spine causing extreme pain in the spine, back, hip, leg and neck. 100% pain 24 hours a day, all the time.

2 . <strong>Standard Analysis For Plaintiff's Response.</strong>

a.  Reavis v Frost 967 F.3d 978 (10th Cir Ct of Appeals), "never the less our analysis is not a scavenger hunt for prior cases with precisely the same facts, and our prior cases need not be exactly parallel to the conduct her for the officials to have been on notice of a clearly established law."

b. Morris v Noe 672 F 3.d 1185, 1196 (10th Cir 2012) "the more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to establish a clear violation."

c. Ziglar v Abbasi 582 U.S. 120 S. Ct. (June 19, 2017), "the supreme court has clearly stated that the court is NOT REQUIRED to find that 'the very action in question has previously been held unlawful."

3. <strong>Legal Standard</strong>

   Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a claim where the plaintiff has failed to state a claim upon which relief can be granted.2 Upon such a motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' " **3 A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is**

**liable for the alleged misconduct**. 4 The plausibility standard reflects the requirement in Rule 8 that

pleadings provide defendants with fair notice of the nature of the claims and the grounds on which each

claim rests. 5 Under Rule 12(b)(6), **the court must accept all factual allegations in the complaint as true**

**and construe them in a light most favorable to the plaintiff**. 6 But the court need not afford such a

presumption to legal conclusions. 7 Viewing the complaint in this manner, the court must decide whether

the plaintiff's allegations give rise to more than speculative possibilities. 8 If the allegations in the complaint

are "so general that they encompass a wide swath of conduct, much of it innocent, then a plaintiff has 'not

nudged their claims across the line from conceivable to plausible.' **Pro se complaints are held to "less**

**stringent standards than formal pleadings drafted by lawyers.**"10 A pro se litigant is entitled to a liberal

construction of his pleadings. 11 **If a court can reasonably read a pro se complaint in such a way that it**

**could state a claim on which it could prevail, it should do so despite "failure to cite proper legal authority**

**. . . confusion of various legal theories . . . or [Plaintiff's] unfamiliarity with the pleading requirements**".12

However, it is not the proper role of a district court to "assume the role of advocate for the pro se

litigant."13 Additionally, a pro se litigant is not excused from complying with the rules of the Court and is

subject to the consequences of noncompliance.

4. **RESPONSE**

A. The Johnson County Defendants claim they are entitled to qualified immunity.

1.    Steven Crump requests that **all the Johnson County Defendants be denied qualified immunity**. The

individuals were on notice that their actions were unconstitutional and yet still proceeded to cause

immense suffering, injury and unnecessary emotional distress through malice and evil motivations. ALL IN

THE NAME OF PROFIT, MONEY. Heinous, Outrageous, Atrocious, evil acts perpetrated against Steven

Crump. Scriven v VitalCore Case No. 22-3282-EFM-RES outlines the Unconstitutional Policies, Practices and customs adopted and used by the Johnson County Defendants inside the JCADC. The medical claimed to have been provided by the Defendants was inadequate and a false representation of actual treatment.

## COUNT I: DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS

1.**Scriven v VitalCore Case 5:22-cv-03282-EFM-RES**,  At * 32 As discussed below, under the Due Process Clause of the Fourteenth Amendment, pretrial detainees are afforded the protections of the Eighth Amendment. Frohmader v. Wayne, 958 F.2d 1024, 1028 (10th Cir. 1992)(citation omitted). Thus, Plaintiff correctly asserts a claim for deliberate indifference under the Fourteenth Amendment. This is the CONTROLLING case that is in the 10th district, with rulings, already established Defendant's guilt on Steven Crump's claims.  At* 51 "A medical condition is 'sufficiently serious' if 'the condition has been diagnosed by a physician as mandating treatment or **is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' Prince v. Sheriff of Carter Cnty., 28 F.4th 1033, 1044 (10th Cir. 2022**). See photos of the injuries. As seen from the pictures, as noted by Lora Neely and Dr. Stanton, Steven Crump suffered severe injuries. The Johnson County Defendants were aware of the injuries, but denied treatment and failed to intervene on medical needs easily recognized by a lay person.

**a. See. Scriven v Vital Core at*32 "VitalCore implemented a number of policies, including that 'VitalCore had a policy of deliberate indifference for care and treatment in defiance of doctors' orders", "VitalCore had a policy of deliberate indifference and acquiesced to the inadequate medical treatment of plaintiff"," VitalCore had a policy of failing to train to make sure employees do not respond to obvious risks".**

a. Lora Neely discontinued Steven Crump's wheelchair without examination, without doctor orders on

7/20/2023. On 7/15/23 Steven Crump was labeled in medical as MUSCULOSKELETAL POTENTIAL

SPRAIN-FRACTURE-DISLOCATION NURSING CINICAL GIUDE-915. The Johnson County Defendants were

on notice of severe injury, but demonstrated Complete Deliberate Indifference. The Johnson County

Defendants refused and did not accommodate this severe injury or escalating care. **Denied Grievances**.

(2) Burke v. Regalado, No. 18-5042 (10th Cir. 2019) Reprehensible Conduct where inmate injured his neck,

causing lower back paralysis. No one treated his injuries. *Steven Crump had a spinal injury and became

bedridden with limited functions and was NEVER TREATED FOR HIS INJURIES which caused him paralysis

multiple times and disabling, permanent injury.

(3) Western District of Virginia Raymond Tate v D.J. Harmon No. 7:19-cv-00609-NKM-JCH

When federal prison officials are deliberately indifferent to an inmate's health and safety in violation of the

Eighth Amendment, the Supreme Court has held that a Bivens remedy is available to hold them

accountable. See Carlson v. Green, 446 U.S. 14 (1980) (recognizing a Bivens deliberate indifference claim

based on inadequate medical care); Farmer v. Brennan, 511 U.S. 825 (1994) (allowing a Bivens deliberate

indifference claim based on prison officials' failure to protect an inmate from violence to proceed past

summary judgment. The Supreme Court has declared that a deliberate indifference claim premised on

inadequate medical treatment and a claim premised on conditions of confinement are not meaningfully

distinct, thus that claim should have been allowed to proceed) .  See Wilson v. Seiter, 501 U.S. 294, 303

(1991**) (there is "no significant distinction between claims alleging inadequate medical care and those**

**alleging inadequate 'conditions of confinement'")**

(4) 1) Sealock c Colorado 218 F. 3d 1205 established (placed Calvin Hayden and Defendants on NOTICE) that **deliberate indifference may rise from a failure to treat properly, which implies the presence of some degree of care.**

## COUNT II: CRUEL AND UNUSUAL PUNISHMENT

(1)    A prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The test for constitutional liability of prison officials "involves both an objective and a subjective component." Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000).

(2)    The Eighth Amendment prohibits "cruel and unusual punishment." "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). Under the Due Process Clause of the Fourteenth Amendment, pretrial detainees "are entitled to the same degree of protection regarding medical attention as that afforded convicted inmates under the Eighth Amendment." Frohmader, 958 F.2d at 1028 (citation omitted).

(3)    Gregg v George, 428 U.S. at 183 (1976) Under the new interpretation of the 8th Amen. "prohibits punishments, which, although not physically barbarous, **involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime. The court defined unnecessary and wanton infliction of pain as "those that are 'totally without penological justification'".**

a. Steven Crump was an innocent inmate locked in isolation under immense physical and emotional suffering, Defendants had NO RIGHT TO TORTURE STEVEN CRUMP AND CAUSE HIM PERMANENT INJURY AND DISTRESS.

A. **JOHNSON COUNTY DEFENDANTS WERE ON NOTICE OF CLEARLY ESTABLISHED LAW OF DELIBERATE INDIFFERENCE; CRUEL AND UNUSUAL PUNISHMENT**

1**. The 10th Cir law is clear that allegations of a delay in medical treatment in light of a known risk of harm to an inmate are sufficient to allege that a defendant disregarded that substantial risk of harm**. See, e.g. Mata v Saiz 427 F. 3d at 755; Redmond v Crowther, 882 F. 3d 927, 940 (10th cir 2018) " **The subjective prong is met if the prison officials intentionally deny or delay access to medical care or intentionally interfere with the treatment once prescribed.**"; Sander v Creek City Bd of Cnty Comm'rs no. 17-cv-00492 JHD-FHM, 2018 U.S. Dist. Lexis 124367, 2018 WL 3580770, at *7 N.D. Okla, 2018,**"The defendants alleged delay or failure in alleviating (the plaintiff's) known deteriorating health conditions states a claim for deliberate indifference."** Sealock v Colorado (10th Cir 2000) court made it CLEAR that deliberate indifference may arise from failure to treat properly, which implies some degree of treatment at a minimum.

a.      Calvin Hayden, Cpt Levin DENIED Steven Crump all forms of actual preventative and proactive treatment that would have adequately treated him. Defendants intentionally provided inadequate care in order to CLAIM treatment was being provided with the knowledge that the "treatment" was not adequate for the severity of injuries being treated. Denied Steven Crump through policy: a wheelchair, back brace and accommodations to shower, a handicap cell, transport to court without injury.

b.      Deputy King took Steven Crump's wheelchair when it was PLAINLY OBVIOUS that he needed it and that without it he would suffer and become injured.  Steven Crump had both feet fully bandaged, his left leg fully bandaged and TOLD King that he had a severe spine injury. King was informed that Crump could

not walk without severe pain and that he was worried about further injury because he had not been seen by a doctor.

c.    Deputy Bell and his SGT refused to call an emergency code to get Steven Crump medical help.  *Told Steven Crump, "Nobody is coming to help you"

d.    Deputy Andrews willfully fully restrained Steven Crump in retaliation for grievances, left Steven Crump fully restrained in a cell for 4 hours in excoriating pain until he became paralyzed, denied him access to medical and a wheelchair for transport, restricted Steven Crump's prescribed treatment of transport in a wheelchair and Dr. Stanton's recommendation to NOT belt restraint Steven Crump.

e.    SGT Cooley and SGT Watterson intentionally denied Steven Crump his medical transport and accommodations for his disability, orders and recommendations from a DOCTOR. Intentionally interfered with Steven Crump's prescribed treatment. Told Deputies to fully restrain Steven Crump while in a wheelchair to go to video court inside the JCADC even though Deputies expressed their concerns about strapping a waist restraint around Steven Crump's spinal injury. Sgt Cooley and Watterson told Deputies to fully restrain Steven Crump and to dismiss his injury and complaints of pain and suffering. Sgt Cooley told Deputies that Steven Crump was, "Pulling some bullshit" when in fact Steven Crump was severely injured and severely suffering from the transport methods intentionally being used to inflict pain upon Steven Crump.

f.    UNKNOWN SGTS' #1, #2, #3 Were the individuals behind the scene pulling the strings, making the executive decisions when called by the Deputies King, Bell, Andrews and many other who Steven Crump complained to about his filthy cell, ADA violations, medical emergencies, lack of medical care and court transport.

B. <u>DENYING STEVEN CRUMP WALKING ASSISTANCE AND BACK BRACE</u>

2. **The Law was clearly established in 2022 that forcing Steven Crump to WALK severely injured in excruciating pain to complete grievances and to access medical treatment is a 14th amendment cruel and unusual punishment violation**. Howard v Groover 2023 U.S. Dist Lexis 223566, clearly established that it was cruel and unusual punishment and an 8th amendment constitutional violation to forces an inmate with a back injury to walk 150 feet in order to file a grievance. *Steven Crump was forced to walk every day for 18 months with a separated spine and over 200 yards a day for 5 months without walking assistance for medical, food and grievances/requests.

3. Scriven v Corby, 2021 U.S. Dist Lexis 103 164 KS Dist Ct (June 2, 2021) at *31 the court found that any REASONABLE officer in the Defendant's position would have understood that he or she **was displaying deliberate indifference to serious medical need by not permitting Plaintiff to receive care (AND WHEELCHAIR TRANSPORT) where Plaintiff was unable to stand or walk and was screaming in pain**. At **\*30 (injured) pre-existing medical conditions, was injured through violence (injured his back and was denied medical care by State Officials) At\* 23 the court found that plaintiff alleged facts sufficient to deny qualified immunity.** *Johnson County Defendants were on notice that denying an injured inmate a wheelchair transport and proper medical care is clearly established as a constitutional violation.

4. Rogacki v Jefferson Cnty No. 21-cv-02281-cns-klm. 2022 U.S. Dist. Lexis 197757, 2022 WL 16551336 at *8 ( D Colo 2022) Finding that allegations of Wellpath incentivizing reductions in the use of "off-site medical services' established a policy and that policy is unconstitutional. *Sheriff's Office and VitalCore Defendants implemented this policy and were on notice that this practice clearly violated constitutional right.

5. Mata v Saiz 427 F. 3d at 753, "Courts have found that allegations of a sufficiently serious medical need may be based on either allegation of the intermediate symptoms **or allegations of an ultimate attendant harm**." Defendants were on clear notice that not responding or attending to medical emergency requests is Deliberate Indifference. (1) Crump was left passed out in his cell TO DIE after having a heart attack on March 20th 2024. (2) Crump was forcefully restrained for 4 hours until he became paralyzed on June 4th, 2025.

6. Barnes v. Gorman, 536 U.S. 181 (2002) The factual situation from which the Barnes case arose is

 illustrative of the kinds of cases that seem to cry out for punitive damage relief…" serious lower back pain, and uncontrollable spasms in his paralyzed areas -- that left him unable to work. The callous disregard of the man's hygienic and safety needs provided an obvious circumstance for considering punitive damages, and the jury awarded the plaintiff $1.2 million in punitive damages. *Defendants were on notice that restraining disabled/injured persons and refusing to transport him correctly is reprehensible conduct which is likely to result in severe injury. Steven Crump was restrained and paralyzed multiple times, continuously injured by intentionally fully restraining him with waist restraints and handcuffs around his spinal injury.

   a. In the Defendants Summary Judgment at *84 Defendant SGT Cooley states that "use of a wheelchair was a courtesy there were NO ORDERS from medical requiring a wheelchair". The Supervisor's SGT Cooley, SGT Watters had full discretionary authority to deny or provide Steven Crump a wheelchair, yet actively denied that service and provided that service depending on retaliatory decisions. Basically, denying Steven Crump a wheelchair if he had filed grievances or complained of lack of accommodations or disabled services.

9.  Before Feb. 2024 the Defendants were on notice that this action was cruel and unusual punishment, Deliberate Indifference to a serious medical need. Steven Crump has PROVIDED the DOCTORS NOTE requiring wheelchair transport for court and recommendation for not using belt restraints.

### C. <u>FULLY RESTRAINING STEVEN CRUMP CAUSING EXTREME INJURY</u>

1.      In Jackson v Austin, 241 F Supp 2d 1313 KS Dist Ct (Jan 17, 2003) **An injured inmate was handcuffed and dragged**. Qualified immunity was DENIED. The court awarded compensation and punitive damages. The Defendants WERE ON NOTICE THAT THEY VIOLATED STEVEN CRUMP'S CONSTITUTOINAL RIGHTS.

2.      **The 10th Circuit has previously held that, in some instances, failing to abide by medical orders with respect to handcuffing (belt restraint) can result in constitutional violation of the right to be free from deliberate indifference to serious medical needs**. BOTH Martin v BD of County Comm'rs of Pueblo,909 F. 2d 402 (10th Cir 1990) and Howard v Dickerson, 34 F. 3d 978, 980-81 (10th Cir 2002)**.**

3. **Vondrak v. City of Las Cruces, 535 F.3d 1198, 1209 (10th Cir. 2008) The Tenth Circuit's decision in Vondrak clearly established Plaintiff's right to be free of excessively tight handcuffing. In Vondrak, the Tenth Circuit held that "at the time of Vondrak's arrest, the right to be free from unduly tight handcuffing was `clearly established' —as were the contours of the right." 535 F.3d at 1209 (collecting cases).** Like in Vondrak, <u>Steven Crump's restraints were excessive, the officers ignored his complaints, and he suffered an "actual injury.</u>" **See id. Thus, Garcia is not entitled to qualified immunity on this claim.**

4. **SHOCKS THE CONSCIENCE proof when another officer was taken back by the fact that Steven Crump was in such terrible pain, in an unsafe position, fully restrained being forced to walk with a cane**. County of Sacramento v Lewis, 523 U.S. 833 S Ct (1998) Id at 847 n. 8. To establish a substantive due process

violation, plaintiff must show Defendant's behavior was "so egregious, so outrageous, that it may fairly be said to shock the conscience." Belting and handcuffing Steven Crump was extremely egregious.

### D. STEVEN CRUMP FORCED TO LIVE IN FECAL MATTER, URINE, MOLD, SOILED MATTRESS

1. Hutto v Finney, 437 U.S. 678, 686-87 (1978) "A filthy, overcrowded cell and a diet of 'gruel' might be tolerable for a few days and intolerably cruel for weeks and month" ***Steven Crump spent 5 months in a nasty, filthy cell where he caught periodontal disease that caused his teeth to fall out, bleeding and swollen gums that was never treated and his leg wound became septic and began to rot his flesh. Kain O'Keefe tried to help clean the cell, but the Deputies and Supervisors refused to all inmate to help.**

### E. DENIED ADEQUATE PAIN MEDICATION

Scriven v VitalCore Case 5:22-cv-03282-EFM-RES at* 64 "But, given Plaintiff's allegations concerning his health and medication history, the denial of Tramadol in favor of an over-the counter pain medication is not a 'mere disagreement 'with a specific course of treatment. Plaintiff alleges that he suffers from serious and extremely painful medical conditions that are so intense that an orthopedic specialist doubled his Tramadol prescription." **Olathe Mental Health had to intervene and prescribe Steven Crump 100mg of trazadone due to suffering due to the separation in his spine, ripped and torn muscles and ligaments.**

**\*<u>Do Not Let the Amount Of medication Listed By The Defendants Mislead The Court</u>. All that medication is for digestive problems and psychiatric medication needed due to the torture. Nothing was for pain.**

### F. FAILING TO RESPOND TO MEDICAL EMERGENCIES

1. In Campbell v Monday, 2024 U.S. Dist Lexis 73812, Oklahoma Ct (2024) © "Campbell has alleged that OCCJA maintained and/or customs and/or practices of (1) Failing to adequately train their employees to

respond to inmates' medical requests via wall speaker phone". (3) "not allowing pill call nurses to step into an inmates cell to give him medication**." In Campbell v  Monday the court found deliberate indifference and DID establish a municipal liability against OCCJA**.  Calvin Hayden, Defendants were on NOTICE that failure to respond to inmates' medical requests via speaker phone is DELIBERATE INDIFFERENCE.

a.    Deputy Bell and Vital Core staff refused to come to Steven Crump's aid upon requesting a medical emergency over the speaker intercom on March 20th, 2024

b.    On June 3rd 2024 Deputy Andrews and Vital Core staff along with the Deputy who answered the speaker phone refused to come to Steven Crump's aid when he requested a medical emergency after Deputy Andrews forcefully restrained Steven Crump with handcuffs and a belt restraint only to leave him in a cell ALL ALONE in cell J3 for 4 hours until Steven Crump became paralyzed

2. Johnson County Defendants were previously on NOTICE that training and Supervision along with adopting new policy for procedures was necessary to ensure the safety and health of inmates including proper transport and medical response to emergency medical requests. * Multiple People HAVE DIED because the Defendants refused to come to medical emergency requests, improperly handled emergency medical requests via wall speaker before Jan 1st, 2024.

## COUNT III: MONELL CLAIM

1. Calvin Hayden, Sheriff's Office, WITH the Jo. Co. Board of Commissioner's VOTE delegated a nondelegable duty of providing adequate medical care to VitalCore Health Strategies which is a 3rd party contractor. In Est of Angelo v Bd of Cnty Comm'rs at *58, "**The court agrees that the plaintiff pleaded that the decision to contract with Wellpath (3rd party Medical Contractor) is a policy".** Vital Core and Wellpath are competitors in the field of medical care provided to government facilities.. **The law was clearly**

**established that by contracting with Vital Core, Calvin Hayden (Sheriff's Office) (Jo. Co. Board of Commr's) created a POLICY and are liable for damages. Claims are actionable.**

3. The Johnson County Board Of Commissioners:  "**VitalCore Health Strategies has contracted with Johnson County** (Jo. Co. Board of Commissioners) **to provide medical care services to individuals incarcerated at Johnson County Sheriff's Office Detention Facilities."**

> **a. https://www.jocogov.org/johnsoncounty-sheriff/medical-information**

4. (Johnson County Board of) **Commissioners voted 5-2 in favor of the change**, though some noted that they have a limited role in how the sheriff manages his office's budget. **Topeka company (VITALCORE) will now oversee mental health care at detention facilities.** *This clearly shows that the Jo. Co. Board has control over what CARE is provided inside the JCADC. The JO. CO. BOARD OF COMMISSIONERS IS A PROPERLY IDENTIFIED DEFENDANT AND ARE LIABLE FOR DAMAGES AS PERSONAL PARTICIPANTS.

> **a. https://johnsoncountypost.com/2024/02/16/sheriff-mental-health-226389/:**

3. <u>ABUSE CONTINUES THROUGH CONTRACTUAL DELEGATIONS OF DUTY</u>

> **a. https://johnsoncountypost.com/2024/02/16/sheriff-mental-health-226389/**

**Sheriff nixes JoCo mental health center's contract with jail in favor of private vendor (Feb. 6th 2024)**

(1) In a decision that one commissioner called "soul crushing" the **Johnson County Commission Thursday accepted Sheriff Calvin Hayden's recommendation** that mental health care for jail inmates be provided by a private Topeka-based health care business rather than the county's own mental health center. (2) **Commissioners voted 5-2 in favor of the change**. (3) Topeka company (VITALCORE) will now oversee mental health care at detention facilities. (7) **The sheriff had asked commissioners to add mental health**

services to the existing contract for medical care of inmates, which is provided by VitalCore Health

Strategies, a health care consultant based in Topeka. (9)  The sheriff asked the commission to approve an

exception to competition to add mental health, bringing the medical, mental health and prescription

services contract to $27.8 million, while terminating the county mental health center's agreement.

a. Steven Crump was in such severe pain that the Olathe Mental Health had to intervene and prescribe him

100 mg of trazodone for the pain. Olathe Mental Health was intervening on unconstitutional practices

inside the JCADC so Calvin Hayden and the Jo. Co. Board had the agency removed.

4. Restatement (Second) of Agency § 219 (1) **A master is subject to liability for the torts of his servants**

**committed while acting in the scope of their employment**. (2) A master is not subject to liability for the

torts of his servants acting outside the scope of their employment, unless: the master intended the conduct

or the consequences, or the master was negligent or reckless, or the conduct violated a non-delegable duty

of the master, or the servant purported to act or to speak on behalf of the principal and there was reliance

upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.

5. Restatement (Second) of Agency § 243**.  A master is subject to liability for physical harm caused by the**

**negligent conduct of servants within the scope of employment.**

6. Calvin Hayden, Jo. Co. Board adopted the unconstitutional policies of VitalCore found in, Scriven v Vital

Core Case 5:22-cv-03282-EFM-RES at*32 "VitalCore implemented a number of policies, including that

'VitalCore had a policy of deliberate indifference for care and treatment in defiance of doctors' orders",

"VitalCore had a policy of deliberate indifference and acquiesced to the inadequate medical treatment of

plaintiff"," VitalCore had a policy of failing to train to make sure employees do not respond to obvious

risks".  VITALCORE was held responsible under MONELL as well as the Sheriff.

4.      The "deliberate indifference" element may be satisfied where the entity has actual knowledge that its acts or failure to act is "substantially certain to result in constitutional violation, and the entity, 'and the entity', consciously or deliberately chooses to disregard the risk of harm." Schneider v City of Grand Junction Police Dep't at * 717**. Notice can be established either** by a "pattern of tortious conduct" or if a violation of rights is a "high predictability" or "plainly obvious" consequences of the entities action or inaction. Barney v Pulsipher 143 F. 3d 1299, 1307 (10th Cir 1998); To establish existence of a policy, plaintiff need only plead "a pattern of multiple similar instances of misconduct", with no set number required to render the alleged policy plausible. Griego v City of Albequerque;"The outcome of the lawsuit is not relevant" to establish a policy, because the pleading standard requires courts to accept well pleaded factual allegations as true. Est of Valverde v Dodge No. 16-cv-1703-msk-meh, 2017 U.S. Dist Lexis 131402, 2017 WL 3530282 at *4 (D. Colo 2017). 100 F Supp 3d 1192, 1213 (D. N.M.);

a. These cases established a continuance of widespread violations**: Scriven v VitalCore; Rouse v VitalCore Health Strategies, LLC; Viilo v Kent City, Michigan Dist. Ct, 2023; Cain v Mann, 2024 U.S. Dist. Lexis 38336; Defendant v Mississippi Dept of Corr. Case 3:21-cv-00516-CWR-LG. ACLU LAWSUIT AGAINST VITALCORE.**

5. Steven Crump has properly alleged "pattern of tortious conduct" that is sufficient. Cacioppo v Town of Vail, 528 Fed Appx 929 (10th Cir App).  Since 2022 Calvin Hayden, Jo. Co. Board and VitalCore were on notice constitutional violations.; Rogacki v Jefferson City Cnty, 2022 U.S. Dist Lexis 197757, Established that "Wellpath (VitalCore) was on notice by stating that the implementation of the (unconstitutional) policies carried an obvious risk of harm to detainees' health and that the policies resulted in a pattern."  Rogacki v Jefferson City (WL) at *8 "**Continuing to adhere to those policies amounts to consciously disregarding that risk of harm"**

a. **THREE PEOPLE DIED** IN THE JCADC DUE TO DELIBERATE INDIFFERENCE TO INADEQUATE MEDICAL CARE:

**<u>Nathaniel Davis Jr., 36, March 10 2024, Timothy Best, 2023, Wanda D. Kendrick, On March 2023</u>**

6. Board of Comm'rs of Bryan County v Brown, Id at 402, 117 S Ct. 1382 As to respondent's claim that Sheriff Moore's decision to hire Burns triggered municipal liability, the county argued that a single hiring decision by a municipal policymaker could not give rise to municipal liability under § 1983. Id., at 59-60. **The District Court denied the county's motions**. The court also overruled the county's objections to jury instructions on the § 1983 claim against the county. Id., at 125-126.

7. Quintana v Santa Fe Cnty Bd of Commr's (10th Cir. 2020) " an official disregards risk when he fails to take reasonable measures to abate the risk"...   Defendants caused severe injury to Steven Crump.

8. Johnson County Defendants POLICIES disregarded risks that would allow:

a. Steven Crump's wheelchair to be taken without having been seen by a spine specialist or doctor; Transporting disabled inmates with restraints;Denying wheelchair usage in the day room;Denying inmates back braces;NO OVERSIGHT upon VitalCore staff by the Sheriff's Office;CUSTOM of allowing retaliation for filing grievances;Not establishing checks and balance, no Supervision and NO investigations of complaints of constitutional violation;Contracting FULL medical care to VItalCore;Policy of denying inmates adequate pain medication by allowing only over-the counter medications;Policy of denying disabled inmates access to handicap showers and handicap cells without medical approval even though the inmate has a KNOWN, visual disability;Forcing crippled Steven Crump to walk to medical and to file grievances while severely injured without assistance. FORCED CRUMP TO WALK OVER A HALF MILE TO GET A CT SCAN ON HIS SPINE;Denying disabled inmates assistance in cleaning cells, leaving CRUMP in isolations in filth, throw-up,

feces, urine and mold; Policy, AN INTERNAL custom of stopping Deputies from intervening and assisting

inmates who are disabled;Using belt restraints on inmates with spinal injuries.

8. Scriven v Vital Core, VitalCore was denied Monell Immunity at (*10) The 10th Cir has held that traditional

municipal liability principles apply to Monell claims brought against private contractors (including medical

contractors).  VITALCORE IS HELD REPONSIBLE UNDER MONELL and THE Johnson County Defendants WHO

EMPLOY VitalCore are held RESPONSIBLE under the principles of a MONELL CLAIM POLICY MAKING.

9.  Bordanaro v. McLeod , 871 F.2d 1151, 1156 (1st Cir. 1989) ; see Cannon v. City & Cty. of Denver , 998

F.2d 867, 878 (10th Cir. 1993) (recognizing that a practice "so permanent and well settled as to constitute a

custom or usage with the force of law" can give rise to municipal liability(quotations omitted)); David W.

Lee, Handbook of Section 1983 Litigation § 3.02 (2019-3 Supp.) ("An official policy can also be a persistent,

widespread practice for the city officials and employees, which, although not authorized by officially

adopted or promulgated policy, is so common and well-settled as to constitute a custom that fairly

represents municipal policy**.**"). **A jury could find that Steven Crump has clearly established municipal**

**liability and that the Johnson County Defendants are liable under Monell for injuries cause to and**

**deprivations of Steven Crump's constitutional rights.**

<u>**COUNT IV: SUPERVISOR LIABILITY**</u>

1.Estate of Angelo v Cnty Bd of Comm'rs "court finds that the individual defendant's propensity to provide

inadequate medical care is a particular trait that risks harm to detainees, sufficient to impose a duty to

supervise on Wellpath."; Dodds v Richardson, 614 F. 3d 1185, 1195 (10th Cir. 2010) cert. denied, 536 U.S.

960 (2011). To demonstrate the link between Supervisor and constitutional violation there must be

established "(1)  the defendant promulgated, created, implemented or possessed responsibility for the

continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with

the state of mind required to establish the alleged constitutional deprivations." Dodds, 614 F.3d at 1199 .

2. Dodds v Richardson 614 F 3d 1185 (10th Cir App 2010) at *1197- Based at least in part on this

jurisdiction, the court denied Defendant qualified immunity. The district court concluded Defendants

possessed responsibility for running the jail (or transport) , acquiesced in the continuing operation of the

court clerk's or district judges policies at the jail, and that 'his acquiescence caused or contributed in the

cause of deprivation to Plaintiff's rights by another or others " because the policies (of the jail) refused

plaintiff bail in violation of 14th amen due process. Dodds at *1212 (11) A supervisor may directly order a

subordinate to violate plaintiff's due process (equal protection) or utilizing an already existing policy that

has the same effect. See Meade V Grubbs 541 F. 2d 1512 10th Cir App, 1988; Hernandez v Keane, 341F. 3d

137, 145 (2d Cir 2003) (Supervisor's liability can be based on "creation of a policy or custom that sanctioned

conduct amounting to a constitutional violation, or allowing such a policy or custom to continue'); Cottone

v Jenne, 326 F.3d 1352, 1360 (11th Cir 2003) (Supervisory liability "when a supervisor's custom or policy

results in deliberate indifference to constitutional rights"). Where the actions of subordinates directly flow

from the participation or conduct of the supervisor, liability may be appropriate. The supervisor

deliberately caused the violation.

a. Calvin Hayden, Supervisor Defendant's had full KNOWLEDGE of the deprivations and dangers inmates

face. Hayden CREATED, PROMULGATED THE UNCONSTITUTIONAL POLICIES AND CUSTOMS THAT LEAD TO

STEVEN CRUMP'S INJURY. See policies under Monell Claim.

b. CPT Levin promulgated the customs that injured Steven Crump. He acquiesced to unconstitutional policy,

refused to investigate complaints of constitutional violations. Upheld the unconstitutional policy of

transporting disabled inmates fully restrained and denying back braces to inmates with spinal injuries. Had PERSONAL INVOLVMENT in the decision process.

c. Sgt Cooley, Sgt Watterson, acquiesced to unconstitutional policy of denying disabled inmates adequate transport to ensure their safety. Made Discretionary Decision to deny Steven Crump a wheel chair, forcefully restrain Steven Crump which caused severe SUFFERING AND INJURY. Had personal involvement.

d. SGTs' #1,2,3 had Supervisor personal involvement in the decisions that lead to constitutional violations. Denying ADA accommodations, medical emergencies and cell cleaning.

2. **SGT Cooley's** response to Steven Crump's grievance, " **WE ALWAYS BELT RESTRAIN AND HANDCUFF INMATES WITH A CANE**'' (even with spinal injuries). **SGT Watterson replied, "This is a discussion you need to have with medical"**. The Sheriff's Office does not have the medical background to make these determinations."   Absolute indifference to Steven Crump's serious injuries and disability. "A plaintiff may plead superior liability under 1983 by (1) through defendants supervisors' implementation or utilization of a policy that caused a deprivation of the plaintiff's rights, (2) by demonstrating the defendant supervisor's personal participation or knowledge of the violation and the acquiescence in its continuance."

3 . Scrive v Corby at *27, The law has LONG been clearly established that an officer " who fails to intervene to prevent another law enforcement officer's use of excessive force may be liable under 1983. On the TOTALITY of the facts in Steven Crump's case he respectfully requests this court to deny qualified immunity under 1983 to the Defendants SGT Cooley, Deputy Andrews and Calvin Hayden. A Jury could find that Steven Crump has established a supervisor link to injuries caused to and deprivations of Steven Crump's constitutional rights. Fully restraining a disabled inmate to inflict pain is excessive force.

4. 6. Carr v Castle, 337 F.3d 1221, 1228 (10th Cir 2008)(analyzing a failure to train theory of liability in the context of an excessive force claim) Not training Deputies Andrews, King, Bell to escalate a medical emergency, not training Deputy Andrews to safely transfer Steven Crump, failing to train Deputy Andrews to NOT injure Steven Crump was an outrageous Supervisory oversight.

## JOHNSON COUNTY DEFENDANT'S ROLE AS GATEKEEPER

1." As a gatekeeper for the medical personnel capable of treating the condition may be held under deliberate indifference standard if she delays or refuses to fulfill that gate keep role" Est of Jensen v Clyde, 989 F. 3d 848, 860 (10th Cir); 2. A gate keeper fails in the duty if they "deny access to someone capable of evaluating the inmates need for treatment." See, Mata v Saiz 427 F.3d 745. **"Even a brief delay in treatment can be unconstitutional". Lucas v Turnkey Health Clinics, LLC.**

2. Johnson County Defendants meets the legal frame work for a claim of deliberate indifference. (1) The objective component is satisfied if the deprivation is sufficiently serious. Farmer v Brennan, 511 U.S. 825, 834. 114 S Ct. 1970, 128 L Ed 2d 811 (1994). *Steven Crump was shot in the spine and left crippled and was deprived of any adequate treatment for 18 months, never received any treatment for the spinal injury which resulted in extreme disfigurement and permanent damage requiring surgery. This deprivation was very serious. (2) The subjective component is established when an official **"knows and disregards an excessive risk to an inmate's health and safety".** Farmer v Brennon 511 U.S. at 837. A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment. (Or so obvious that a laymen would notice) Hunt v Uphoff, 149 F.3d 1220, 1224 (10th Cir 1999).

3. Calvin Hayden, Jo. CO. Board, Defendants, have satisfied the subjective component under two theories: Failure to properly treat theory and the gatekeeper theory. (1) Sealock c Colorado 218 F. 3d 1205

established (placed Calvin Hayden and Defendants on NOTICE) that deliberate indifference may rise from a **failure to treat properly, which implies the presence of some degree of care**.

4. By waiting to refer Steven Crump to an outside physician this was, "consistent with chronic deficiencies" in medical care that amounts to wide spread policy. Burke v Ragalado, 935 F.3d 960 (10th Cir app 1997) See, Hollingsworth v Hill, 110 F.3d 133 (10th Cir App 1997) delaying treatment, denying recommendations of care, failing to address his symptoms- "inflicted" his injuries by causing the condition to worsen; Est of Angelo v Bd of Cnty Commr's at *44 "the plaintiffs sufficiently plead causation because a jury could find that the systemic deficiencies resulted in the Plaintiff's injury." Steven Crump requests the court to apply this same standard.

5.  The deprivations were so extreme, so obvious that Johnson County Defendants were ON NOTICE of the need for more training in the areas listed above, but disregarded the risks. Est of Lobato v Correct Care Sols, LLC No. 15-cv-02-718-PAB-STV, 2017 US DIst Lexis 49247, 2017 WL 119 7295 at *7 " Liability under failure to train theory turns on whether the defendants had, " notice of particular deficiencies in a training program" **PEOPLE WERE/ARE DYING. MULTIPLE LAWSUITS HAVE BEEN FILED AGAINST THE JOHNSON COUNTY SHERIFF ANG BOARD. THE ACLU EVEN SUED VITALCORE**.

6. Calvin Hayden, Sheriff: K.S.A. 19-1903. Sheriff to keep jail; separation of each sex, definitions; meals and medical care for prisoners. (a) The sheriff of the county, or such sheriff's deputy, shall: (3) supply proper food, drink and medical care for the prisoners; K.S.A. 19-811. Charge and custody of jail; liability for acts. The sheriff shall have the charge and custody of the jail of his county, and all the prisoners in the same, and shall keep such jail himself, or by his deputy or jailer, for whose acts he and his sureties shall be liable.

**COUNT V: RETALIATION IN VIOLATION OF 1ST AMENDMENT**

1. Hudspeth v Figgins, 1347 (4th Cir 1978) may not retaliate against an inmate exercising 1st amendment rights;Hyberg v Enslow, 801 F Appx 647, 651 (10th Cir 2020) Irreparable HARM; Nieves v Bartlett, 139 S Ct 1715, 1722 204 L Ed 2d 1 (2019) Defendants were on notice that retaliation for free speech is unconstitutional. transports. There was NO PENOLOGICAL INTEREST in injuring Steven Crump.

2. Deputy King and his Supervisor taking wheelchair, Salgado and his Supervisor writing Crump up for grievances; Sgt Cooley, Sgt Watterson and Deputy Andrews fully restraining Crump, SGT Cooley intentionally causing pain and suffering; Defendants refusing to respond to medical emergencies; Supervisors were verbally assaulting and doing mob actions attacks on Crump until he had to check in to protective custody to transfer facilities. (a) In support of the general legal principle that a prison guard violates 8th/14th amendment when he applies force against an inmate "maliciously and sadistically to cause harm, See,e.g. Hudson v McMillian , 503 U.S. 1,9, 112 S Ct 995 117 L Ed 2D 156 (1992) ("When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated"); Whitley v Albers, 475 U.S. 312, 320, 106 S Ct 1078, 89 L Ed 2d 251 (1986) ( Concluding , in context of an 8th amen excessive force claim, that "where a prison security measures is undertaken.. "whether the force was applied in good-faith effort to maintain or restore discipline or maliciously and sadistically to cause harm>." See, e.g. Walker v Bowersox, 526 F.3d 1186, 1188-90 (*10 th Cir 2008) (reversing grant of summary judgment in favor of correctional officers when a officer failed to rebut inmates evidence supporting officers use of excessive force by restraining an inmate to a bench for 24 hours). Andrews left Crump fully restrained until he became paralyzed from pain.

3. Deputy King. Clearly Violated Steven Crump's Constitutional Rights, Violated ADA. (a) Quintana v Santa Fe Cnty Bd of Commr's (10th Cir. 2020) " an official disregards risk when he fails to take reasonable measures to abate the risk"... of injury to StevenCrump. (b)Let us paint a picture to place the scene in to full

detail. You are and officer sent by your supervisor to take an inmate's wheelchair. As you approach the inmate you notice that both of his feet are incased in bandage wrap, he has a black eye, he has bandage wrap covering the entire left leg up to the knee. Upon speaking to the inmate, he informs you that he was severely injured by the police and he was shot in the spine. The inmate tells you that he cannot stand or walk without extreme pain, that he can't even stand to use the bathroom or sit down to use the bathroom because he can't use his back to stabilize his body. The inmate plead with you not to take the wheelchair because he was very concerned about becoming more injured. The inmate tells you that he has not seen a doctor or spine specialist to diagnose his internal injuries yet and that he should not be walking around or moving around too much due to unknown damage. Would a NORMAL MINDED person believe that it would be perfectly alright to take the wheelchair from an inmate in such terrible conditions, wrapped in bandages? Simply put, NO. That is not NORMAL behavior or constitutional, but Deputy King's Supervisor ordered him to take the wheelchair NO MATTER WHAT. The Supervisor even went to the length of contacting Vital Core Medical Staff to cause them to report that Steven Crump's feet injuries were all healed up while still wrapped in bandages. The medical reports by other nurses from later dates show that Steven Crump STILL required bandages to his feet. But the feet injuries were not the main reason for Steven Crump's inability to walk. That was a deliberate indifference move by medical to try and disguise Steven Crump's true, EXPENSIVE, injuries to his spine. Vital Core noted that Steven Crump had a light abrasion mark on his back while exemplifying the blisters on both feet as the reason for his immobility. This is outrageous conduct and beyond malpractice. Deputy King and his Supervisor relied on the diagnosis of a nurse practicing beyond her capabilities in an unconstitutional manner.

## COUNT VIII: PUNITIVE DAMAGES

1. In the 10th Circuit, to award punitive damages in a case, the defendant's conduct must be considered

"reprehensible," meaning it must be egregious, malicious, or demonstrate a high degree of culpability, with the "degree of reprehensibility" being the most important factor when determining if a punitive damages award is appropriate, as outlined by the Supreme Court case "BMW of North America, Inc. v. Gore.

Case law application: The 10th Circuit frequently applies the "Gore factors" when reviewing punitive damages awards, which include assessing the reprehensibility of the conduct, the ratio of punitive damages to compensatory damages, and the comparison to other civil penalties for similar conduct.

Examples of conduct that might be considered reprehensible in the 10th Circuit:

**Fraudulent schemes with significant harm to victims; Intentional infliction of emotional distress with extreme and outrageous conduct; Willful disregard for safety standards resulting in serious injuries**

Exxon Shipping Co. v. Baker, 554 U.S. __, 128 S. Ct. 2605, 2621 (2008) ("[P]unitives are aimed not at compensation but principally at retribution and deterring harmful conduct."); Cooper Indus., Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 432 (2001) (describing punitive damages as non-compensatory damages awarded in excess of actual harm suffered to punish and deter reprehensible conduct and to express the fact finder's moral condemnation of the conduct in question); BLACK'S LAW DICTIONARY 448 (9th ed. 2009) (defining "punitive damages" as "[d]amages awarded in addition to actual damages when the defendant acted with recklessness, malice, or deceit; specif., damages assessed by way of penalizing the wrongdoer. STEVEN CRUMP WAS TORTURED.

2.     The Supreme Court had provided indirect support for the availability of punitive damages under Title II by its decision in Franklin v. Gwinnett County Public Schools, 503 U.S. 60, 70-71 (1992), in which the Court stated that it would "presume the availability of all appropriate remedies, unless Congress has expressly indicated otherwise." While Franklin was a Title IX case,16 the framework of analysis it applied led some

lower courts to award punitive damages under Section 504.17 At the time that the Supreme Court took up

the Barnes case, the Court of Appeals for the Sixth Circuit had ruled that punitive damages could not be

obtained under Section 504,18 while the Eighth Circuit had ruled that punitive damages were available

under both Section 504 and Title II of the ADA.

3.      The factual situation from which the Barnes case arose is illustrative of the kinds of cases that seem

to cry out for punitive damage relief. The plaintiff, who was paraplegic, was arrested for trespass after

fighting with a nightclub bouncer. While waiting for a police van to transport him, he was denied

permission to use a restroom to empty his urine bag. When the van arrived, it was not equipped to

transport a wheelchair and, over the plaintiff's objections, police officers removed him from his wheelchair

and used a seatbelt and the plaintiff's own belt to strap him to a narrow bench in the rear of the van.

During the ride to the police station, the belts came undone and the plaintiff fell to the floor, rupturing his

urine bag and injuring his shoulder and back. The plaintiff subsequently suffered serious medical problems -

- including a bladder infection, serious lower back pain, and uncontrollable spasms in his paralyzed areas --

that left him unable to work.26 The callous disregard of the man's hygienic and safety needs provided an

obvious circumstance for considering punitive damages, and the jury awarded the plaintiff $1.2 million in

punitive damages. * Defendants caused Steven Crump's spine to twist into scoliosis, caused paralysis, and

physically harmed him when propelling him down a hallway. The Defendants constantly restrained Steven

Crump with a waste belt and handcuffs which pinched the nerves in his spine causing severe pain and

paralysis. Defendants caused irreparable injury. Steven Crump was locked in a nonhandicap cell for 23

hours a day where he could not use the bathroom correctly due to his severe injuries. Steven Crump

contracted periodontal disease and his leg became septic from bacterial infection and rot from infection.

4.      Kolstad v Ada 527 US 526, 119 S Ct 2118, 2124, 144 L Ed. 2d 294 (1999) Punitive Damages The inquiry

does not end with a showing of the requisite mental state by certain employees, however. Petitioner must

impute liability for punitive damages to respondent. Common law limitations on a principal's vicarious

liability for its agents' acts apply in the Title VII context. See, e. g., Burlington Industries, Inc. v. Ellerth, 524

U. S. 742, 754. The Court's discussion of this question is informed by the general common law of agency, as

codified in the Restatement (Second) of Agency, see, e. g., id., at 755, which, among other things,

authorizes punitive damages "against a ... principal because of an [agent's] act ... if ... the agent was

employed in a managerial capacity and was acting in the scope of employment," § 217 C(c), and declares

that even intentional, specifically forbidden torts are within such scope if the conduct is "the kind [the

employee] is employed to perform," "occurs substantially within the authorized time and space limits," and

"is actuated, at least in part, by a purpose to serve the" employer, §§ 228(1), 230, Comment b. Under these

rules, even an employer who made every good faith effort to comply with Title VII would be held liable for

the discriminatory acts of agents acting in a "managerial capacity."

5.      The terms "malice" and "reckless indifference" pertain not to the employer's awareness that it is

engaging in discrimination, but to its knowledge that it may be acting in violation of federal law, see, e. g.,

Smith v. Wade, 461 U. S. 30, 37, n. 6,41,50. Defendants discriminated and tortured Steven Crump.

6.      Smith v Wade 461 U.S. 30 56 103 S Ct 1625, 75 L Ed. 2d 632 (1983) conduct motivated by evil intent

of malice and reckless indifference to protected federal rights.

7.      Phillips v Tiona, 2011 U.S. Dist Lexis 63826 ADA claim of reprehensive conduct for denying handicap

shower. (To include denial of handicap cell in Crump's case)

8.    Howard v Groover 2023 U.S. Dist Lexis 223566 cruel and unusual punishment by forcing inmate to walk while severely injured. Reprehensive Conduct.

9.    Hutto v Finney, 437 U.S. 678 "A filthy cell may be tolerable for a few days, but it is intolerably cruel for weeks or months. *Steven Crump was forced to live in a disgusting, filthy cell for 5 months.

10.    Burke v. Regalado, No. 18-5042 (10th Cir. 2019) Reprehensible Conduct where inmate injured his neck, causing lower back paralysis. No one treated his injuries. * Steven Crump had a spinal injury and became bedridden with limited functions and was NEVER TREATED FOR HIS INJURIES which caused him paralysis multiple times and disabling, permanent injury.

11.    Phillips v Tiona, 2011 U.S. Dist Lexis 63826 ADA claim of reprehensive conduct for denying handicap shower. Plaintiff seeks punitive damages, which "are available only for conduct which is 'shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" Searles v. Van Bebber, 251 F.3d 869, 879 (10th Cir. 2001) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983))

12. Howard v Groover 2023 U.S. Dist Lexis 223566, The courts made it clearly established that it was cruel and unusual punishment and an 8th amendment constitutional violation to forces an inmate with a back injury to walk 150 feet in order to file a grievance.

13. Count VIII requests punitive damages as a result of the defendants' alleged reprehensible Conduct: THE DEFENDANTS TORTURED STEVEN CRUMP FOR 18 MONTHS THROUGH MENTAL AND PHYSICAL ABUSE; STEVEN CRUMP HAD TO CHECK IN TO PROTECTIVE CUSTODY; THREW STEVEN CRUMP IN ISOLATION AND GAVE HIM OVER THE COUNTER MEDICATION FOR SEVERE SPINAL INJURY, DOG BITE AND NERVE DAMAGE; FORCED HIM TO SLEEP ON A SOLID METAL BUNK WITH A THIN MATTRESS THAT WAS SOILED WITH MOLD,

URINE, THROWUP AND FECES; FORCED HIM TO WALK 200 YARDS A DAY IN EXCRUTIATING PAIN WHILE

CALLING HIM A GIMP; ASSAULTING HIM IN MOB GROUPS TO INTIMIDATE HIM INTO SILENCE FROM

GRIEVANCES; INTENTIONALLY RESTRICTED HIS WHEELCHAIR AND ACCESS TO DAY ROOM OUT OF

RETALIATION; WOULD COME TO HIS CELL DAILY WITH THE DOOR OPEN TO VERBALLY BERATE STEVEN

CRUMP FOR NOT BEING ABLE TO WALK TO THE MEDICAL CART FOR MEDICATION THEN FORCE HIM TO

WALK TO SIGN REFUSAL FORMS AGAINST HIS WILL; CONSTANTLY REJECTING STEVEN CRUMP'S

COMPLAINTS OF SEVERE PAIN AND REFUSING TO HELP HAVE HIS CELL CLEANED; REFUSED TO TRANSPORT

HIM WITH OUT FULLY RESTRAINING HIM WHICH CAUSED EXTREME SUFFERING; CONSTANT DELIBERATE

INDIFFERENCE AND REDIRECTION OF STEVEN CRUMP'S SUFFERING; ALLOWED STEVEN CRUMP'S LEG TO

BECOME SEPTIC DUE TO FILTHY CELL, STEVEN CRUMP'S LEG ROT FROM HIS BODY, OOZED AND STANK OF

DECAY; FORCED CRUMP TO LIVE IN SUCH FILTH THAT HE CONTRACTED PERIODONTAL DISEASE WHICH

CAUSED EXTREME PAIN AND TOOTH LOSS, TOOTH SHIFTS IN THE MOUTH AS THE BODY REJECTED THE

TEETH FROM THE INFECTED GUMS, NO TREATMENT WAS EVER PROVIDED;FORCED STEVEN CRUMP TO

TAKE EXPERIMENTAL MEDICATIONS THAT CAUSED LIVER, KIDNEY AND HEART DAMAGE; LEFT STEVEN

CRUMP TO DIE IN A CELL WHEN HE PASSED OUT FROM HEART PROBLEMS; FULLY RESTRAINED AND LEFT

STEVEN CRUMP SITTING UP IN A CELL ALL ALONE FOR 4 HOURS WHICH PINCHED THE NERVES OFF IN HIS

SPINE; REFUSED TO COME TO STEVEN CRUMP'S MEDICAL EMERGENCY AND LEFT HIM ALONE IN A CELL

FOR 3 MORE HOURS IN EXCORIATING PAIN UNTIL HE BACAME PARTIALLY PARALYZED THEN DRUG HIM

DOWN A HALLWAY INSTEAD OF PROVIDING A WHEELCHAIR; REFUSED LIFE SAVING BACKCRACE.

13. Defendants did all this out of retaliation of Steven Crump's complaints. Did this knowingly with malice

and evil intentions. They knew they were hurting Steven Crump because Steven Crump TOLD THEM IT WAS

and it was clearly VISIBLE that he was suffering, but the Defendants did it anyway and laughed about it,

smirked about it, enjoyed it. The abuse was constant and came from everywhere. Steven Crump could NOT

escape the retaliation, the torture and the intentional injuries being inflicted upon him.

## COUNT IX: ADA VIOLATIONS

1. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability,

be excluded from participation in or be denied the benefits of the services, programs, or activities of a

public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

State prisons are within Title II's definition of "public entities." Pa. Dep't of Corr. v. Yeskey, 524 U.S.

206, 209-10 (1998). (a) Steven Crump cannot stand or walk without assistance, he cannot use his left leg or

foot, he cannot sit-up, he cannot bend at the waist or lift items, he cannot laydown or move without

excoriating pain, he cannot sleep without the aid of medication. Steven Crump is unable to clean himself

without support and has extreme difficulty with normal everyday tasks due to his chronic, permanent

injuries. Steven Crump can STILL not walk without crutches and without severe pain, severe suffering.

2.    Count IX alleges violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act.. In

particular, Plaintiff alleges that the defendants refused to alter their medication and treatment procedures

to accommodate him, forcing him to try to walk to Medical and to be recorded as refusing treatment if he

could not get there. Id. He states that he was also not allowed to be in a handicapped cell, which caused

him to continuously fall while attempting to use the toilet, refused Steven Crump a wheelchair, cane when

he could not walk without severe pain and further injury. Judge Lungstrum's SUMMARY.

3.    **Steven Crump is a qualified person, BY DEFINITON, with a disability. 42 U.S.C. 121 102 (1) (A)  "**

**disability to include physical impairment that substantially limits major life activity". The ADA does**

require that a qualified individual with a disability be afforded equal participation of the services, or activity of a public entity, 42 U.S.C. 12132. Congress deemed this requirement to be necessary because, "discrimination against individuals with disabilities persists in such critical areas as.. public accommodations, education, transportation, communication.. and to public services" Id 12101 (a) (3).

a.    Robertson v Las Animas County Sheriff's Dep. 500 F 3d 1185, 1198 (10th Cir 2007) "A public entity is on notice that **an individual needs an accommodation when it knows that an individual requires one, either because that need is obvious or because the individual requests accommodation."**

b.    **Howard v Groover 2023 U.S. Dist Lexis 223566, The courts made it clearly established that it was cruel and unusual punishment and an 8th amendment constitutional violation to forces an inmate with a back injury to walk 150 feet in order to file a grievance. Due to his disability.**

c.    Clearly Established Law to accommodate disability to access the court. By not providing proper transport and endangering Steven Crump's safety, causing him great bodily harm, paralysis and possible permanent paralysis from injury the Sheriff's Office Defendants violated Title 2 and the Rehabilitation Act.

d.    Boddie v Connecticut, 401 U.S. 371 S Ct. (March 2, 1972) -This duty to accommodate is perfectly consistent with the well-established due process principle that, "within the limits of practice ability, a state must afford to all individuals a meaningful opportunity to be heard". (internal quotation marks and citation omitted) Tennessee v Lane 541 U.S. 509 S Ct. (2004) The Supreme Court narrowed the category of state action to the specific right of access to the courts, rather than the right of access to all state-owned buildings. ( Lane, 541 U.S. at 530-31)    Steven Crump was denied access to court because the Johnson County Defendants refused to accommodate his disabilities.

e.    **Phillips v Tiona, 2011 U.S. Dist Lexis 63826 ADA claim of reprehensive conduct for denying handicap shower.** (To include denial of handicap cell in Crump's case)

**A. SGT COOLEY, SGT WATTERSON AND DEPUTY ANDREWS ADA VIOLATIONS; DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS; CRUEL AND UNUSUAL PUNISHMENT; RETALIATION; HEINOUS ACTS.**

1. White v. City and County of Denver, Dist. Court, D. Colorado 2014, "Plaintiff has alleged that he suffered an actual injury because his handcuffs were too tight. In Cortez, the Tenth Circuit determined that "red marks [on plaintiff's wrists] that were visible for days afterward" were insufficient to support an excessive force claim. 478 F.3d at 1129. In contrast, Plaintiff alleges that the incident caused "stiffness in his bilateral thumbs and numbness in his right hand, in addition to bilateral wrist injuries."

11.) These injuries are more than de minimis. See Vondrak v. City of Las Cruces, 535 F.3d 1198, 1209 (10th Cir. 2008) ("[P]ermanent nerve injury in his wrists" supported plaintiff's excessive force claim).

a. Steven Crump had permanent nerve damage caused in his spine, temporary paralysis and bulging disk in his spine from Defendant Andrew's actions directed by SGT Cooley. EVERY STEP THE DEFENDANT'S FORCED STEVEN CRUMP TO TAKE RIPPED THE LIGAMENTS, MUSCLE AND SOFT TISSUE FROM HIS SPINE. This is A SERIOUS INJURY that left Steven Crump with loss of feeling in his legs for over 10 hours and crippling pain in his back for multiple days.

2.    The Tenth Circuit's decision in Vondrak clearly established Plaintiff's right to be free of excessively tight handcuffing. In Vondrak, the Tenth Circuit held that "at the time of Vondrak's arrest, the right to be free from unduly tight handcuffing was `clearly established'—as were the contours of the right." 535 F.3d at 1209 (collecting cases). Like in Vondrak, Plaintiff's handcuffs were excessively tight, the officers ignored his

complaints, and he suffered an "actual injury." See id. Thus, Garcia is not entitled to qualified immunity on this claim.

3.      "The 10th district has clearly established that a person must clearly be a danger and a threat to justify handcuffing." Manzanares v Higdon, 575 F.3d 1135, 1150 (10th Cir 2009). A JURY could find the defendants were in violation when the forcefully handcuffed, belted around the waste, Steven Crump who was disabled with a sever spinal injury and unable to walk without assistance.

a.      Steven Crump is 100% disabled, not a threat and was being held on a 500$ bond for false charges. Could not even stand up out of a wheelchair without assistance.

b.      On June 3rd, 2024 Deputy Andrews and SGT Cooley were on Notice of Steven Crump's spinal injuries and disabilities, but acted with malice by denying him a wheelchair, forcing him to walk while fully restrained which placed Steven Crump in great danger causing severe injuries, irreparable harm to Steven Crump's spine.

4. The deliberate indifference element may be satisfied where the entity has actual constructive knowledge that its acts or failure to act is "substantially certain to result in a constitutional violation", and the entity "consciously or deliberately chooses to disregard the risk of harm". Schneider v City of Grand Junction Police Dept at *717.

a.      SGT Cooley and Deputy Andrews knew Steven Crump was disabled and by incorrectly transporting him that it would cause constitutional violations resulting in unnecessary infliction of emotional and physical distress, but disregarded that risk which led to severe harm to Steven Crump.

b.    Video Evidence will show that upon being questioned by another Deputy as to WHY  Deputy

Andrews had Steven Crump fully restrained, propelling him down a hallway Deputy Andrews replied, "It's

so I can hold him up in case he falls". Later stating that, "I'm glad I had the belt on him, it's the only thing I

had to keep him from falling."

5. The Supreme Court explained the issue of excessive force in Hudson v McMillian, 503 U.S.C. 112 S Ct.

995, 117 L Ed 2d 156 (1992) and concluded, "Whenever prison officials stand accused of using excessive

physical force in violation of the cruel and unusual punishment clause, the core judicial inquiry is… whether

force was applied in good-faith effort to maintain or restore discipline, or maliciously and sadistically to

cause harm". I.D. #6. One factor the S Ct. relied on to indicate whether the use of force was or evinced an

unjustified infliction of harm was "the extent of injury suffered by and inmate"

a.    "Notice can be established either by a "pattern of tortious conduct" or if a violation of rights is a "high

predictability" or "plainly obvious" consequences of the entities action or inaction. Barney v Pulsipher, 143

F.3d 1299, 1307 (10th Cir 1998)

b.    SGT Cooley, SGT Watterson and Deputy Andrews met the pattern of tortious conduct and standard

for "plainly obvious" because Deputy Andrews and his partner both stated, "We always use restraints"

when challenged by an officer not doing escorts. SGT Cooley and SGT Watterson repeatedly refused Steven

Crump's request to be transferred safely without the handcuffs and waist belt even after he was fully

aware of the damage caused by his repeated decision to cuff and belt Steven Crump.

c.    Calvin Hayden promulgated the policy that all inmates will be transferred in cuffs and waist belt NO

MATTER what disability the inmate suffers from. ADA VIOLATION FAILURE TO ACCOMMODATE

DISABILITIES. Cruel and Unusual punishment that caused extreme suffering to Steven Crump.

6.      Est of Angelo v Bd of Comm'rs (3) To establish a private entities liability the plaintiff must plausibly

allege that its employee or employees violated plaintiff's constitutional right. Mata v Saiz 427 F.3d 745 10th

Cir Ct of App (Oct 21, 2005) "There is little doubt that deliberate indifference to an inmates serious medical

need is a clearly established constitutional right." The Defendants were on NOTICE in the 10th Cir, it has

been clearly established prior to 2018 that when an inmate has obvious and serious medical needs,

ignoring those needs violates the inmates clearly established constitutional rights. Estelle v Gamble 429

U.S. 97 S Ct., 1976. ("deliberate indifference in manifested by prison personnel "in intentionally denying or

delaying access to medical care") See, e.g. Mathis v Centurion Corr. Healthcare of N.M. Dist Ct (Oct 19,

2021) at *52, The court found that "medical provided" by the jail "qualifies as a service that disabled

inmates must receive indiscriminately under the ADA." Id (Citing Penn. Dept of Corr v Yeskey, 524 U.S. 206,

210. 118 S Ct 1952, 141 L Ed 2d 1215 (1998).

7. The 10th cir law is clear that allegations of a delay in medical treatment in light of a known risk of harm

to an inmate are sufficient to allege that a defendant disregarded that substantial risk of harm. See, e.g.

Mata v Saiz 427 F. 3d at 755; Redmond v Crowther, 882 F. 3d 927, 940 (10th cir 2018) " The subjective

prong is met if the prison officials intentionally deny or delay access to medical care or intentionally

interfere with the treatment once prescribed."; Sander v Creek City Bd of Cnty Comm'rs no. 17-cv-00492

JHD-FHM, 2018 U.S. Dist. Lexis 124367, 2018 WL 3580770, at *7 N.D. Okla, 2018,"The defendants alleged

delay or failure in alleviating (the plaintiff's) known deteriorating health conditions states a claim for

deliberate indifference."  a. Mata v Saiz 427 F. 3d at 753, " Courts have found that allegations of a

sufficiently serious medical need may be based on either allegations of the intermediate symptoms or

allegations of an ultimate attendant harm." In Mata the 10th Cir court concluded that the plaintiff's severe

chest pain, as well as her ultimate heart attack, were sufficiently serious to satisfy the objective prong.

(1)Deputy King Quintana v Santa Fe Cnty Bd of Commr's (10th Cir. 2020) " an official disregards risk when he fails to take reasonable measures to abate the risk"… of injury to Steven Crump. ADA VIOLATION OCCURRED WHEN KING TOOK STEVEN CRUMP'S WHEELCHAIR WHEN HE COULD NOT EVEN WALK WITHOUT SEVERE PAIN, SUFFERING AND FURTHER INJURY.

## COUNT X: INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

## COUNT XI: NEGLIGENCE UNDER KANSAS LAW

1. Steven Crump sent a letter to the courts since November of 2023 to inform of notice to file State Claims. He sent notice electronically through the KIOSK to the Johnson County Defendants, wrote a letter to the Board of Johnson County and Calvin Hayden. (2)The constitutional violations continued nonstop and the injuries and emotional distress were constant. As the violations occurred Steven Crump filed grievances, exhausted those grievances then sent notice to the Jo. Co. Court clerk of intentions to file State Claims. Those claims are and notices are available. (3)Steven Crump requests a stay on the State Claims to proceed to DISCOVERY in order to produce the documents. The Documents are available through Jo. Co. Court.

## EXHAUSTION OF GRIEVANCES

1. **There is ABSOLUTELY no doubt as to Steven Crump's exhaustion of grievance. Steven Crump notified the RIGHT PEOPLE AND SENT GRIEVANCES EVERY DAY FOR 18 months.** (a)CASE LAW ESTABLISHING THE RESPONSIBILITY FALLS ON THE DEFENDANTS TO PROVE FAILURE TO EXHAUST; SCRIVEN V VITALCORE Case No. 22-3282-EFM-RES. 26 The exhaustion requirement is an affirmative defense under the PLRA.27 Although Kansas law requires an inmate to file proof that he has exhausted his administrative remedies with a petition alleging state-law claims, the PLRA does not require an inmate to plead exhaustion in his complaint when bringing federal claims.28 The burden of proof for exhaustion of administrative

remedies lies with the defendant.29 The Tenth Circuit has advised district courts that a Rule 12(b)(6)

motion to dismiss for failure to exhaust should only be granted in "'rare cases' in which 'it is clear from the

face of the complaint that the prisoner has not exhausted his administrative remedies.'"30 Defendants

argue that dismissal is appropriate here because Plaintiff has not alleged or attached any grievances to his

Amended  Complaint showing that he completed the grievance procedure at the Sedgwick County Jail. But,

on page 20 of Plaintiff's Amended Complaint, Plaintiff indicates that he previously sought informal or

formal relief from the appropriate administrative officials. Plaintiff then explains that he filed "a complaint

and grievances in the kite system but to no avail." Thus, it's not clear from the Amended Complaint that

Plaintiff did not exhaust his administrative remedies. **Defendants' motion to dismiss on this basis is**

**denied.**

2. Steven Crump grieved being denied a handicap shower, being denied cell cleaning, back brace, cane and

court transport, MEDICAL CARE, DISABILITY ACCOMMODATIONS, EVERYTHING TO EXHAUSTION through

informal and formal outlets, but was denied every time. Johnson County Defendants refused to even

acknowledge the complaints, refused to complete investigations, immediately denied every grievance, but

had full knowledge of constitutional violations happening to Steven Crump. **THE SUPERVISORS, THE RIGHT**

**PEOPLE WERE NOTIFIED OF STEVEN CRUMP'S GRIEVANCE AND WERE FULLY AWARE OF HIS SITUATION**

**AND NEED FOR ASSISTANCE**.

3. This is a FAILED attempt to confuse the courts by the Corrupt Practices of KIRK RIDGWAY who lied and

said, Steven Crump was "given deep muscle massages". He should be fined and suspended for being a liar.

**CONCLUSION**

**Steven Crump was an innocent man who was tortured in solitary confinement to the point of suicidal admiration. Steven Crump welcomed death to stop the intolerable pain and suffering, but it never came. Just endless misery Inflicted upon him day after day after day by the Defendants. No hope, no way out, no way to get help, helpless, alone and tortured**. Steven Crump can never pursue life's joy after torture.

The Defendants know exactly what they are doing and will continue to endanger, hurt, even kill inmates unless this court intervenes and allows a JURY of the people to hold them accountable. These people deserve to be in jail for what they have done to 100's of inmates if not 1000's of inmates. It is completely disgusting and inhumane. There must be punitive damages and change. There must be a corrective action extreme enough to cause the change. A punishment that fits the crime. Steven Crump was tortured for 18 months, disfigured and permanently disabled, left to die, but he managed to escape with his life. That can't be said for the 3 individuals the Defendants killed. One inmate was only doing 7 days in county jail and never left. There must be such punishment that the torture and the killing stops and the only way to do that is through major verdicts against the Defendants. If left as it, is it is not if someone else will die or become permanently disfigured, but when. These people are ruthless and evil.

This case is **PLAINLY OBVIOUS** and the Defendants have caused extreme physical and emotional damage to Steven Crump. **DENY SUMMARY JUDGMENT DENY ALL THE DEFENDANT'S QUALIFIED IMMUNITY, DENY THEM EVERYTHING AND ALLOW THIS CASE TO BE PRESENTED TO THE PUBLIC, THE PEOPLE, IN TRIAL.**

UNITED STATES DISTRICT COOURT

DISTRICT FOR KANSAS

Steven Crump

      Plaintiff,

V                                        Case # 24-03036

Unified Gov of Jo. Co., et al,

      Defendants.

CERIFICATE OF SERVICE

I sent the foregoing document to the Court Clerk on Feb 24, 2025 to be electronically filed and NOTICE be

provided the following:

      Kirk Ridgway.   kridgway@fpsslaw.com

Submitted BY,

Steven Crump

Stevencrumplaw@gmail.com

114 Mission Dr

New Century, KS 66031