UNITED STATES DISTRICT COURT   DISTRICT FOR KANSAS

Steven Crump,

     Plaintiff,

V                                     Case No. 24-03036

Unified Gov. of Jo. Co., et al,

     Defendants.

<u>Response To Doc 114, Summary Judgment By VitalCore Defendants</u>

## 1. <u>INTRODUCTION</u>

  In order for the court to understand the dynamics of this case it must be common knowledge that Steven Crump was violently attacked by the officers of the Olathe Police, falsely charged with a crime and held in isolation under immense emotional and physical suffering. Steven Crump had not, did not or was not going to commit a crime when the officers shot Steven Crump in the spine, (THE SHOTGUN LESS-LETHAL ROUND USED IS A PROJECTILE WITH 3 SOLID SLUGS IN A CANVAS BAG. THE BAG DID NOT OPEN OR SLOW THE PROJECTILE. STEVEN CRUMP WAS SHOT IN THE SPINE 'DIRECTLY' WITH A SHOTGUN SLUG ROUND), tased in the neck, body slammed then fully restrained while stretching his leg out and commanding a k-9 to bite and rip his leg apart 5 times. Steven Crump's injuries **WERE OBVIOUS AND TREATMENT WAS CLEARLY NEEDED BY SPECIALISTS.**

### A. <u>A LAYMAN CAN SEE THE INJURIES WERE SEVERE AND IN NEED OF TREATMENT</u>

Google Search**:  spinal injuries from less lethal shotguns bean bag-**

(a) While spinal injuries from a less-lethal shotgun bean bag are considered rare, they are not impossible,

and **medical literature documents cases where bean bag rounds have caused penetrating injuries to the spine**, **potentially leading to serious neurological damage**, **especially if the impact occurs directly on the spinal**

column at a vulnerable area; however, most bean bag injuries tend to be blunt trauma to the chest, head, and

extremities due to their design intended to incapacitate through impact rather than penetration.

(b) **Potential for serious injury: Although marketed as "less lethal," bean bag rounds can still cause significant harm, including penetrating injuries to the spine, depending on the angle and force of impact.**

(c) <u>**Anatomy matters**</u>:  The risk of spinal injury is higher if the bean bag hits directly on the spine, particularly in the neck region, where even a blunt impact can cause serious damage. (d) <u>**Factors affecting injury severity:**</u> Factors like the distance from the shooter, the type of bean bag round used, and the clothing the target is wearing can influence the severity of the injury. (e) <u>**Medical considerations:**</u> If someone is hit by a bean bag round, especially in the back or neck area, immediate medical attention is crucial to assess for potential spinal injuries. Anyone struck by a less lethal shotgun projectile, even if seemingly minor, should undergo a medical evaluation to assess for potential spinal injuries. (f) A Back Brace was ordered after the MRI in April, 2024 after a year of VitalCore Staff denying Steven Crump even had a spinal injury. Rebecca Wall was present with the paperwork that Steven Crump personally saw. Nicole Balcius, Jennifer Erhlich, Dr. Stanton and Viola Riggins were made aware of the severe injuries and the need for a back brace. Dr Stanton later told Steven Crump that the Supervisor Defendants denied the lifesaving back brace. Stating it was not necessary or allowed with deliberate indifference. VitalCore said they were waiting on approval from the Sheriff's Office, Sheriff's Office has a policy of NO BACK BRACES inside the JCADC, the Sheriff's Office said they were waiting on approval from VitalCore. VitalCore has a Policy of denying OFF-SITE MEDICAL CARE and braces to save profit. In the end they blamed each other and Steven Crump was never provided the brace or care having begged for treatment since July 5th, 2023.

### B<u>. THE VITALCORE DEFENDANTS KNEW OF STEVEN CRUMP'S SEVERE SPINE INJURY.</u>

<u>**https://www.mayoclinic.org/first-aid/first-aid-spinal-injury/basics/art-20056677**</u>
By Mayo Clinic Staff

(a) If you suspect a back or neck (spinal) injury, do not move the affected person. Permanent paralysis and other serious complications can result. Assume a person has a spinal injury if: 1. There's evidence of a head injury with an ongoing change in the person's level of consciousness. 2. The person complains of severe pain in his or her neck or back. 3. An injury has exerted substantial force on the back or head. 4. The person complains of weakness, numbness, or paralysis or lacks control of his or her limbs, bladder or bowels. 5. The neck or body is twisted or positioned oddly. (b) THE VITALCORE DEFENDANTS DID ABSOLUTLEY NOTHING TO PREVENT FURTHER SERIOUS INJURIES TO STEVEN CRUMP'S SPINE EVEN THOUGH THE VITALCORE EMPLOYEES ARE SUPPOSED TO BE TRAINED TO HANDLE INJURIES, INCLUDING EVALUATING POTENTIAL INJURIES. Defendants continuously falsely represented the seriousness of the spinal injury by referring damage to a "paintball, pepperball" impact injury. VitalCore Supervisor's and Nurses TOLD the Sheriff's Office that Steven Crump had NO INJURY, WAS NOT DISABLED and to ignore his complaints. They established a widespread pattern of abuse intentionally meant to harm Steven Crump. (c) From July 5th, 2023 until Jan 21st,2025 Steven Crump was mentally and physically abused by the defendants, both Johnson County and VitalCore Defendants, in an act of horror and terrible confinement in an overt attempt to cover up his severe injuries in order for VitalCore to save profits. In short, Steven Crump was given over the counter medication and thrown in isolation while being denied all accommodations or treatment for his injuries which caused further injury. This was TORTURE and there was no help, no mercy, just suffering. Steven Crump was attacked for grievances and silenced by defendants.

(d) The decision to not allow Steven Crump to be examined by a back/spinal doctor was NOT a difference in opinion as of treatment. To deny Steven Crump adequate pain medication, an extra mattress, wheelchair, cane, handicap shower/cell was NOT a difference in opinion of treatment. The VitalCore staff denied all this because if they granted any of it then they would have to formally admit severe injuries that would then have to be paid to treat properly. **IF VITALCORE DOES NOT WANT TO PAY FOR TREATMENT THE CUSTOM IS TO JUST NOT**

**DIAGNOSE OR ACKNOWLEDGE THE INJURY**. (e) The decision to allow a GENERAL DOCTOR, Dr. Stanton who has 100's of lawsuits for Deliberate Indifference, Practicing Nurses working under him, Nurses and LPN's working for VitalCore to diagnose and treat Steven Crump's back injury IN-HOUSE was Cruel and Deliberately Indifferent to his injuries. NONE of these PEOPLE ARE QUALIFIED TO DIAGNOSE OR TREAT SUCH SEVERE LEVEL OF INJURIES. The Practicing Nurses were encouraged to work beyond their capabilities under Dr. Stanton as trainees. Inmates are not being treated properly under the training and Supervision of Dr. Stanton and VitalCore Supervisors. Inmates are placed on chronic care with "chart reviews" performed by Dr. Stanton and Supervisors. These charts are written by the trainees and are descriptions of Steven Crump's self-diagnosed explanation of his symptoms. There is NOT an exam or diagnosis performed by ANYONE with the qualifications to treat Steven Crump. (f) Vital Core system is ran like this: 1. Put a sick call in. The Nurses take notes of self-explained symptoms and send them to the Doctor. Nothing is done. 2. File a grievance for not being treated. Supervisors respond that Crump will be put in to see the Doctor. 3. Crump goes to see the Doctor who does NO evaluation, but rather reviews the chart and offers no further treatment. 4 File a grievance for no treatment. Staff tells Crump to put in a sick call. 5. This cycle goes ON and ON and NOTHING is ever done. This process takes months while waiting for treatment that never comes. This is a systemic system of denying, delaying care in hopes the injured person leaves JCADC.

### C.  ALL CASES FILED FOR INADEQUATE MEDICAL CARE ON DR. DANNY STANTON. *MANY MORE*

(c) **CASE NO. 19-3103-SAC 07-23-2019 RONALD LEVON BUCHANAN, Plaintiff, v. DANNY K. STANTON, et al., Defendants. (2) Civil Action 2:22-cv-2309-KHV-RES (D. Kan. Feb. 13, 2023) George v. Unified Gov't of Wyandotte Cnty. (3) CASE NO. 10-3134-SAC (D. Kan. Sep. 15, 2010 Grissom v. Rohling. (4) No. 23-3014-JWL (D. Kan. Sep. 20, 2023) Schlobohm v. Ash (**5**)Case No. 14-cv-3066-EFM-DJW (D. Kan. Oct. 13, 2016) Garcia v. Waddington. "** Dr. Stanton is the lead physician over Steven Crump's care. Steven Crump requested multiple times to have Dr. Stanton removed from his case because of the indifference and lack of care, but was denied.

(d) A CT SCAN in Sept of 2023 AFTER LOCKING STEVEN CRUMP IN ISOLATION WITHOUT TREATMENT FOR 60 DAYS shows his spine is straight, but surrounding area severely damaged. Johnson County Defendants REFUSED to assist Steven Crump with his severe injury, VitalCore refused off-site care, spine specialist and accommodations to spinal injury. THIS CAUSED DEVESTATING INJURY TO HIS SPINE. *Steven Crump's spinal area was swollen from impact damage which placed immense pressure on the spine causing extreme pain.

(e) **An MRI after a year of physical torture and non-treatment, deliberate indifference to severe spinal damage, forced to walk without support to the spine caused extreme injury and pain. This caused the spine to become extremely disfigured and permanently damaged. *VitalCore Defendant's, Dr. Stanton, Nichole Balcius , Rebecca Wall, after a year stated, "Oh, you were** JUST BORN WITH SCOLIOSIS." The spine is disfigured and collapsed on the nerves in the spine causing extreme pain in the spine, back, hip, leg and neck. 100% pain 24 hours a day, all the time. Nurses told Steven Crump that "people live healthy normal lives with scolios."

(f) **Dr Stanton** met with Steven Crump to review his spinal injury after the CT scan in Sept. of 2023. Dr. Stanton explained that there was extensive damage to the area around the spine, but the bone was not cracked or fractured and the spine was at that time still straight. Dr. Stanton went on to explain the miniscule muscles and ligaments that are attached to the spine. HE detailed that along with the soft tissue, those muscles and ligaments were heavily damaged even adequately naming the type of muscles injured and locations. These ligaments and tendons are the anchors connected to the larger muscle groups that connect to the spine. The larger muscle groups utilize these anchors attached to the spine as support to contract and create body movement. The ligaments and muscles also hold the spine straight and together. With these ligaments and muscles severely damaged and still connected to the larger muscles every time Steven Crump was forced to use his body the larger muscle groups would just rip, stretch and tear the smaller damaged ligaments and tendons to the point where it disfigured his spine, twisted his spine into scoliosis in a very painful manner. This is **NOT JUST MALPRACTICE. THIS IS A BUSINESS MODEL, THIS IS POLICY, THIS IS OUTRAGEOUS CONDUCT OF TORTURE.**

(g) Dr. Stanton acknowledged the damage, but said he was limited by what he could do (due to VItalCore and Johnson County Policy). Dr Stanton said that they, He, would monitor the situation. Dr. Stanton applied the "Wait and See" policy. Dr. Stanton, Rebecca Wall, Nicole Balcius, Jennifer Ehlrich, Viola Riggins knew the extent of Steven Crump's injuries, but after collectively meeting VitalCore and Johnson County Supervisors decided that nothing would be done. They hid Steven Crump's injuries to intentionally deny him treatment.

(h) **Dr. Stanton** later stated that he was limited by what he could do as a physician working for VitalCore inside the JCADC stating, "Well, whatever BlueCross and Medicaid would cover", meaning that VitalCore does not, will not pay out of pocket for medical treatment off-site when trying to order Steven Crump an MRI after over a year of "Wait And SEE'. This is why Steven Crump was denied a spine specialist and was provided TELEHEALTH Physical Therapy that actually caused more EXTREME INJURIES. This shows the Policy of NOT Providing Off-Site Treatment and denying critical treatment based on financial costs and company profit. This is the extreme deliberate indifference to inadequate care that VitalCore has been found liable for in Scriven v VitalCore.

(i) **Lora Neely** discontinued Steven Crump's wheelchair without examination, without doctor orders on 7/20/2023. On 7/15/23 Steven Crump was labeled in medical as MUSCULOSKELETAL POTENTIAL SPRAIN-FRACTURE-DISLOCATION NURSING CINICAL GIUDE-915. **The VitalCore Defendants were on notice of severe injury, but demonstrated Complete Deliberate Indifference. The VitalCore Defendants refused to acknowledge the injury by escalating mandatory diagnosis and treatment to a spine doctor who was capable of treating the injury. VitalCore did not accommodate this severe injury or escalating care.** Denied every GRIEVANCE.

(j)  VitalCore Defendants acquiesced to this custom while promulgating an inadequate treatment plan that enabled VitalCore policy to endanger Steven Crump then ultimately cause sever suffering and injury. This was demonstrated over and over while the employees failed to intervene, failed to escalate Steven Crump's known medical crisis. Steven Crump was medically abandoned in a SYSTEMIC indifference treatment plan called

"Chronic Care" that was initiated by Supervisor Defendants for VItalCore. In Scriven v VitalCore the VitalCore Company and Staff are found guilty of deliberate indifference to inadequate medical care, well-established.

(k) Steven Crump is now permanently disabled and this could and should have been prevented. Every attempt to plead for help with VitalCore, every grievance, was instantly dismissed and no intervention was done. Management adopted Vital Core's "wait and see" policy and simply did nothing. Steven Crump's spinal injury was NEVER assessed properly. VitalCore's Nurses stated that, "Crump has mild abrasion on his back, but nothing serious". The Defendants claim to have treated Steven Crump by speaking to him, making him attempt to self diagnose/explain his own injuries and then sending him back to his cell. NO TREATMENT, ACTUAL TREATMENT, WAS EVER PROVIDED. (l) The VitalCore Medical Staff know or should have KNOWN the obvious risks to being shot in the spine with a shotgun less-lethal. They ARE TRAINED, or supposed to be trained in the weapons and injuries caused by the weapons deployed against the public, used on Steven Crump. There should have been an immediate intervention from the Superiors of VitalCore. This is a complete lack of training by VitalCore, the Supervisors, and complete deliberate indifference to inadequate care to Steven Crump's injuries by the ENTIRE staff body that resulted in cruel and unusual punishment. NOT A ONE PERSON TOOK HIS INJURIES SERIOUS.

## D. **ABUSE CONTINUES THROUGH CONTRACTUAL DELEGATIONS OF DUTY**

(a) https://johnsoncountypost.com/2024/02/16/sheriff-mental-health-226389/

### **Sheriff nixes JoCo mental health center's contract with jail in favor of private vendor (Feb. 6th 2024)**

i.   In a decision that one commissioner called "soul crushing" the Johnson County Commission Thursday accepted Sheriff Calvin Hayden's recommendation that mental health care for jail inmates be provided by a private Topeka-based health care business rather than the county's own mental health center.

ii.  **Commissioners voted 5-2 in favor of the change,  Topeka company (VITALCORE) will now oversee mental health care at detention facilities.**

iii.  <u>The sheriff asked the commission to approve an exception to competition to add mental health</u>, bringing

the medical, **mental health and prescription services contract to $27.8 million, while terminating the**

**county mental health center's agreement.** The Sheriff gave VitalCore a NO COMPETE CONTRACT after

VitalCore killed 3 people inside the JCADC. This is absolute corruption with possible illegal kickbacks.

(b) Steven Crump was in such severe pain that the Olathe Mental Health had to intervene and prescribe

him 100 mg of trazadone for the pain. Olathe Mental Health knew of the Johnson County Defendant's

deliberate indifference to adequate health care being provided inside the JCADC and began intervening while

reporting the blatant constitutional violations. The Johnson County Defendant's immediately CANCELLED the

contract with the Olathe Mental Health and CONTRACTED with VitalCore to provide mental health services.

Immediately upon control the VitalCore mental health modified and cancelled Steven Crump's medication he was

already taking in a VitalCore custom of saving profit at the expense of inmate's health and safety. VitalCore

commits atrocities against inmates, tortures inmates and the only outlet to complain or to have lifesaving

interventions was removed. Now, VitalCore has full control, full autonomy to torture and kill inmates and THERE

IS NO ONE TO HELP. The new VitalCore mental health just covers up the effects that inmates are having and the

mental health crisis being caused from the torture of Jo. Co. and VitalCore policy. This is horrendous and many,

many inmates are TRULY SUFFERING irreversible injuries. The inmates are completely silenced, abandoned

without recourse or redress of constitutional violations, retaliated against and abused for speaking out.

(c)  This COURT must not allow these evil acts nor allow these people to unpunished. THEY ARE KILLING PEOPLE.

This is NOT MALPRACTICE. THIS IS NOT A SIMPLE OVERSIGHT. THIS IS CRUEL AND UNUSUAL PUNISHMENT,

DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL CONDITONS AND INJURIES CAUSED. THIS IS A BUSINESS

MODEL, THIS IS PREPLANNED. This is all premeditated evil, conspired malice, intentional dereliction of duty,

willfully and wonton, purposeful endangerment of inmate **FOR PROFIT. Steven Crump requests a referral for**

criminal charges and a full investigation/audit by the FEDERAL AUTHORITIES of JCADC and VitalCore. **This corrupt company is making huge profits off the suffering of people**. "New Contract in Massachusetts (2023): In May 2023, the Massachusetts Department of Correction selected VitalCore Health Strategies in a five-year**, $770 million** agreement to provide comprehensive medical and behavioral health services across multiple correctional facilities." Plus the **27.8 million per year** for Johnson County and over 100 contracts nationwide, $100'of millions.

(d)  Vital Core's procedure is that if it is not in writing it NEVER HAPPENED. These entities control the information and the saved data. In an overt attempt to restrict Steven Crump's ability to produce evidence to this court the Sheriff's Office and VitalCore intentionally violated HIPPA regulations by denying him his medical records which hinders his ability to seek relief in this case and further treatment to his injuries. (e) Steven Crump is setting the record straight. These people are liars, corrupt and do not have the best interest of the inmate's safety or adequate health care. The system is set for plausible deniability and FOR PROFIT. Vital Core's corrupt lawyer has demanded Steven Crump produce documents and evidence that VitalCore is in possession of, at the same time refusing to give Steven Crump the medical files to produce to the court. The physical evidence should be enough.

## E. REPORTS on VitalCore Health Strategies Established WIDESPREAD PATTERN OF ABUSE

(a) https://cochs.org/tag/vitalcore-health-strategies/page/3/

Correctional Health Care Vendors: "**while VitalCore faced a lawsuit by a disability rights group stemming from its role as the health care provider in several Mississippi prisons in 2021**" Case 3:21-cv-00516-CWR-LGI

(b) https://www.aclu-de.org/en/cases/prison-healthcare: On October 11, 2023 the ACLU of Delaware and Whiteford, Taylor & Preston, LLC filed a class action lawsuit in the United States District Court of Delaware on behalf of incarcerated people who have been denied their basic right to health care and humane conditions of confinement....and VitalCore Health Strategies. (c) Medically Abandoned "Chronic Care" lawsuits. **1.** Scriven v VitalCore Health Strategies (denied prescribed medical treatment); **2.** Rouse v VitalCore Health Strategies, LLC.

(prolonged treatment "wait and see"); **3.** Viilo v Kent City, Michigan Dist. Ct, 2023 (denied off-site care resulted in

death); **4.** Cain v Mann, 2024 U.S. Dist Lexis 38336. (placed incorrectly in physical treatment that caused

permanent injury, staff practicing beyond their license/capabilities) **5.** Crump v VitalCore. Went through it all.

2. **Standard Analysis For Plaintiff's Response.**

(a) **Reavis v Frost 967 F.3d 978** (10th Cir Ct of Appeals), "never the less our analysis is not a scavenger hunt for prior

cases with precisely the same facts, and our prior cases need not be exactly parallel to the conduct her for the

officials to have been on notice of a clearly established law."(b) **Morris v Noe 672 F 3.d 1185, 1196 (10th Cir 2012)**

"the more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is

required from prior case law to establish a clear violation." (c) **Ziglar v Abbasi 582 U.S. 120 S. Ct. (June 19, 2017)**,

"the supreme court has clearly stated that the court is NOT REQUIRED to find that 'the very action in question has

previously been held unlawful." (d) **Scriven v VitalCore Health Strategies Case No. 22-3282-EFM-RES** is the

CONTROLLING 10th Cir. Case reference. VitalCore was found guilty of Steven Crump's claims in Scriven as he

received the same abuse. This case established guilt of deliberate indifference to inadequate medical care.

3. **Legal Standard**

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a claim where the plaintiff has failed to state a

claim upon which relief can be granted.2 Upon such a motion, the court must decide "whether the complaint

contains 'enough facts to state a claim to relief that is plausible on its face.' **"3 A claim is facially plausible if the**

**plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged**

**misconduct**. 4 The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with

fair notice of the nature  of the claims and the grounds on which each claim rests. 5 **Under Rule 12(b)(6), the**

**court must accept all factual allegations in the complaint as true and construe them in a light most favorable to**

**the plaintiff.** 6 But the court need not afford such a presumption to legal conclusions. 7 Viewing the complaint in

this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative

possibilities. 8 If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then a plaintiff has 'not nudged their claims across the line from conceivable to plausible.' "9

Fed. R. Civ. P. 12(b)(6). 3Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers."10 A pro se litigant is entitled to a liberal construction of his pleadings. **11 If a court can reasonably read a pro se complaint in such a way that it could state a claim on which it could prevail, it should do so despite "failure to cite proper legal authority . . . confusion of various legal theories . . . or [Plaintiff's] unfamiliarity with the pleading requirements."**

### 4. RESPONSE

DEFENDANT VITALCORE HEALTH STRATEGIES, LLC, DANNY STANTON, VIOLA RIGGIN, JENNIFER EHLRICH, TIFFANY MCROBERTS, CARYN KUNZ, KATHLEEN CALLOWAY, REBECCA WALL, NICOLE BALCIUS, UNNAMED DEFENDANTS, and LORA NEELY FILED FOR SUMMARY JUDGMENT. **Steven Crump requests this DENIED for ALL VitalCore Defendants for the inadequate care and intentional abuse, torture, that has left Steven Crump disabled.**

(a) Est of Angelo v Bd of Cnty Comm'rs (2024) U.S. Dist Lexis 90391 (Colo Dist.) is an analogous case with claims settled. At *58, "The court agrees that the plaintiff pleaded that the decision to contract with Wellpath (3rd party Medical Contractor) is a policy". Vital Core and Wellpath are competitors in the field of medical care provided to government facilities. The POLICY that enabled Vital Core to take full policy control of medical and mental health care enabled unnecessary suffering, injury and irreparable harm to be caused upon Steven Crump. The law was clearly established that by contracting with Vital Core, Calvin Hayden (Sheriff's Office) (Jo. Co. Board of Commr's) created a POLICY which causes liability to VitalCore. (b) Henard v Shradder, 2022 U.S. Dist 248300 (2)(A) "Plaintiff's serious needs of chronic care has been denied by Wellpath and VitalCore company since 6-17-21 as a wide spread practice". THIS SHOWS VitalCore corruption ongoing since at least 2021, yet still granted contracts.

### 5. <u>COUNT I: DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS</u>

(a) **Scriven v VitalCore Case 5:22-cv-03282-EFM-RES outlines the GUILT of VitalCore. This case has already been ruled upon which makes VitalCore liable for all of Steven Crump's claims as they are the same and the treatment and abuse found in Scriven was equal yet amplified to the torture of Steven Crump. Scriven v VitalCore at\* 64 " But, given Plaintiff's allegations concerning his health and medication history, the denial of Tramadol in favor of an over-the-counter pain medication is not a "mere disagreement" with a specific course of treatment. Plaintiff alleges that he suffers from serious and extremely painful medical conditions that are so intense that an orthopedic specialist doubled his Tramadol prescription**. (b) At \* 32 As discussed below, under the Due Process Clause of the Fourteenth Amendment, pretrial detainees are afforded the protections of the Eighth Amendment. Frohmader v. Wayne, 958 F.2d 1024, 1028 (10th Cir. 1992)(citation omitted). Thus, Plaintiff correctly asserts a claim for deliberate indifference under the Fourteenth Amendment. (2) At\* 51 "A medical condition is 'sufficiently serious' if 'the condition has been diagnosed by a physician as mandating treatment or is <u>so obvious that even a lay person would easily recognize the necessity for a doctor's attention</u>.' Prince v. Sheriff of Carter Cnty., 28 F.4th 1033, 1044 (10th Cir. 2022). As seen from the pictures and as noted by Lora Neely and Dr. Stanton, Steven Crump suffered severe injuries. The VitalCore Defendants were aware of the injuries, but denied treatment and failed to intervene on medical needs easily recognized by a lay person. Medical staff made Steven Crump SELF DIAGNOSE HIMSELF while falsifying reports, misreporting complaints and denying injuries and refusing to provide adequate pain medication for severe spinal injury, nerve damage and chronic pain.

(c) Mata v Saiz 427 F.3d 745 10th Cir Ct of App (Oct 21, 2005) "There is little doubt that deliberate indifference to an inmates serious medical need is a clearly established constitutional right." Steven Crump was in NEED of serious medical treatment, yet was medically abandoned under a false pretense of "Chronic Care" Dec of 2023.

(d) Burke v. Regalado, No. 18-5042 (10th Cir. 2019) Reprehensible Conduct where inmate injured his neck, causing lower back paralysis. No one treated his injuries. \***Steven Crump had a spinal injury and became**

**bedridden with limited functions and was NEVER TREATED FOR HIS INJURIES which caused him paralysis multiple times and disabling, permanent injury.** (e) Western District of Virginia Raymond Tate v D.J. Harmon No. 7:19-cv-00609-NKM-JCH When federal prison officials are deliberately indifferent to an inmate's health and safety in violation of the Eighth Amendment, the Supreme Court has held that a Bivens remedy is available to hold them accountable. See Carlson v. Green, 446 U.S. 14 (1980) (recognizing a Bivens deliberate indifference claim based on inadequate medical care); Farmer v. Brennan, 511 U.S. 825 (1994) (allowing a Bivens deliberate indifference claim based on prison officials' failure to protect an inmate from violence to proceed past summary judgment. The Supreme Court has declared that a deliberate indifference claim premised on inadequate medical treatment and a claim premised on conditions of confinement are not meaningfully distinct, thus that claim should have been allowed to proceed) .  See Wilson v. Seiter, 501 U.S. 294, 303 (1991) (there is "no significant distinction between claims alleging inadequate medical care and those alleging inadequate 'conditions of confinement'"). (f) The deliberate indifference element may be satisfied where the entity has actual constructive knowledge that its acts or failure to act is "substantially certain to result in a constitutional violation", and the entity "consciously or deliberately chooses to disregard the risk of harm". Schneider v City of Grand Junction Police Dept at *717. <u>VitalCore Defendants developed a PLAN to cover up and not treat Steven Crump's injuries.</u>

### 6. <u>COUNT II: CRUEL AND UNUSUAL PUNISHMENT</u>

(a) A prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. **Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).** The test for constitutional liability of prison officials "involves both an objective and a subjective component**." Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000).** The Eighth Amendment prohibits "cruel and unusual punishment." "[T]he treatment a prisoner receives in prison and the conditions

under which he is confined are subject to scrutiny under the Eighth Amendment." **Helling v. McKinney, 509 U.S. 25, 31 (1993).** Under the Due Process Clause of the Fourteenth Amendment, pretrial detainees "are entitled to the same degree of protection regarding medical attention as that afforded convicted inmates under the Eighth Amendment." **Frohmader, 958 F.2d at 1028 (citation omitted).** (b) **Gregg v George, 428 U.S. at 183 (1976) Under the new interpretation of the 8th Amen. "prohibits punishments, which, although not physically barbarous, involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime. The court defined unnecessary and wanton infliction of pain as "those that are 'totally without penological justification'".**

### A. <u>VITALCORE DEFENDANTS WERE ON NOTICE OF CLEARLY ESTABLISHED LAW</u>

(a) **The 10th Cir law is clear that allegations of a delay in medical treatment in light of a known risk of harm to an inmate are sufficient to allege that a defendant disregarded that substantial risk of harm**. See, e.g. Mata v Saiz 427 F. 3d at 755; Redmond v Crowther, 882 F. 3d 927, 940 (10th cir 2018**) " The subjective prong is met if the prison officials intentionally deny or delay access to medical care or intentionally interfere with the treatment once prescribed.";** Sander v Creek City Bd of Cnty Comm'rs no. 17-cv-00492 JHD-FHM, 2018 U.S. Dist. Lexis 124367, 2018 WL 3580770, at *7 N.D. Okla, 2018,"The defendants alleged delay or failure in alleviating (the plaintiff's) known deteriorating health conditions states a claim for deliberate indifference." **Sealock v Colorado (10th Cir 2000) court made it CLEAR that deliberate indifference may arise from failure to treat properly, which implies some degree of treatment at a minimum**. (b) Caryn Kunz, Dr. Stanton, Tiffany Roberts, Kathleen Calloway, Rebecca Wall, Nicole Balcius DENIED Steven Crump all forms of actual preventative and proactive treatment while intentionally downplaying his injuries through misreporting. Defendants intentionally provided inadequate care in order to CLAIM treatment was being provided with the knowledge that the "treatment" was not adequate for the severity of injuries. VitalCore Defendants denied Steven Crump through evil, retaliatory motivations and policy: a wheelchair, cane, back brace, accommodations to shower, a handicap cell, transport to

court without injury, forced him to walk to file grievances, speak with medical staff and to get inadequate medications. (c) VitalCore Supervisor's, through Kathleen Calloway's personal action, took Steven Crump's wheelchair when it was PLAINLY OBVIOUS that he needed it and that without it he would suffer and become injured. (d) VitalCore staff, at the recommendations from Supervisors, refused to RESPOND TO medical emergencies while responding over the phone to Steven Crump's medical emergency by saying, "We just saw Crump, he is fine" when Steven Crump had a heart attack, passed out in his cell (e) Steven Crump was fully restrained in a cell for 4 hours in excoriating pain until he became paralyzed. VitalCore staff denied him access to medical and a wheelchair for transport, restricted Steven Crump's treatment of transport in a wheelchair and refused to come to his aid. Unknown Staff stating, "He is too far to away to respond to his medical emergency". VitalCore Supervisors retaliated against Steven Crump and refused to assist him. (f) The Law was clearly established in 2022 that forcing Steven Crump to WALK severely injured in excruciating is a 14th amendment cruel and unusual punishment violation. **Howard v Groover 2023 U.S. Dist Lexis 223566**, clearly established that it was cruel and unusual punishment and an 8th amendment constitutional violation to force an inmate with a back injury to walk 150 feet in order to file a grievance. Steven Crump was forced to walk every day for 18 months with a separated spine and over 200 yards a day for 5 months for medical, food and grievances/requests without assistance from a cane. (g) **Scriven v Corby, 2021 U.S. Dist Lexis 103 164 KS Dist Ct (June 2, 2021)** at *31 the court found that any REASONABLE officer in the Defendant's position would have understood that he or she was displaying deliberate indifference to serious medical need by not permitting Plaintiff to receive care (AND WHEELCHAIR TRANSPORT) where Plaintiff was unable to stand or walk and was screaming in pain. At *30 (injured) pre-existing medical conditions, was injured through violence (injured his back and was denied medical care by State Officials) At* 23 the court found that plaintiff alleged facts sufficient to deny qualified immunity. VITALCORE Defendants were on notice that denying an injured inmate a wheelchair transport and proper medical care is clearly established cruel punishment. Defendants had the mental capacity and knowledge.

(h) **Rogacki v Jefferson Cnty No. 21-cv-02281-cns-klm. 2022 U.S. Dist. Lexis 197757, 2022 WL 16551336 at \*8 ( D Colo 2022)** Finding that allegations of Wellpath incentivizing reductions in the use of "off-site medical services' established a policy and that policy is unconstitutional. **VitalCore Defendants implemented this policy and was on notice that this practice clearly violated constitutional right. VITALCORE REFUSED STEVEN CRUMP OFF-SITE CARE and has a well-established custom of denying off-site care TO SAVE PROFIT. Staff claim that "they were capable of handling Steven Crump's injuries IN-HOUSE.** (i). Mata v Saiz 427 F. 3d at 753, "Courts have found that allegations of a sufficiently serious medical need may be based on either allegation of the intermediate symptoms or allegations of an ultimate attendant harm." In Mata the 10th Cir court concluded that the plaintiff's severe chest pain, as well as her ultimate heart attack, were sufficiently serious to satisfy the objective prong. Defendants were on clear notice that not responding or attending to medical emergency requests is Deliberate Indifference. (j) Barnes v. Gorman, 536 U.S. 181 (2002) The factual situation from which the Barnes case arose is illustrative of the kinds of cases that seem to cry out for punitive damage relief. Inmate transferred in a van… it was not equipped to transport a wheelchair. The plaintiff subsequently suffered serious medical problems -- including a bladder infection, serious lower back pain, and uncontrollable spasms in his paralyzed areas -- that left him unable to work. The callous disregard of the man's hygienic and safety needs provided an obvious circumstance for considering punitive damages, and the jury awarded the plaintiff $1.2 million in punitive damages. VitalCore refused to come to Steven Crump's aid which caused him severe injury on 3/20 and 6/30/24.

(k) Defendants were on notice that restraining disabled/injured persons and refusing to transport him correctly is reprehensive conduct which is likely to result in severe injury. Steven Crump was restrained and paralyzed multiple times. VITALCORE STAFF REFUSED TO PROVIDE MEDICAL DOCUMENTS THAT WOULD FORCE THE SHERIFF'S OFFICE TO ACCOMMODATE HIS TRANSPORTS with a wheelchair and without USING WASTE BELT RESTARINTS with HANDCUFFS. The VitalCore Staff even intentionally removed his permission for a wheelchair out of retaliation without Doctor's knowledge while denying Steven Crump's injuries from the waste restraint. (l)

The 10th Circuit has previously held that, in some instances, failing to abide by medical orders with respect to handcuffing (belt restraint) can result in constitutional violation of the right to be free from deliberate indifference to serious medical needs. BOTH Martin v BD of County Comm'rs of Pueblo,909 F. 2d 402 (10th Cir 1990) and Howard v Dickerson, 34 F. 3d 978, 980-81 (10th Cir 2002). In Jackson v Austin, 241 F Supp 2d 1313 KS Dist Ct (Jan 17, 2003) An injured inmate was handcuffed and dragged. Qualified immunity was DENIED.  (m) Vondrak v. City of Las Cruces, 535 F.3d 1198, 1209 (10th Cir. 2008) The Tenth Circuit's decision in Vondrak clearly established Plaintiff's right to be free of excessively tight handcuffing. In Vondrak, the Tenth Circuit held that "at the time of Vondrak's arrest, the right to be free from unduly tight handcuffing was `clearly established' —as were the contours of the right." 535 F.3d at 1209 (collecting cases). Like in Vondrak, Plaintiff's handcuffs were excessively tight, the officers ignored his complaints, and he suffered an "actual injury." See id. Thus, Garcia is not entitled to qualified immunity on this claim **(n)** Hutto v Finney, 437 U.S. 678, 686-87 (1978) "A filthy, overcrowded cell and a diet of 'gruel' might be tolerable for a few days and intolerably cruel for weeks and month" Steven Crump spent 5 months in a nasty, filthy cell where he caught periodontal disease and his leg wound became septic and began to rot his flesh. When Steven Crump complained VitalCore Staff locked him in THAT FILTHY CELL for 24 hours a day which caused his wounds to become even more infected as punishment.

## B. <u>FAILING TO RESPOND TO MEDICAL EMERGENCIES</u>

(a) **In Campbell v Monday, 2024 U.S. Dist Lexis 73812, Oklahoma Ct (2024)**  "Campbell has alleged that OCCJA maintained and/or customs and/or practices of (1) Failing to adequately train their employees to respond to inmates' medical requests via wall speaker phone". (3) "not allowing pill call nurses to step into an inmates cell to give him medication." In Campbell v Monday the court found deliberate indifference and DID establish a municipal liability against OCCJA. VitalCore Defendants were on NOTICE that failure to respond to inmates' medical requests via speaker phone is DELIBERATE INDIFFERENCE. (b) Vital Core staff refused to come to Steven Crump's aid upon requesting a medical emergency over the speaker intercom on March 20th, 2024 when

suffering chest pains and heart attack symptom leaving Steven Crump in his cell in extreme suffering for 5 hours.

(c) On June 3rd 2024 Vital Core staff along with the Deputy who answered the speaker phone refused to come to Steven Crump's aid when he requested a medical emergency after Deputy Andrews forcefully restrained Steven Crump with handcuffs and a belt restraint only to leave him in a cell ALL ALONE in cell J3 for 5 hours he became paralyzed. Before July 2024 the Defendants were on notice that this action was cruel and unusual punishment, Deliberate Indifference to a serious medical need. In the Johnson County Defendants Summary Judgment at *84 Defendant, Sgt Cooley, states that "use of a wheelchair was a courtesy there were NO ORDERS from medical requiring a wheelchair." The VitaCore Defendants had full discretionary authority to deny or provide Steven Crump a wheelchair, yet actively denied that service based on retaliatory decisions that injured Steven Crump.

(d). **VitalCore was previously on NOTICE that training and Supervision along with adopting new policy for procedures was necessary to ensure the safety and health of inmates including proper transport and medical response to emergency medical requests. * Multiple People HAVE DIED because the Defendants refused to come to medical emergency requests, improperly handled emergency medical requests via wall speaker before March 1st, 2024.**

## C. <u>VITALCORE DEFENDANT'S ROLE AS GATEKEEPER</u>

(a)" As a gatekeeper for the medical personnel capable of treating the condition may be held under deliberate indifference standard if she delays or refuses to fulfill that gate keep role" Est of Jensen v Clyde, 989 F. 3d 848, 860 (10th Cir). (b) A gate keeper fails in the duty if they "deny access to someone capable of evaluating the inmates need for treatment." See, Mata v Saiz 427 F.3d 745. "Even a brief delay in treatment can be unconstitutional". Lucas v Turnkey Health Clinics, LLC. (c) VitalCore Defendants meets the legal frame work for a claim of deliberate indifference. <u>(1)</u> The objective component is satisfied if the deprivation is sufficiently serious. Farmer v Brennon, 511 U.S. 825, 834. 114 S Ct. 1970, 128 L Ed 2d 811 (1994). <u>(2)</u> The subjective component is established when an official "knows and disregards an excessive risk to an inmate's health and safety". Farmer v

Brennon 511 U.S. at 837. *Steven Crump was shot in the spine and left crippled and was deprived of any adequate treatment for 18 months, never received any treatment for the spinal injury which resulted in extreme disfigurement and permanent damage requiring surgery. The deprivation to a known injury was EXTREME.

(d). VitalCore has satisfied the subjective component under two theories: Failure to properly treat theory and the gatekeeper theory. **Sealock c Colorado 218 F. 3d 1205** established (placed VitalCore Defendants on NOTICE) that deliberate indifference may rise from a failure to treat properly, which implies the presence of some degree of care. Defendants knew that Steven Crump's injuries were severe and needed MORE than minimum standard of care, but disregarded it. JUST LOOK AT THE INJURY PICTURES. (e) Steven Crump was incorrectly labeled as treated when only provided muscle rub (for nerve pain) and over-the-counter medications for a severe spinal injury while being "observed" by the unqualified LPN and Nurses working for Vital Core. This "wait and see" approach happened for 18 months and resulted in no actual treatment of his spinal injury.

(f) Dr. Stanton, Rebecca Wall, Nicole Balcius denied Steven Crump a back brace, denied him treatment under VitalCore's unconstitutional practices. **See. Scriven v Vital Core at*32 "VitalCore implemented a number of policies, including that 'VitalCore had a policy of deliberate indifference for care and treatment in defiance of doctors' orders", "VitalCore had a policy of deliberate indifference and acquiesced to the inadequate medical treatment of plaintiff"," VitalCore had a policy of failing to train to make sure employees do not respond to obvious risks".** (g) The "deliberate indifference" element may be satisfied where the entity has actual knowledge that its acts or failure to act is "substantially certain to result in constitutional violation, and the entity, 'and the entity', consciously or deliberately chooses to disregard the risk of harm." Schneider v City of Grand Junction Police Dep't at * 717.  Notice can be established either by a "pattern of tortious conduct" or if a violation of rights is a "high predictability" or "plainly obvious" consequences of the entities action or inaction. Barney v Pulsipher 143 F. 3d 1299, 1307 (10th Cir 1998).

D. **These cases established a continuance of widespread violations:**

Scriven v VitalCore (2023); Crump v VitalCore (2024); Walker v VitalCore (2023); Sanders v VitalCore ( 2024); Cheryl Henderson v VitalCore (2023); Gilmore v Vitalcore (2024);  Rouse v VItalCore Health Strategies, LLC; Viilo v Kent City, Michigan Dist. Ct, 2023; Cain v Mann, 2024 U.S. Dist. Lexis 38336; Defendant v Mississippi Dept of Corr. Case 3:21-cv-00516-CWR-LG); Delaware Prison Healthcare Lawsuit (2023); ACLU Lawsuit in Delaware (2023); WRONGFUL DEATH SUITS Henderson v VitalCore (2023); Williams v VitalCore (2025) Archuleta v VitalCore (2023); Bobinger v VitalCore (2024)-SETTLED UNKOWN AMOUNT. 3 dead inmates in JCADC under VitalCore Care*__Nathaniel Davis Jr. 2023__ *__Timothy Best, 2024__ *__Wanda D. Kendrick, 2023__, DIED FROM DELIBERATE INDIFFERENCE TO INADEQUATE MEDICAL TREATMENT INSIDE THE JCADC.

(h) VitalCore implements a policy of "minimum standard of care" which intentionally denied inmates from seeking off-site treatment, providing "care" from non-specialist employees working beyond their medical capabilities doing in-house treatment and diagnosis, understaffing medical professionals in order to save profit, one **Generalized Doctor for every 500 to 800 inmates**, employing NO SPECIALISTS in Orthopedic Spine Treatment, denying braces, wheelchairs, extra mattresses inside the JCADC, **is a guaranteed risk to lack of adequate care which is more than likely to result in injury from constitutional violations.**

(i) VitalCore was contracted with full knowledge of the inadequate care that inmates would receive under its authority. Even after multiple inmates died in JCADC in 2023 and 2024 VitalCore made NO adjustments in treatment or care. In multiple cases it is well established that VitalCore has a wide spread practice of Deliberate Indifference to inadequate care and VitalCore chose to continue this inadequate care  which resulted in cruel and unusual punishment, devastating pain, unnecessary suffering and critical injuries to Steven Crump while acting with a culpable state of mind as they implemented the dangerous and harmful policies, practices and customs. The VitalCore Defendant's KNOW exactly how to mistreat inmates in order to save profit, but claim proper care.

(j) VitalCore has a policy of taking inmates wheelchairs away within days in order to prevent "muscle atrophy" which would cause further injuries and a highly predictable risk to inmates who were disabled or injured. Custom of taking inmate's wheelchairs was implemented and explained to Steven Crump BY Nichole Balcius. A terrible human being who openly denied Steven Crump ever had a back injury, tried to convince Steven Crump that he was never injured and talked him into taking extremely harmful medication, Cymbalta, knowing that it would cause extreme harm to him. (k) **The court has previously held that an informal custom amounting to wide spread practice of incentivizing reduction in the use of necessary off-site medical services is a sufficiently articulated policy. Rogacki v Jefferson City, 2022 U.S. Dist Lexis 197757, 2022 WL 16551336 at \*8. Additionally, in Est of Angelo v Bd of Cnty Comm'rs the plaintiff alleged the existence of an informal custom amounting to wide spread practice that nurses followed a "wait and see" approach, failed to escalate care, and practiced beyond their ability.** (l). To establish existence of a policy, plaintiff need only plead "a pattern of multiple similar instances of misconduct", with no set number required to render the alleged policy plausible. Griego v City of Albequerque, 100 F Supp 3d 1192, 1213 (D. N.M.)  (g). "The outcome of the lawsuit is not relevant" to establish a policy, because the pleading standard requires courts to accept well pleaded factual allegations as true. Est of Valverde v Dodge No. 16-cv-1703-msk-meh, 2017 U.S. Dist Lexis 131402, 2017 WL 3530282 at \*4 (D. Colo 2017)

(m). All across the country VitalCore has endangered inmates due to unconstitutional policy, practices and custom of deliberate indifference to adequate medical care, "wait and see" approach to treatment, medical abandonment called "chronic care" and incentivizing by denying inmates' off-site medical care. **Steven Crump has properly alleged "pattern of tortious conduct" that is sufficient to put VitalCore on notice.** Cacioppo v Town of Vail, 528 Fed Appx 929 (10th Cir App). While notice in most instances is established by proving a pattern of tortious conduct, "[i]n a narrow range of circumstances, . . . deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction[.]" Schneider, 2013 WL 2421071, at \*8 (second alteration in

original) (quoting Barney, 143 F.3d at 1307) (internal quotation marks omitted). (n) NOTICE that Vital Core Health Strategies was not providing adequate medical care since 2022. Rogacki v Jefferson City Cnty, 2022 U.S. Dist Lexis 197757, Established that "Wellpath (VitalCore) was on notice by stating that the implementation of the (unconstitutional) policies carried an obvious risk of harm to detainees' health and that the policies resulted in a pattern." (o). VitalCore policy KILLED three inmates in the JCADC from 2023 to 2024 while torturing 100's more between 2022 and 2024 by denying them off-site treatment and adequate medical care. There have been 1000's of grievances filed directly to VitalCore, but immediately dismissed. Rogacki v Jefferson City (WL) at *8 "Continuing to adhere to those policies amounts to consciously disregarding that risk of harm". (p) Est of Angelo v Bd of Cnty Commr's the court found that because plaintiffs are not alleging the contract is a formal policy, instead, they plead that contractual provisions reflect an informal policy of incentivizing reductions in the use of off-site medical services is a sufficiently articulated policy. VitalCore had knowledge that reducing off-site care and not having employed specialist that VitalCore would cause serious injury and death to inmates, to Steven Crump. (q) Like in Angelo Steven Crump alleges an existence of an informal custom amounting to a wide spread practice that nurses follow a "wait and see" approach, failed to escalate care by staff, and practiced beyond their limits. These systemic deficiencies lead to Steven Crump's permanent injury under Viola Riggin, Jennifer Ehlrich, Nicole Balcius, Danny Stanon and Rebecca Wall's failed Supervision and deliberate indifference. (r) By waiting to refer Steven Crump to an outside physician this was "consistent with chronic deficiencies" in medical care that amounts to wide spread policy. Burke v Ragalado, 935 F.3d 960 (10th Cir app 1997) See, Hollingsworth v Hill, 110 F.3d 133 (10th Cir App 1997) delaying treatment, denying recommendations of care, failing to address his symptoms- "inflicted" his injuries by causing the condition to worsen. (s) A reasonable jury could find that VitalCore Defendants are linked directly to the causation of injury to Steven Crump and that VitalCore's systemic deficiencies resulted in increased injury to him which resulted in unnecessary suffering, Est of Angelo v Bd of Cnty Commr's at *44 "the plaintiffs sufficiently plead causation because a jury could find that the systemic deficiencies

resulted in the Plaintiff's injury." Steven Crump requests the court to apply this same standard as the deficiencies are well established causing deaths. VitalCore's has a Delegated responsibility of providing medical care. A duty granted in full by the Sheriff and BOCC. A denial to Summary Judgment is appropriate and requested in this case.

## 7. <u>COUNT III: MONELL CLAIM</u>

(a) In Est of Angelo v Bd of Cnty Commr's **1:23-cv-01607-cns-stv (D. Colo. Nov. 15th 2024)** No circuit court has rejected the nondelegable duty doctrine as an acceptable avenue for municipal liability in the context of counties delegating their duty to provide adequate medical care to private prison health care providers. Additionally, multiple circuits have held that the nondelegable duty doctrine may be used as a method of determining municipal liability. See King v. Kramer, 680 F.3d 1013, 1020 (7th Cir. 2012) (finding that "the county cannot shield itself from § 1983 liability by contracting out its duty to provide medical services . . . The underlying rationale is not based on respondeat superior, but rather on the fact that the private company's policy becomes that of the County if the County delegates final decision-making authority to it."); Crooks v. Nix, 872 F.2d 800, 804 (8th Cir. 1889) (concluding that "plaintiffs' pleadings sufficiently allege inadequate prison policies or medical supervision which, if true, would result in these defendants being held liable just as if they had refused to deliver those services themselves. The duty to provide such [medical] services lies within the statutory and constitutional obligation of the named [county] defendants. In this sense the defendants have a nondelegable duty to provide medical care when needed"). (b) The Tenth Circuit has held that traditional municipal liability principles apply to Monell claims brought against private corporations. Dubbs v. Head Start, Inc., 336 F.3d 1194, 1216 (10th Cir. 2003). (c) Scriven v VitalCore held VitalCore liable under Monell Claim. These claims are analogous with Steven Crump's claims. (d) Steven Crump has adequately alleged policy, informal policy, customs and practices that lead to constitutional violations of his rights to be free from unnecessary harm, adequate medical treatment, freedom of speech and ADA protections as a person with a disability. (e) The "deliberate indifference" element may be satisfied where the entity has actual or constructive knowledge that its acts or failure to act is "substantially

certain to result in a constitutional violation," and the entity "consciously or deliberately" chooses to disregard the risk of harm. Schneider, 717 F.3d at 771 (quotation omitted). Notice can be established either by a "pattern of tortious conduct" or if a violation of rights is a "highly predictable" or "plainly obvious" consequence of the entity's action or inaction. Barney v. Pulsipher, 143 F.3d 1299, 1307 (10th Cir. 1998). Est v Correct Care Sols, LLC 2019 U.S. Dist Lexis 111992 wl at *11 "The non-delegable duty doctrine has been applied several times in the 10th Dist with each case finding that the soctrine provides a viable theory of indirect liability.." **(f)** As in Est of Angelo v Bd of Commr's Steven Crump has alleged that the policy of inadequate training, "were so far outside the standard of care for medical professionals as to be obviously reckless" No.47, 202. **(g)** 3 INMATES DIED IN JCADC. HOW MANY MUST DIE AND BE TORTURED? VitalCore Defendants were ON NOTICE of deliberate indifference to serious medical needs, inadequate medical care, failed training and employee retaliation to inmate grievances. **(h)** Under the failure to train theory, liability attaches when the "need for more or different training was so obvious, and the inadequacy so likely to result in the (unconstitutional violation) that the policy makers of the (county) can reasonably be said to have been deliberately indifferent to the need for additional training." Porro v Barns, 624 F.3d 1322, 1328 (10th Cir 2010). **(i)** The deprivations were so extreme, so obvious that VitalCore Defendants were ON NOTICE of the need for more training in the areas listed above, but disregarded the risks. Est of Lobato v Correct Care Sols, LLC No. 15-cv-02-718-PAB-STV, 2017 US DIst Lexis 49247, 2017 WL 119 7295 at *7 " Liability under failure to train theory turns on whether the defendants had, " notice of particular deficiencies in a training program". * PEOPLE ARE DYING and being Tortured. MULTIPLE LAWSUITS HAVE BEEN FILED VitalCore. THE ACLU EVEN SUED VITALCORE. **(j)** Scriven v Vital Core, VitalCore was denied Monell Immunity at (*10) The 10th Cir has held that traditional municipal liability principles apply to Monell claims brought against private contractors (including medical contractors). VITALCORE IS HELD REPONSIBLE UNDER MONELL CLAIM. **(k)** Viilo v Vitalcore, Scriven v VitalCore, established that LPN's are "supposed to work under the Supervision of a

more qualified medical provider." VitalCore staff are specifically trained not to escalate care to more qualified medical providers. VitalCore employees acquiesced to this unconstitutional training and are working under

VitalCore Supervisors who have CLEARLY demonstrated deliberate indifference as to their roles as qualified superiors and to the oversight to treatment of inmates inside the JCADC.  The Supervisors of VitalCore are incompetent and unqualified to train, supervise and higher individuals working inside the JCADC.

**(l)** Restatement (Second) of Agency § 219: (1) A master is subject to liability for the torts of his servants committed while acting in the scope of their employment. **(m)** A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless: 1. the master intended the conduct or the consequences, or 2. the master was negligent or reckless, or 3. the conduct violated a non-delegable

duty of the master, or d. the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation. **(n)** Restatement (Second) of Agency § 243: A master is subject to liability for physical harm caused by the negligent conduct of servants within the scope of employment. (o) A jury could find that Steven Crump has clearly established municipal liability and that the VitalCore is liable under Monell for injuries cause to and deprivations of Steven Crump's constitutional rights

## 8. <u>COUNT IV: SUPERVISORY LIABILITY</u>

(a) Estate of Angelo v Cnty Bd of Comm'rs "court finds that the individual defendant's propensity to provide inadequate medical care is a particular trait that risks harm to detainees, sufficient to impose a duty to supervise on Wellpath." VitalCore was on NOTICE that there was a need for MORE and BETTER Supervision by Staff.

(b)Dodds v Richardson, 614 F. 3d 1185, 1195 (10th Cir. 2010) cert. denied, 536 U.S. 960 (2011). To demonstrate the link between Supervisor and constitutional violation there must be established **"(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2)**

**caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivations."** Dodds, 614 F.3d at 1199. (c) VitalCore Supervisor Defendants had a DUTY to Supervise, to provide oversight of the health care being provided to Steven Crump. The SUPERVISORS WERE ALL AWARE OF THE UNCONSTITUTIONAL PRACTICES, BUT CHOSE TO MAINTAIN those CUSTOMS which led to extreme injuries to Steven Crump. (b) Viola Riggin, Jeniffer Ehlrich, Nicole Balcius, Rebecca Wall, Danny Stanton had full KNOWLEDGE of the deprivations and dangers inmates face. These Supervisors promulgated THE UNCONSTITUTIONAL POLICIES AND CUSTOMS THAT LEAD TO STEVEN CRUMP'S INJURIES by denying that he ever had a spinal injury, nerve damage, severe pain, while refusing off-site care, pain medication, walking assistance and a back brace. VP Ehlrich and others have been FOUND liable under Supervisor Liability in Scriven v VitalCore.

### 9. <u>COUNT V: RETALIATION IN VIOLATION OF 1ST AMENDMENT</u>
### (Involves unnecessary and wanton infliction of pain)

(a) Hudspeth v Figgins, 1347 (4th Cir 1978) may not retaliate against an inmate exercising 1st amendment rights.

(b) VitalCore staff falsely diagnosed Steven Crump in order to take his wheelchair. (c) Nicole Balcius and Rebecca Wall (Supervisors) both approved of and ordered a write up of Steven Crump to falsely imprison him in lockdown. (d) All VitalCore defendants would not escalate or report Steven Crump's injuries correctly, instead would dismiss them out of retaliation. Balcius and Wall told Steven Crump he never had a back injury and that the only reason he had backpain was because he "thought he had back pain". These were the individuals overseeing the training of medical staff and the treatment. THEY PROMULGATED A CONSPIRACY THAT STEVEN CRUMP WAS "FAKING". Told the Sheriff's Office that Steven Crump was no handicap or disabled when he was.

(e) The Supervisors instructed the Sheriff's Office employees to deny Steven Crump, handicap cell, cell cleaning, handicap shower, wheelchair and all accommodations for his injury, disability out of retaliatory maliciousness.

(f) Supervisors refused to call a medical emergency twice in which Steven Crump's LIFE was in ACTUAL REAL DANGER. Steven Crump was left to die in retaliation. Not ONCE did staff come to Crump's cell to provide aid, but

came to his cell every day to harass, yell at and verbally abuse him for not being able to walk to get over-the-counter medication. (g) Hyberg v Enslow, 801 F Appx 647, 651 (10th Cir 2020) Irreparable HARM; Nieves v Bartlett, 139 S Ct 1715, 1722 204 L Ed 2d 1 (2019) Defendants were on notice that retaliation for free speech is unconstitutional. Deputy Delgado was ORDERED by VitalCore Supervisors to write Steven Crump up and lock him in isolation for his grievance. VitalCore staff USED the unlawful force of the Sheriff Department to do their dirty work. (h) VitalCore staff removed Steven Crump's wheelchair permissions from the medical files to cause him suffering and injury. This was done out of retaliation to grievances and lawsuit. Refused to aid Steven Crump.

(i) Steven Crump had to check into Protective Custody due to abuse received from Rebecca Wall and Nicole Balcius in company of LT's, SGT's, Supervisors and Deputies came directly to confront Steven Crump aggressively to intimidate and silence him through continuous verbal attacks in response to his grievances. (j) Steven Crump was forced to walk to sign medical refusal sheets for over-the-counter medications when Steven Crump could NOT PHYSICALLY WALK TO GET THE MEDICATIONS. Steven Crump faced horrible retaliation to shut him up by VitalCore Defendants. (k) On June 3rd, 2024. Vital Core staff refused to come to cell j-3 stating that "it was too far away" for them to respond to Steven Crump's medical emergency. This was done with evil motivation in retaliation for grievances on inappropriate court transports and inadequate medical care.

10. **ESTABLISHED CASE LAW OF SUPERVISOR LIABILITY, DEPRIVATIONS OF RIGHTS, DELIBERATE INDIFFERENCE TO MEDICAL CARE, CRUEL AND UNUSUAL PUNISHMENT AND RETALIATION**

(a) The 10th cir law is clear that allegations of a delay in medical treatment in light of a known risk of harm to an inmate are sufficient to allege that a defendant disregarded that substantial risk of harm. See, e.g. Mata v Saiz 427 F. 3d at 755; Redmond v Crowther, 882 F. 3d 927, 940 (10th cir 2018) " The subjective prong is met if the prison officials intentionally deny or delay access to medical care or intentionally interfere with the treatment once prescribed."; Sander v Creek City Bd of Cnty Comm'rs no. 17-cv-00492 JHD-FHM, 2018 U.S. Dist. Lexis

124367, 2018 WL 3580770, at *7 N.D. Okla, 2018,"The defendants alleged delay or failure in alleviating (the

plaintiff's) known deteriorating health conditions states a claim for deliberate indifference." (b) Mata v Saiz 427

F. 3d at 753, " Courts have found that allegations of a sufficiently serious medical need may be based on either

allegations of the intermediate symptoms or allegations of an ultimate attendant harm." In Mata the 10th Cir

court concluded that the plaintiff's severe chest pain, as well as her ultimate heart attack, were sufficiently

serious to satisfy the objective prong. (c) In Jackson v Austin, 241 F Supp 2d 1313 KS Dist Ct (Jan 17, 2003) An

injured inmate was handcuffed and dragged. Qualified immunity was DENIED. The court awarded compensation

and punitive damages. VitalCore refused to bring Steven Crump a wheelchair or come to his aid, or intervene on

Deputy Andrews abuse. (d) "A plaintiff may plead superior liability under 1983 by (1) through defendants

supervisors' implementation or utilization of a policy that caused a deprivation of the plaintiff's rights, (2) by

demonstrating the defendant supervisor's personal participation or knowledge of the violation and the

acquiescence in its continuance." (e) Scriven v Corby, 2021 U.S. Dist Lexis 103 164 KS Dist Ct (June 2, 2021) at *31

the court found that any REASONABLE officer in the Defendant's position would have understood that he or she

was displaying deliberate indifference to serious medical need by not permitting Plaintiff to receive care where

Plaintiff was unable to stand or walk and was screaming in pain. At *30 (injured) pre-existing medical conditions,

was injured through violence (injured his back and was denied medical care by State Officials) At* 23 the court

found that plaintiff alleged facts sufficient to deny qualified immunity. Steven Crump as is Scriven v Corby, was

injured by action of State Officials, Deputy, that caused severe injury to a pre-existing back injury then denied

medical care. (f) Scrive v Corby at *27, The law has LONG been clearly established that an officer " who fails to

intervene to prevent another law enforcement officer's use of excessive force may be liable under 1983.

VitalCore staff are held to this same standard, yet refuse to intervene on a known crisis, known abuse and

danger. (g) The Supreme Court developed a doctrine in Scott v Harris, 550 U.S. 372, 127 S Ct. 1769 167 L Ed 2d

656 (2007) concluding that summary judgment, DENIAL OF IMMUNITY, was appropriate where video evidence,

"quite clearly contradicts" plaintiff's version of facts. VitalCore caused Steven Crump to be injured by not

responding to his medical emergencies and the video clearly shows Steven Crump under great distress and pain.

(h) In support of the general legal principle that a prison guard violates 8th/14th amendment when he applies

force against an inmate "maliciously and sadistically to cause harm, See,e.g. Hudson v McMillian , 503 U.S. 1,9,

112 S Ct 995 117 L Ed 2D 156 (1992) ("When prison officials maliciously and sadistically use force to cause harm,

contemporary standards of decency always are violated"); Whitley v Albers, 475 U.S. 312, 320, 106 S Ct 1078, 89

L Ed 2d 251 (1986) ( Concluding , in context of an 8th amen excessive force claim, that "where a prison security

measures is undertaken.. "whether the force was applied in good-faith effort to maintain or restore discipline or

maliciously and sadistically to cause harm>." See, e.g. Walker v Bowersox, 526 F.3d 1186, 1188-90 (*10 th Cir

2008) (reversing grant of summary judgment in favor of correctional officers when a officer failed to rebut

inmates evidence supporting officers use of excessive force by restraining an inmate to a bench for 24 hours).

(i) VitalCore allowed deputies to restrain Steven Crump with full knowledge that it would severely injure him,

leaving him restrained in a cell after he pleaded to have the restraints not put on, then not removing those

restraints while in a cell all alone was an intentional act of malice and torture. Steven Crump NOTIFIED VitalCore

Supervisors and UNKNOWN Defendants that that he suffered from a severe spinal injury and that placing a tight belt

around his spine then handcuffing his hands to that belt would cause him extreme suffering and injury.    VitalCore

REFUSED 3 separate calls for medical assistance on June 30th, 2024 from cell j-3. (j) Johnson v City of Ecorse, 137 F

Supp 2d 886, 893 ( E.D. Mich 2001) "it  is long established that where the arrestee suffers from physical ailment that

makes handcuffing especially painful, and advises the officer of his condition before tight handcuffs cause the

arrestee injury there is a clearly established right to be free from excessively tight handcuffs. VitalCore Supervisors

REFUSED to place a medical order that mandated no waist restraint with handcuffs, no belt restraint around Steven

Crump's spine. (k) The 10th Circuit has previously held that, in some instances, failing to abide by medical orders

with respect to handcuffing (belt restraint) can result in constitutional violation of the right to be free from deliberate indifference to serious medical needs. BOTH Martin v BD of County Comm'rs of Pueblo,909 F. 2d 402 (10th Cir 1990) and Howard v Dickerson, 34 F. 3d 978, 980-81 (10th Cir 2002) involved claims under the 14th amen as the plaintiffs were arrestees. See, Grissom v Bell, 2022 U.S. Dist Lexis 176522 KS Dist Ct (2022). In both cases, AS IN CRUMP's) the arrestee's visible symptoms or the medical information relayed to medical staff clearly provided the staff with the basis to know that their conduct created substantial risk of harm, but they recklessly chose to disregard the risk. In Grissom v Bell the finds these cases instructive because the standard for deliberate indifference under the 8th amen are the same. See, Est. of Beauford v Mesa Cnty, Colo., 35 F 4th 1248, 1262 (10th Cir 2022). (l)Steven Crump's grievances directly to VitalCore and TRANSPORT put the Defendants on NOTICE. SGT Cooley verified that Steven Crump " Needed more assistance than most when walking" and reporting that Transport was aware "Having utilized a wheelchair in the past for you" in regards to Steven Crump's disabilities, injuries and the need to be safely transported to prevent injuries. Dr. Stanton placed a request to consider transporting without belt restraints, but refused to place an ORDER to do so. (m) On 5/31/24 K. Watterson confirmed through a grievance that the Sheriff's Office delegated full medical care authority to Vital Core, a non-delegable duty, SGT Watterson replied, "This is a discussion you need to have with medical. The Sheriff's Office does not have the medical background to make these determinations." This was a response to Steven Crump's request for a wheelchair and to be transported in a manner that would not cause him unnecessary pain and suffering. Steven Crump had grieved and complained to medical every day without help. (m) Defendants discriminated and retaliated against Steven Crump with full awareness, malice and evil intentions. It was out of this evil conspiracy by the Defendants that acts were done to Steven Crump so outrageous it shocks the conscious. (n) SHOCKS THE CONSCIENCE proof when another officer was taken back by the fact that Steven Crump was in such terrible pain, in an unsafe position, fully restrained being forced to walk with a cane. (o) Mathews v Eldridge 424 U.S. 319 S Ct. (1976), " The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manor". The

Defendants violated the 14th amen due process clause. "Procedural due process imposes constraints on government decisions which deprive individuals of Liberty or property interests within the meaning of the Due Process Clause." Mathews (3) (A). Archeluta v Colorado Sep't of Inst Div of Youth Services, 936 F. 2d 483, 489, 490 (10th Cir 1991) ("Procedural due process ensures that a state will not deprive a person of life, liberty, or property unless fair procedures are used in making that decision; substantive due process guarantees the state will not deprive a person of those rights for an arbitrary reason regardless of how fair the procedures are that are used in making the decision"). **(p)** Steven Crump claims the Defendants violated procedural and substantive due process rights when they forcefully injured him and denied him ADA accommodations without being heard in a fair manor. County of Sacramento v Lewis, 523 U.S. 833 S Ct (1998) Id at 847 n. 8. To establish a substantive due process violation, plaintiff must show Defendant's behavior was "so egregious, so outrageous, that it may fairly be said to shock the conscience." It SHOCKS the conscience when the Vital Core staff refused to come to Steven Crump's medical emergency request stating, "Steven Crump was too far away" in refusing to bring Steven Crump a wheelchair while abusing  discretionary functions by forcing Steven Crump to walk down a hall causing severe spinal injury. The Defendants action are "OBVUIOSLY EGREGIOUS". **(r)** Steven Crump was discriminated against by VitalCore Staff in their official capacity. The act of refusing to transport Steven Crump safely violated his equal protection of a Federally Protected Right. This falls into the Superior Liability of VitalCore Supervisors (Wall, Balcius, Ehlrich, Dr. Stanton, Viola Riggins) for failed oversight, failed training and acquiescence to an unconstitutional policy held by the Sheriff's Office and Vital Core of NOT providing inmates with wheelchairs while injured and not transporting those disabled like NORMAL REGULAR inmates. **(s)** Dodds v Richardson 614 F 3d 1185 (10th Cir App 2010) at *1197- Based at least in part on this jurisdiction, the court denied Defendant qualified immunity. The district court concluded Defendants possessed responsibility for running the jail (or transport) , acquiesced in the continuing operation of the court clerk's or district judges policies at the jail, and that 'his acquiescence caused or contributed in the cause of deprivation to Plaintiff's rights by another or others " because the policies (of the jail)  refused plaintiff bail in

violation of 14th amen due process." Steven Crump was locked in medical segregation where he was refused the ability to contact family or a bondsman by VItalCore Supervisors per custom. Dodds at *1212 (11) A supervisor may directly order a subordinate to violate plaintiff's due process (equal protection) or utilizing an already existing policy that has the same effect. See Meade V Grubbs 541 F. 2d 1512 10th Cir App, 1988; Hernandez v Keane, 341F. 3d 137, 145 (2d Cir 2003) (Supervisor's liability can be based on "creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue'); Cottone v Jenne, 326 F.3d 1352, 1360 (11th Cir 2003) (Supervisory liability "when a supervisor's custom or policy results in deliberate indifference to constitutional rights"). Where the actions of subordinates directly flow from the participation or conduct of the supervisor, liability may be appropriate. The supervisor deliberately caused the violation. **(t)** Some cases say a supervisor may cause violations when he has actual knowledge of past constitutional violations being carried out by a subordinate and does not stop future occurrences. Hernandez v keane, 341 F. 3d at 145 ( Supervisory liability can result from "failure to act on information indicating unconstitutional acts were occurring) Chavez V Ill State Police, 251 F. 3d 612, 651 (7th Cir 2001)(Liability is appropriate for supervisors who "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see") Hartley v Parnell, 193 F 3d 1263, 1269 (11th Cir 1999)(widespread abuse that is so "obvious, flagrant, rampant and of continued duration" can lead to supervisory liability if the supervisor does not act to correct these behaviors). **(u)** A series of cases require a standard of deliberate indifference. Those cases include a failure to train, the failure to supervise, and potentially other supervisory short coming. 1. Carr v Castle, 337 F.3d 1221, 1228 (10th Cir 2008)(analyzing a failure to train theory of liability in the context of an excessive force claim) Not training Medical Staff to escalate a medical emergency, not training to safely transfer Steven Crump, and failing to train proper response to injured Steven Crump was an outrageous Supervisory oversight. 2. Hernandex v Keane 341 F. 3d at 145 (supervisory liability can be based on "Gross Negligent Supervision of subordinates who committed a violation); Brown v Muhlenberg Twp 269 F.3d 205, 216 (3d Cir 2001)(Supervisor can be liable if he was aware of an

unreasonable risk of injury, a specific supervisory practice could have averted this injury, the supervisor was indifferent to that risk, and the injury resulted from the failure to employ the supervisory practices.) 3. Smith v Brenoettsy, 158 F 3d 908, 911-12 (5th Cir 1998)(Supervisory liability is appropriate if the supervisor exercised deliberated indifference in failing to supervise or train, and the injury resulted from this failure). 4. United States v LaVallee, 439 F. 3d 670, 688 (10th Cir 2006) "Certain levels of injury are not required". 5. David v Richardson, 614 F.3d 1185 10th Cir Appeals * 1211, "At the most basic level of formulation, our law requires an "affirmative link" between the constitutional violation and "either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." Meade v. Grubbs, 841 F.2d 1512, 1527 (10th Cir. 1988) (quoting Specht v. Jensen, 832 F.2d 1516, 1524 (10th Cir. 1987)) (internal quotation marks omitted). Ordinarily, "there must be cause in fact between the conduct complained of and the constitutional deprivation." Snell v. Tunnell, 920 F.2d 673, 700 (10th Cir. 1990). Applying this "cause in fact" reasoning to supervisory defendants, we concluded that the "requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." Id.; see also Buck v. City of Albuquerque, 549 F.3d 1269, 1279-80 (10th Cir. 2008)." Not providing care to Steven Crump in order to cover up his injuries is KNOWN to have placed Steven Crump in serious risk of further injury and that further injury HAPPENED. **(v)** At * 1212- "Our cases have suggested that a supervisor could be liable if he or she "established or utilized an unconstitutional policy or custom." Meade, 841 F.2d at 1528. We have even suggested that, in some cases, supervisors could be liable for violations that resulted from recklessness — "a conscious acceptance of a known, serious risk" — because this "requires proof that the defendant focused upon the risk of unconstitutional conduct and deliberately assumed or acquiesced in such risk." Woodward, 977 F.2d at 1399 n. 11 (emphasis in original). Scriven v VitalCore plainly established unconstitutional policy, practices performed by Supervisors. **(w)** Vital Core defendants intentionally falsified medical reports at the request from Superiors in order to have Steven Crump's wheelchair taken to cause him pain, suffering and injury while covering up his injuries.

Let us paint a picture to place the scene in to full detail. You are and officer sent by your supervisor to take an inmate's wheelchair. As you approach the inmate you notice that both of his feet are incased in bandage wrap, he has a black eye, he has bandage wrap covering the entire left leg up to the knee. Upon speaking to the inmate, he informs you that he was severely injured by the police and he was shot in the spine. The inmate tells you that he cannot stand or walk without extreme pain, that he can't even stand to use the bathroom or sit down to use the bathroom because he can't use his back to stabilize his body. Would a NORMAL MINDED person believe that it would be perfectly alright to take the wheelchair from an inmate in such terrible conditions, wrapped in bandages? The medical reports by other nurses from later dates show that Steven Crump STILL required bandages to his feet. But the feet injuries were not the main reason for Steven Crump's inability to walk. That was a deliberate indifference move by medical to try and disguise Steven Crump's true, EXPENSIVE, injuries to his spine. This is outrageous conduct and beyond malpractice. A false diagnosis from a nurse practicing beyond her capabilities in an unconstitutional manner took the wheelchair. a. "A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment." Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000). The deliberate indifference standard applies to pretrial detainees, such as Ms. Caddell, through the Fourteenth Amendment. Paugh v. Uintah Cnty., 47 F.4th 1139, 1153-54 (10th Cir. 2022). Deliberate indifference contains both an objective and subjective component. Id. at 1154. b. The objective component is satisfied if the deprivation is "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "[M]edical need is sufficiently serious `if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Sealock, 218 F.3d at 1209 (quoting Hunt v. Uphoff, 199 F.3d 1220, 54, 86, 129. 1137*1137 The standard for the subjective component is that the official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837, 114 S.Ct. 1970. The official must be aware of the facts from which the inference of a substantial risk of serious harm could be drawn and also draw that inference. Id. A plaintiff "need not show that a prison official acted or failed to

act believing that harm actually would befall an inmate," but rather that the official "merely refused to verify

underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly

suspected to exist." Id. at 842, 843 n.8, 114 S.Ct. 1970. "Whether a prison official had the requisite knowledge of a

substantial risk is a question of fact subject to demonstration in the usual ways, including inference from

circumstantial evidence" such as whether "the risk was obvious." Id. at 842, 114 S.Ct. 1970. An official disregards

risk when he fails to take reasonable measures to abate the risk. Quintana v. Santa Fe Cnty. Bd. of Comm'rs, 973

F.3d 1022, 1029 (10th Cir. 2020

## 11. <u>COUNT VII: DEFAMATION</u>

a. TIFFANY MCROBERTS filed a false medical report that exposed Steven Crump to bad light, physical/mental

abuse and discrimination. The VitalCore Defendants routinely and intentionally defamed Steven Crump by

conspiring to spread false medical information that Steven Crump WAS never injured and was FAKING IT.

b. **Cooper v. Sedgwick County, Kansas No. 01-1269-MLB (June 7, 2002)** Jail Staff were found liable for falsifying

documents which caused actual harm. "Thus, to state a claim, plaintiff must assert (1) the defamatory

statements impugned her good name, reputation, honor, or integrity; (2) the defamatory statements were false;

(3) the defamatory statements were published. See Workman v. Jordan, 32 F.3d 475, 481 (10th Cir. 1994); Prager

v. LaFaver, 5 F. Supp.2d 906, 913 (D. Kan. 1998) (applying Workman to defendant's motion to dismiss).

**McRoberts** made Steven Crump out to seem like a maniac and a manipulating, lying, violent cop attacker.

## 12. <u>COUNT VIII: PUNITIVE DAMAGES</u>

**(a)** In the 10th Circuit, to award punitive damages in a case, the defendant's conduct must be considered

"reprehensible," meaning it must be egregious, malicious, or demonstrate a high degree of culpability, with the

"degree of reprehensibility" being the most important factor when determining if a punitive damages award is

appropriate, as outlined by the Supreme Court case "**BMW of North America, Inc. v. Gore.** Kolstad v Ada 527 U.S.

526, 119 S. Ct. 2118, 2124, 144 L Ed 2d 494 (1999); Smith v Wade 461 U.S. 30, 56, 103 S. Ct. 1625, 75 L Ed 2d 632 (1983) " conduct motivated by evil intent of malice and reckless indifference to protected federal rights.

**(b)** Case law application: The 10th Circuit frequently applies the "Gore factors" when reviewing punitive damages awards, which include assessing the reprehensibility of the conduct, the ratio of punitive damages to compensatory damages, and the comparison to other civil penalties for similar conduct. Examples of conduct that might be considered reprehensible in the 10th Circuit: Fraudulent schemes with significant harm to victims; *Intentional infliction of emotional distress with extreme and outrageous conduct; *Willful disregard for safety standards resulting in serious injuries. **Exxon Shipping Co. v. Baker, 554 U.S. __, 128 S. Ct. 2605, 2621 (2008**) ("[P]unitives are aimed not at compensation but principally at retribution and deterring harmful conduct."); Cooper Indus., Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 432 (2001) (describing punitive damages as non- compensatory damages awarded in excess of actual harm suffered to punish and deter reprehensible conduct and to express the fact finder's moral condemnation of the conduct in question); BLACK'S LAW DICTIONARY 448 (9th ed. 2009) (defining "punitive damages" as "[d]amages awarded in addition to actual damages when the defendant acted with **recklessness, malice, or deceit; specif., damages assessed by way of penalizing the wrongdoer**. (c)The Supreme Court had provided indirect support for the availability of punitive damages under Title II by its decision in Franklin v. Gwinnett County Public Schools, 503 U.S. 60, 70-71 (1992), in which the Court stated that it (would "presume the availability of all appropriate remedies, unless Congress has expressly indicated otherwise." While Franklin was a Title IX case,16 the framework of analysis it applied led some lower courts to award punitive damages under Section 504.17 At the time that the Supreme Court took up the Barnes case, the Court of Appeals for the Sixth Circuit had ruled that punitive damages could not be obtained under Section 504,18 while the Eighth Circuit had ruled that punitive damages were available under both Section 504 and Title II of the ADA. (d) The factual situation from which the Barnes v. Gorman, 536 U.S. 181 (2002) case arose is illustrative of the kinds of cases that seem to cry out for punitive damage relief. The callous disregard of the man's hygienic and safety needs provided an obvious

circumstance for considering punitive damages, and the jury awarded the plaintiff $1.2 million in punitive damages.
*Defendants caused Steven Crump's spine to twist into scoliosis, caused paralysis, physically harmed him and mentally abused him. Defendants caused irreparable injury by refusing to treat him for 18 months while falsifying records and lying about injuries . **(d)** Kolstad v Ada 527 US 526, 119 S Ct 2118, 2124, 144 L Ed. 2d 294 (1999) Punitive Damages. Court's discussion of this question is informed by the general common law of agency, as codified in the Restatement (Second) of Agency, see, e. g., id., at 755, which, among other things, authorizes punitive damages "against a ... principal because of an [agent's] act ... if ... the agent was employed in a managerial capacity and was acting in the scope of employment," § 217 C(c), and declares that even intentional, specifically forbidden torts are within such scope if the conduct is "the kind [the employee] is employed to perform," "occurs substantially within the authorized time and space limits," and "is actuated, at least in part, by a purpose to serve the" employer, §§ 228(1), 230, Comment b. Under these rules, even an employer who made every good faith effort to comply with Title VII would be held liable for the discriminatory acts of agents acting in a "managerial capacity." **(e)** Smith v Wade 461 U.S. 30 56 103 S Ct 1625, 75 L Ed. 2d 632 (1983) conduct motivated by evil intent of malice and reckless indifference to protected federal rights. **(f)** Phillips v Tiona, 2011 U.S. Dist Lexis 63826 ADA claim of reprehensive conduct for denying handicap shower. (To include denial of handicap cell in Crump's case). **(g)** Howard v Groover 2023 U.S. Dist Lexis 223566 cruel and unusual punishment by forcing inmate to walk while severely injured. **(h)** Hutto v Finney, 437 U.S. 678 "A filthy cell may be tolerable for a few days, but it is intolerably cruel for weeks or months. *Steven Crump was forced to live in a disgusting, filthy cell for 5 months and the VitalCore Defendants refused to intervene instead locking him down in 24 hour isolations. **(i)** Burke v. Regalado, No. 18-5042 (10th Cir. 2019) Reprehensible Conduct where inmate injured his neck, causing lower back paralysis. No one treated his injuries. * Steven Crump had a spinal injury and became bedridden with limited functions and was NEVER TREATED FOR HIS INJURIES which caused him paralysis multiple times and disabling, permanent injury. **(j)** Plaintiff seeks punitive damages, which "are available only for conduct which is 'shown to be motivated by evil motive or intent, or

when it involves reckless or callous indifference to the federally protected rights of others.'" Searles v. Van Bebber, 251 F.3d 869, 879 (10th Cir. 2001) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)). (k) See Ford v. West, 222 F.3d 767, 771 (10th Cir. 2000) "(stating the court must assume the veracity of all well-pleaded facts)". Defendants committed evil heinous acts of horrible torture in save profit from not treating the severe injuries.

## 13. <u>COUNT IX: ADA VIOLATIONS</u>

**(a)** Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be

excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or

be subjected to discrimination by any such entity." 42 U.S.C. § 12132. State prisons are within Title II's definition of

"public entities." Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 209-10 (1998). (2) Devargas v Bd of Cty Comm'rs for

Santa Fe Cty., 2021 U.S. Dist Lexis 201029 N.M. Dist Ct. (Oct 19, 2021) *At 52, The court found that " the medical

provided" by the jail "qualifies as a 'service' that disabled inmates must receive indiscriminately under the ADA." Id

(Citing Penn Dep't of Corr v Yeskey, 542, U.S. 206, 210 118 S Ct ( Jan 17, 2003). Vital Core Defendants created a

conspiracy that Steven Crump was NEVER injured and was not disabled while denying him accommodations.

**(b)** Steven Crump is a qualified person, BY DEFINITON, with a disability. 42 U.S.C. 121 102 (1) (A) " disability to

include physical impairment that substantially limits major life activity". The ADA does requires that a qualified

individual with a disability be afforded equal participation of the services, or activity of a public entity, 42 U.S.C.

12132. Congress deemed this requirement to be necessary because, "discrimination against individuals with

disabilities persists in such critical areas as.. public accommodations, education, transportation, communication..

and to public services" Id 12101 (a) (3). (c) Robertson v Las Animas County Sheriff's Dep. 500 F 3d 1185, 1198 (10th

Cir 2007) "A public entity is on notice that an individual needs an accommodation when it knows that an individual

requires one, either because that need is obvious or because the individual requests accommodation." (d) Clearly

Established Law to accommodate disability to access the court. By not providing proper transport and endangering

Steven Crump's safety, causing him great bodily harm, paralysis and possible permanent paralysis from injury the VitalCore Defendants violated Title 2 and the Rehabilitation Act. **(e)** Boddie v Connecticut, 401 U.S. 371 S Ct. (March 2, 1972) -This duty to accommodate is perfectly consistent with the well-established due process principle that, "within the limits of practice ability, a state must afford to all individuals a meaningful opportunity to be heard". (internal quotation marks and citation omitted) Tennessee v Lane 541 U.S. 509 S Ct. (2004) The Supreme Court narrowed the category of state action to the specific right of access to the courts, rather than the right of access to all state-owned buildings. ( Lane, 541 U.S. at 530-31). (f) Quintana v Santa Fe Cnty Bd of Commr's (10th Cir. 2020) " an official disregards risk when he fails to take reasonable measures to abate the risk"… of injury to Crump.

## 14. <u>COUNT X: INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS</u>

## 15. <u>COUNT XI: NEGLIGENCE UNDER KANSAS LAW</u>

The Defendants TORTURED Steven Crump for 18 months and upon finding these allegations true this court should deem this case OBVIOUSLY UNCONSTITUITONAL. Herrera v. Santa Fe Pub. Sch. United States District Court, D. New Mexico. (Jun 28, 2013) 956 F. Supp. 2d 1191 (D.N.M. 2013) In evaluating whether the right was clearly established, a district court considers whether the right was sufficiently clear that a reasonable government employee in the defendant's shoes would understand that what he or she did violated that right. See Casey v. W. Las Vegas Indep. Sch. Dist., 473 F.3d 1323, 1327 (10th Cir.2007). "A clearly established right is generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to be 'indisputable' and 'unquestioned.' " Lobozzo v. Colo. Dep't of Corr., (quoting Zweibon v. Mitchell, 720 F.2d 162, 172–73 (D.C.Cir.1983)).

https://ihl-databases.icrc.org/en/customary-ihl/v1/rule90: Rule 90. Torture, cruel or inhuman treatment and outrages upon personal dignity, in particular humiliating and degrading treatment, are prohibited. IT IS NEGLEGENT and Infliction of Emotional Distress when the VitalCore Staff routinely performed the same actions resulting in the same harm and injuries to Steven Crump and 100's of person all over the country while making NO CHANGES.

## 16. <u>EXHAUSTION OF GRIEVANCES</u>

**(a)** There is ABSOLUTELY no doubt as to Steven Crump's exhaustion of grievance. Since day one Steven Crump has filed complaint about his confinement and treatment through informal and formal complaints in person and through the kiosk electronically. ALL Superiors and the right PERSONS were aware of the GRIEVANCES. In the Martinez Report Deanna Crabb. stated the, "Since his incarceration he has generally complained about his treatment". **(b)** SCRIVEN V VITALCORE Case No. 22-3282-EFM-RES.. Under the Prison Litigation Reform Act ("PLRA"), an inmate must exhaust his administrative remedies before filing suit under § 1983.25 The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."26 The exhaustion requirement is an affirmative defense under the PLRA.27 Although Kansas law requires an inmate to file proof that he has exhausted his administrative remedies with a petition alleging state-law claims, the PLRA does not require an inmate to plead exhaustion in his complaint when bringing federal claims.28 The burden of proof for exhaustion of administrative remedies lies with the defendant.29 The Tenth Circuit has advised district courts that a Rule 12(b)(6) motion to dismiss for failure to exhaust should only be granted in "'rare cases' in which 'it is clear from the face of the complaint that the prisoner has not exhausted his administrative remedies.' "30 Defendants argue that dismissal is appropriate here because Plaintiff has not alleged or attached any grievances to his Amended Complaint showing that he completed the grievance procedure at the Sedgwick County Jail. But, on page 20 of Plaintiff's Amended Complaint, Plaintiff indicates that he previously sought informal or formal relief from the appropriate administrative officials. Plaintiff then explains that he filed "a complaint and grievances in the kite system but to no avail." Thus, it's not clear from the Amended Complaint that Plaintiff did not exhaust his administrative remedies. Defendants' motion to dismiss on this basis is denied.  "Steven Crump request this court to DENY Summary Judgment and all REQUESTS for relief **made by the Defendants. I, STEVEN CRUMP, request criminal investigations and prosecution of the Defendant's.**

**UNITED STATES DISTRICT COURT**

For the District of Kansas

Steven Crump,

       Plaintiff,

V                                          Case # 24-03036

Unified Gov of Jo. Co., et al,

       Defendants.

**CERIFICATE OF SERVICE**

I certify that the information and documentation associated with this motion are true. This Court should intervene and begin immediate investigations upon VitalCore for tax evasion related to treatment claimed to be provided and incentives of State Officials including Johnson County Officials, Calvin Hayden and the Board of County Commissioners. VitalCore is paying to play and taking over State ran facilities with NO BID CONTRACTS issued by the State Officials. This is not NORMAL, not diplomatic and the citizens are not aware of this while VitalCore kills and maims people at the expense of tax payers' money.

I sent the foregoing document, Response to VitalCore's Summary Judgment Doc 114 to the Court Clerk on Feb 28th, 2025 to be electronically filed and NOTICE be provided to the following:

John Hicks

<JH@nkfirm.com>

Submitted BY,

/s// Steven Crump

Stevencrumplaw@gmail.com